FILED

RIDOUT & LYON, LLP
CHRISTOPHER P. RIDOUT (State Bar No. 143931)
   Email: c.ridout@ridoutlyonlaw.com
DEVON M. LYON (State Bar No. 218293)
   Email: d.lyon@ridoutlyonlaw.com
CALEB LH MARKER (State Bar No. 269721)
   Email: c.marker@ridoutlyonlaw.com
555 E. Ocean Blvd., Suite 500
Long Beach, California  90802
(562) 216-7380 Telephone
(562) 216-7385 Facsimile

**Attorneys for Plaintiff**

11 FEB 16  PM 2: 30

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JEFFERY DELONG, individually and on behalf of all others similarly situated,

           Plaintiff,

    vs.

TAXMASTERS, INC., a Nevada corporation, TMIRS ENTERPRISES, LTD., a Texas partnership, and DOES 1 through 50, inclusive,

           Defendants.

CASE NO. CV11  01431 ODW (AGRx)

**COMPLAINT (CLASS ACTION)**

1) Recission of Contract

2) Unlawful/Void Contract for Sale of Legal Services

3) Violation of California Civil Code § 1750 *et seq.*

4) Violation of Business and Professions Code § 17500 *et seq.*;

5) Violation of Texas Deceptive Trade Practices – Consumer Protection Act

6) Violation of Business and Professions Code § 17200 *et seq.*;

(JURY TRIAL DEMANDED)

Plaintiff Jeffery DeLong (hereinafter "Plaintiff" or "DeLong"), brings this action, by and through his undersigned counsel, on behalf of himself and all others similarly situated persons in the class defined below, based upon information and belief and the investigation of counsel, except for information based upon personal knowledge, and hereby alleges as follows:

1   rise to the claims in this action occurred in this District.   Each Defendant has

2   sufficient minimum contacts in the State of California or otherwise intentionally

3   prevails itself of the California market through television, radio and internet

4   advertising located in California and other activities, so as to render the exercise of

5   jurisdiction over it by the California courts consistent with traditional notions of fair

6   play and substantial justice.

7   ### III.   THE PARTIES

8   4.   Plaintiff Jeffery DeLong is an adult individual who resides in the State

9   of California, County of Mendocino.  Plaintiff DeLong has a physical impairment

10   that substantially limits one or more major life activities and is a "disabled person"

11   as that term is defined by Cal. Bus. and Prof. Code § 17206.1(b)(2).

12   5.   At all relevant times, DeLong was a customer of Defendants

13   TaxMasters, Inc., a Nevada corporation and/or TMIRS Enterprises, Ltd., a Texas

14   partnership.   As a result of Defendants' unlawful and unconscionable conduct

15   described further herein, suffered harm, injury and loss in an exact amount to be

16   proven at trial.   Since Plaintiff was harmed and suffered out of pocket loss in a

17   manner typical of the Class, as confirmed by the recent actions taken by the Attorney

18   Generals of several states against Defendants, including Texas and Minnesota, he

19   brings this action as a class action.

20   6.   Upon information and belief, TaxMasters, Inc. is a publicly traded

21   (NASDAQ: TAXS) Nevada corporation with its principal place of business located

22   at 900 Town & Country Lane, Suite 400, Houston, TX 77024.  The agent for service

23   of process is Residential Agency National, Incorporated, 377 S. Nevada Street,

24   Carson City, NV 89703.

25   7.   Upon information and belief, TMIRS Enterprises, Ltd., is a Texas

26   partnership with its principal place of business located at 900 Town & Country Lane,

27   Ste. 400, Houston, TX 77024. Defendant TMIRS affairs are directed and controlled

28

1   by TM GP Services, LLC, its General Partner. TM GP Services, LLC is a Texas
2   limited liability company doing business throughout the United States, including
3   Pennsylvania, with a principal place of business at 900 Town & Country Lane, Suite
4   # 400, Houston, TX 77024 GP Services, LLC is a Texas limited liability company
5   doing business throughout the United States, with a principal place of business at
6   900 Town & Country Lane, Suite # 400, Houston, TX 77024

7       8.    Defendants unjustly profit from the activities challenged in this lawsuit.
8   For instance, in its 2009 annual report, Defendants reported annual revenue of
9   approximately $36.8 million.

10      9.    Plaintiff is informed and believes that Defendants regularly conduct
11  business in the State of California directly or indirectly through subsidiaries owned,
12  licensed, operated, administered, managed, directed and/or controlled in the State of
13  California.

14      10.   Upon information and belief, the services Defendants provide class
15  members are performed at their offices, in Houston Texas. The deceptive,
16  unconscionable and unfair business practices that Defendants engage in and
17  complained of herein are conducted in and from their primary business offices in
18  Houston, Texas and emanate to other states where class members reside, including
19  California, injuring those class members. Defendants are obligated to comply with
20  Texas law with regard to operations and business practices they conduct in and from
21  Texas, even if those services affect and injured consumers outside of Texas. In
22  addition, Defendants are also obligated to comply with the laws of the states where
23  they conduct business and contract with consumers, such as California.

24
25
26
27
28

## IV.   INTENT

11.   Defendants knowingly and intentionally undertook and directed that their respective businesses undertake the illicit practices which are the subject of this suit.

12.   Acting in concert, Defendants have undertaken a common scheme to systematically and intentionally ensnare and deceive unsuspecting and financially vulnerable consumers, like Plaintiff, who at relevant times owed the IRS unpaid taxes and sought to address their tax problems, by systematically:

    a. promising to eliminate class member's outstanding tax debts and obligations to the IRS;

    b. establishing a "payment plan" for their services;

    c. obtaining the consumers' credit card information, instantly charging monies against it;

    d. failing to disclose hidden fees and other material terms at the time of contracting and receiving payment;

    e. refusing to provide the required 30 day right of recission / cancellation with full refund required for telephone and internet sales;

    f. then, only after receiving "non-refundable" payments from class members, altering and adding contractual terms and;

    g. engaging in illegal collection services to pursue monies the Defendants deem are owed by class members - even when services have yet to be performed.

## IV. FACTUAL ALLEGATIONS

**A.   Defendants Regularly Advertise in Order to Induce Potential Customers to Seek Their Counsel for Tax Liability Issues.**

13.   Defendants are in the business of performing tax relief services to individuals with federal and state tax debt problems and liabilities.

14.    Defendants do not have any "brick and mortar" stores to transact directly with consumers.  Instead, Defendants advertise on television, radio and internet markets both nationwide and throughout the State of California in order to reach prospective consumers and to induce them into contacting Defendants via telephone or internet concerning their tax liability problems.

15.    Defendants utilize advertisements on national television and the internet (www.txmstr.com) that invite the consumer to solve their tax problems by calling TaxMasters' telephone number for a "free consultation" with a tax consultant.  *See e.g.* www.txmstr.com.

16.    Consumers who accept the invitation and call TaxMasters' toll free number are connected to a telephone sales representative who proposes a solution to the consumer's tax problems and then closes the deal by obtaining the consumers' credit card or bank account information without providing several material disclosures, including that the fees paid by the consumer will be immediately treated as non-refundable. *See* Affidavit of Denise Miranda and Transcript of Telephone Sales Call Between Defendants and Denise Miranda ("Miranda Affidavit"), attached hereto as Exhibit "B".

17.    Defendants operate what they describe as a 'tax resolution' firm, aimed at the market of taxpayers who have received an audit notice, a notice of tax deficiency, or are otherwise in some difficulty with the IRS.  Essentially TaxMasters offers to act as the taxpayers' agent in his/her dealings with the IRS. Although TaxMasters claims that it "employ[s] and use[s] the expertise of ... tax attorneys [and] tax CPAs," it says that it "is not a law firm or a CPA firm."  According to TaxMasters, it provides the following tax-related services, among others (a) stopping IRS wage garnishments, (b) stopping IRS property seizures:, (c) assistance with paying back taxes, (d) settlement of consumers' tax debts by reducing the amount of interest and penalties, (e) handling disputes in tax court.    The services that

1    Defendants sell class members require legal judgment and advice to perform. *See*
2    *attached* Exhibit "B" (Miranda Affidavit).

3        18.    The image and words of Patrick R. Cox, the President and Chief
4    Executive Officer of TaxMasters, Inc., appear in the numerous TaxMasters television
5    commercials and on the TaxMasters website, where he introduces himself as the
6    founder of TaxMasters.  He represents that TaxMasters will "get between" the IRS
7    and the consumer, and will "solve" the consumer's tax problem.  He says that former
8    IRS agents, attorneys and other tax professionals are standing by to assist and advise
9    the consumers with their tax problems.

10        19.    TaxMasters runs commercials which air frequently on network and
11    cable television including MSNBC, CNN and Fox News, and on the internet.
12    Customers who call the toll-free number featured in TaxMasters' advertisements are
13    connected with an inside salesperson who is not required to have any previous tax
14    knowledge, as a condition of employment, but rather is encouraged to have a
15    thorough understanding of the sales process and how to close a sale.  During the
16    sales pitch, the salesperson presents the caller with a solution to his tax problem --
17    one of the services offered by TaxMasters -- and quotes a fee, which can run into
18    thousands of dollars.  The fee is generally presented as a flat fee.

19        20.    During the "free consultation" call, which is the initial call between a
20    consumer and TaxMasters, the tax consultants work to "close the sale" by obtaining
21    a credit card number or bank account from the consumer so that TaxMasters can
22    collect its fee.  To this end, TaxMasters' sales personnel emphasize the necessity of
23    promptly retaining TaxMasters in order to solve the consumer's tax problem.  If the
24    consumer asks to receive a written description of the service prior to agreeing to
25    purchase TaxMasters' services, the salesperson refuses, telling the consumer that it is
26    not possible to generate the documents without first inputting a payment method into
27    the TaxMasters system. *See attached* Exhibit "B" (Miranda Affidavit).

28

21.   The fees that TaxMasters charge for its services are large, typically ranging from $1,500.00 to $10,000.00 or even more.  If the consumer cannot afford to pay the fee in whole, or if the consumer balks at agreeing to pay such a large amount without seeing written terms, the 'tax consultant' offers the consumer an installment plan to pay the TaxMasters fee.  The consumer is usually required to agree to a down payment of at least $500.00, or 25% of the total fee, whichever is greater.

22.   When the consumer agrees to retain TaxMasters and to make payment in full or payment via an installment plan, the tax consultant then turns the consumer's telephone call over to another member of the TaxMasters sales team, the "verifier" who tells the consumer what a good decision he/she has made and reviews the payment plan to which the consumer has agreed.  Neither the original consultant nor the verifier discloses to the consumer that it is TaxMasters' position that the consumer is now irrevocably bound to pay the initial fee and any future installments before the consumer has signed any written engagement letter or received any services from TaxMasters or that he/she has waived any claims.  *See attached Exhibit "B"* (Miranda Affidavit).

23.   After the call is ended, before TaxMasters sends the consumer any written materials or contract, TaxMasters charges the consumer's credit card, or debits the consumer's bank account, for the amount of the whole fee or down payment.  Taxmasters *then* sends a letter to the consumer, along with the IRS form appointing TaxMasters as the consumers' agent, an engagement agreement, and engagement guide.   The letter instructs the consumer to immediately sign the engagement agreement and IRS forms and return them to TaxMasters.

24.   The engagement agreement is a multi-page standard-form document that contains numerous previously undisclosed terms and conditions printed in small type.  *See*, Plaintiff-Defendants Engagement Agreement, appended as Exhibit "A"

hereto.   Upon information and belief, the same or substantially similar form engagement agreements were used in each class members' transaction.   As described above, these previously undisclosed terms and conditions materially and substantively limit and change the services as described by TaxMasters during the initial sales call with the consumer.   Since the contract was formed when the payment was made, the subsequently disclosed written terms alter the contract without valid consideration and are void, unconscionable and unenforceable.

25.   One of the terms disclosed for the very first time in the engagement agreement (but after the consumer has paid Defendants) involves the cancellation of the agreement by the consumer and the consumer's right to receive a refund. This disclosure reads as follows:

> Client's Early Termination Agreement
>
> Client may terminate this agreement at Client's discretion by providing Client's notice in writing to Firm. In the event of termination by client, the minimum professional fees due for services rendered or to be rendered will be the higher figure of: (1) the minimum total retainer specified above and the actual fee for any other services performed - or- (2) the actual time expended by Firm at standard billing rates, If Client has paid more than then minimum fee as determined herein, a refund will be paid. Client agrees to remit any balance in full with its termination notice or to permit any remaining balance to be drafted in full using the payment method established in the installment agreement.

*See attached* Exhibit "A" (Plaintiff's Engagement Agreement).   TaxMasters does not routinely provide this disclosure to consumers during the sales calls.

26.   TaxMasters takes the position that its fees are binding and are immediately non-refundable whether the consumer has signed the engagement agreement or not and regardless of whether any services have been provided to earn any portion of the fee.  Consumers who have called TaxMasters to cancel within 24 hours after the initial sales call have been told that TaxMasters will not refund any portion of the money paid, even though TaxMasters has provided no services at that point, and, indeed, cannot begin working on the consumer's behalf until the

consumer has returned the IRS form appointing TaxMasters as his representative. *See attached* Exhibit "I" (Defendants' Correspondence Denying Consumer Refund).

27.   Taxmasters not only refuses to refund the fees already collected by it after the sales call, it also attempts to continue to collect fees from consumers who cancel their agreements, even when no services have been provided to earn any portion of the fee.  In fact, the Defendants have threatened to subject consumers to collection procedures in court if they refuse to pay fees after the consumer has cancelled the agreement, regardless of whether any services have been performed. In attempting to collect these fees, TaxMasters has threatened to bring suit to collect such fees in court in Harris County, Texas, even though the consumer is not a resident of Harris County and did not sign the contract on which the alleged debt is based in Harris County.  Such terms and tactics are unlawful, lack mutuality, are unconscionable and violate Tex Bus. and Com. Code section 17.46(b)(23) and /or other law. *See attached* Exhibit "J" (Defendants' Collection Correspondence).

28.   Further, on its website and during the sales call, TaxMasters represents that it will begin working on the consumer's tax problem as soon as the consumer purchases the services from TaxMasters.  According to the engagement agreement, which is only sent after the initial fee has been paid, however, TaxMasters does not have to begin working on the consumer's tax problem until the consumer has paid the TaxMasters fee in full.  Therefore, when an installment plan is involved, it may take months before the Defendants begin work on a consumer's file and the only notice that consumers on an installment plan receive about this policy is information that is included in the engagement agreement, as this issue is not disclosed to consumers during the sales call.  *See* Affidavit of Karen Sanchez, attached hereto as Exhibit "D".

29.   The contract between Defendants and the consumer class member is formed when Defendants demand and receive the initial payment from the consumer

1   during this process.  Only after the class member has entered into a contract with
2   Defendants and provided payment based on the terms then-disclosed do Defendants
3   send the consumer a written contract altering the contract, disclosing new, different
4   and additional terms, without providing additional consideration.   If a consumer
5   upon receiving the written contract attempts to reject the newly disclosed terms set
6   forth in the written document, Defendants claim that the consumer is already
7   contractually bound and that it is entitled to keep all fees despite the fact no work has
8   been done or services perfromed to earn the fee.   Thus, consumers are under
9   financial duress and have no choice but to go forward or else they risk losing the
10  entire fee paid (plus any future scheduled installment payments to be debited from
11  their accounts) without receiving any tax relief services in exchange.  As such, the
12  contracts are unconscionable, unlawful, void, unenforceable and should be rescinded.

13          30.     In the initial sales call, TaxMasters' representatives misrepresent and
14  fail to disclose important aspects of TaxMasters' service and the terms on which they
15  are offered, including, the fact that TaxMasters treats all fees paid as non-refundable;
16  the fact that TaxMasters will not begin working on a client's case until he/she has
17  paid all of the installment payments agreed to; that additional charges (at rates up to
18  $950.00 per hour) may be imposed at Defendants discretion when they subjectively
19  feel the undisclosed "budgeted time" and hourly rates allocated to the initial fee
20  previously paid is exhausted; that Defendants alone may unilaterally terminate the
21  agreement "without refund" (even if services are never performed) should they
22  subjectively feel the client is uncooperative or "abusive;" that the work will actually
23  not be performed by Defendants but be subcontracted to other undisclosed persons or
24  entities to perform and for which the class member waives important rights to
25  proceed against; that all disputes the class member has against Defendants are
26  limited and must be arbitrated in Houston, Texas while Defendants, in contrast,
27  retain their right to sue the class member in a state or federal court of their choosing
28

with no limitation on claims or recoveries.  *See* Exhibit "B" (Miranda Affidavit), at pp. 40 - 41.  Such terms are unconscionable, unlawful, void, lack mutuality and are unenforceable.

**B.   Defendants Overstate Their True Ability To Reduce Class Members' Tax Obligations**

31.   Defendants, through their various advertisement schemes and website, seek out consumers who are in dire financial condition, and those consumers who face possible immediate action by the Internal Revenue Service ("IRS").   The company makes a number of representations to entice such consumers to retain them and have consumers immediately allow Defendants to charge their credit cards before receiving the written contract, including:

    a.  "The former IRS agents and tax professionals at TaxMasters will solve your tax problems."

    b.  "We'll get between you and the IRS."

    c.  "We'll make sure they treat you fairly, and treat you with respect."

    d.  "Don't wait weeks for an appointment, call us today.  We'll get you started today."

    e.  "TaxMasters—we solve your tax problems."

    f.  The "IRS makes the rules and then apparently trains its employees to break them."

    g.  The IRS will not treat consumers "fairly" or with "respect" if they attempt to represent themselves.

    h.  "Relief from substantial federal tax debt is achievable and is even easier with TaxMasters than you might think."

    i.  TaxMasters' staff is composed of former IRS agents, enrolled agents, tax attorneys and CPAs with tax expertise.

j. "From the moment you give our tax consultant the go-ahead on the phone, we start working for you."

k. TaxMasters is dedicated to quality client services, and "will do everything in our power and within the limits of the law to help you achieve tax relief."

l. "Whether facing tax debt, unfiled returns, wage garnishment, or an IRS audit, TaxMasters can solve your tax problem."]

32.   The Better Business Bureau of Houston Texas, which is where the Defendants base their business operations, has given TaxMasters an "F" rating, and has received hundreds of complaints in the last three years.   Additionally, the Attorneys General of a number of states, including Texas and Minnesota have recently filed actions challenging Defendants' deceptive sales practices.   *See e.g. Swanson v. Taxmasters, Inc.,* Hennepin County (Minnesota) District Court, Fourth Judicial District, Case No. 27-CV-10-28133 (Filed December 16, 2010); *State of Texas v. Taxmasters, Inc., TMIRS Enterprises, Ltd., TM GP Services LLC, d/b/a/ Taxmasters and Patrick R. Cox,* D-1, GV-10-000486, Travis County, Texas, District Court. According to the Minnesota Attorney General:

"The company gets worried people to pay thousands of dollars by overstating the help it will provide with their tax bills," said Attorney General Swanson. "This is the latest type of company we have seen target the misfortunes of people who are facing tough sledding in the bad economy."

The lawsuit alleges that the company got consumers to pay advance fees of $2,000 to $8,000 by misstating the help it would provide people with unpaid tax bills. In some cases, the company claimed it could substantially reduce people's tax bills by up to 90 percent, but then delivered little or no help. In other cases, the company falsely promised that it could stop IRS collection efforts against consumers who hired it.

Contrary to TaxMasters' promises, most citizens do not qualify for special IRS programs that reduce a person's tax debt. Attorney General Swanson said that while the IRS won't reduce most people's tax bills, it will work with them on repayment plans-something people can do on their own without paying a tax relief company thousands of dollars.

TaxMasters heavily advertises on late-night television. In 2009 the company spent nearly $14 million on its television, radio and Internet advertising campaigns. Consumers who call TaxMasters talk to a "tax consultant," who is actually a salesperson. A job ad for this position states: "Previous tax knowledge is not required, but a firm understanding of the sales process and of selling services ... is a strong plus." Salespeople often make unrealistic promises of the company's ability to help in order to dupe consumers into paying thousands of dollars in advance fees. The company also falsely told some consumers it could put an immediate stop to collection efforts, such as wage garnishments, levies, or liens. The lawsuit alleges that TaxMasters sometimes left people in worse financial shape after paying the company's advance fees, failing to respond to important deadlines or requests of tax authorities.

* * *

The lawsuit alleges that Taxmasters salespeople told consumers things like:

- "... based upon our success rate and our experience, on average, our clients see a savings of anywhere between 80 and 90% of what the IRS claims they owe."
- "We're highly successful; we are the most successful tax resolution company. We're 97% successful."
- "We'll save you anywhere from 65 to 90% is our goal on ... savings off the total tax debt. 97% of the time we reach that goal, the other 3% are the people who just flat out lie to us."

*See* Office of Minnesota Attorney General, Press Release, December 16, 2010. Other examples of Defendant's deceptive sales practices are evident in the Transcript of the initial free consultation between Denise Miranda, attached hereto as Exhibit "B" at pp. 8, 12, 24-25, and 40-41, where Defendants claim that the staff tax attorney, who's services Defendants sell, has never lost a case.

This is definitely something we can help you out with. One of our, in fact our main audit attorney, his name is Clyde Miller, you'll be, you'll be glad to know he's never lost a case.

* * *

So you're looking at $6,500 for us to take over the case and get all this taken care of. Now, again, I stress to you that, that Clyde Miller has never lost a case. --.

* * *

...and we don't typically take on case that we know we're, that we know we can't win.

* * *

Because what we're going to do is tie, we're going to tie it up in litigation as long as we can.

33.     During the initial "free consultation" call, Defendants overstate their services and true ability to eliminate people's tax obligations to the class. Defendants engage in such activities in order to push sales and maximize their profits, to class members' financial detriment. *See* Affidavit of Crespin Gonzales, attached hereto as Exhibit "E".

34.     Upon information and belief, over the last four years, over 200 California consumers (and many more nationwide as evidenced by Defendants' sales figures set forth below) have retained TaxMasters during similar initial "free consultation" calls to "solve [their] tax problems."

**C     TaxMasters Makes Money By Aggressively Booking Consumer Sales Contracts Through "Free Consultations" with a Sales Person.**

35.     TaxMasters primarily earns revenue by charging consumers to prepare and amend tax returns, negotiate tax settlements, and handles IRS audits and collection cases.

36.     Taxmaster's advertisements and website offer consumers "free consultations."  In truth, this is nothing but a scheme to connect vulnerable class members facing legal problems with an aggressive sales person changed only with closing a sale and collecting an immediate fee, not providing the consumer any meaningful tax "consultation" from a qualified professional.

37.     When consumers agree to retain TaxMasters during the initial sales call, its sales people ask them to pay the company's large fees in advance.  These fees typically range from $1,500.00 to $10,000.00 or more.  Although many of these consumers are already experiencing financial difficulties, TaxMasters' salespeople ask them to empty their checking and savings accounts, borrow the amounts required, or charge its fees on high-interest credit cards.  If TaxMasters cannot get full payment in advance, its salespeople collect the large amount available as a "down payment," and place consumers on installment plans.

38.    The skill of TaxMasters' sales staff in extracting large, up-front fees from consumers is reflected in the company's extraordinary revenue growth in the last four years. For 2007, TaxMasters reported revenues of $6.5 million. For 2008, its revenues grew by 132% to $15.1 million. For 2009, its revenues grew by 131.1% to 36.8 million. For the first nine months of 2010, when compared to the same period in 2009, TaxMasters' revenues grew by 21.8% to 32.8 million. Patrick Cox noted in a November 17, 2010 press release that "We have implemented extensive advertising campaigns in the media most followed by our customers and we anticipate this will translate into higher revenue in the upcoming quarters."

39.    As TaxMasters' revenues have increased, so has the number of its employees. In 2006, the company employed 15 people, in 2007 it employed 101 people, by the start of 2009 it employed 210 people, and it currently employs over 300 people. TaxMasters' management has expressed plans to continue expanding TaxMasters staff in coming years.

40.    In March 2010, TaxMasters told investors that the "driving factor for assessing success at TaxMasters is both total revenue and newly booked sales contracts that will become future revenue." Further, TaxMasters states on its website that "[t]he largest growth driver for TaxMasters has been the increasing number of taxpayers who have issues dealing with the IRS and who are out of tax compliance. The recession and rising unemployment has increased the number of at-risk Americans, those who are most likely to have the severe financial difficulty that causes problems meeting IRS obligations."

41.    TaxMasters' focus on booking new sales contracts is apparent from its solicitation in the "help wanted" section of its website for "talented closers" to work as Tax Consultants—Inside Sales Representatives. Such tax consultants will purportedly utilize their tax expertise to recommend services appropriate to resolve consumers' tax problems. It is plain from TaxMasters' solicitation, however, that the

1   focus of the tax consultant position is closing sales contracts rather than advising

2   consumers appropriately about tax issues.  At relevant time, TaxMasters' solicitation

3   enticed potential sales employees with the promise that:

4       Salespeople search years to find an inside sales job as sweet as this.
        The leads come to you qualified and ready to bite.  All you have to do
5       is what you were born to do.  Take the caller through a custom
        solution based on TaxMasters sound and proven service offerings and
6       convert qualified prospects to closed deals.

7   It further provides that although "[p]revious tax knowledge is not required," an "[in]

8   depth understanding of effective closing techniques practiced to an art form are

9   required." *See* Defendants' Hiring Advertisement, attached hereto as Exhibit "R".

10      42.   These "consultants" are the people who provide the "free consultation"

11  offered to consumers on Defendants' website and advertising.   Callers who dial

12  Taxmaster's toll-free phone number do not receive any actual "consultation" on tax

13  issues at all.  Instead, all they receive is a sales pitch from a salesperson charged with

14  closing a sale and who is unqualified to provide any meaningful tax "consultation."

15  *See* Exhibit "B" (Miranda Affidavit).

16      43.   Defendants' offer of a "free consultation" is misleading, deceptive,

17  unfair and false.

18  **D.   TaxMasters Utilizes "Bait and Switch" Tactics, Charging Consumers**

19  **Large, Up-front Fees Before Giving Them a Copy of the Engagement**

20  **Agreement Contract.**

21      44.   As noted above, TaxMasters collects full or partial payment from

22  consumers at the time of the initial sales call with the "consultant." It does so before

23  giving consumers a copy of the Engagement Agreement that it requires them to

24  execute and return.  TaxMasters does not e-mail or fax a copy of its Engagement

25  Agreement to consumers until after it has completed the sales call and processed the

26  payment.

27

28

COMPLAINT (CLASS ACTION)                                                          17

45.   TaxMasters utilizes its "third-party" verification system to bind consumers to payment for TaxMasters' services whether the consumers return an executed copy of the contract or not.  If after receiving a copy of the Engagement Agreement, the consumer decides they do not want to enter into a contractual relationship with TaxMasters on the terms stated and refuse to execute and return it, TaxMasters refuses to refund the money these consumers have paid on the basis that they have verbally agreed to pay TaxMasters its fee.

46.   As described above, terms in the Engagement Agreement contradict representations made by TaxMasters' salespeople during the telephone consultation when payment is made.

47.   Taxmaster's refusal to provide class members who have contracted with it over the telephone and internet any cancellation or recission period violates applicable law.

**E.     Plaintiff Jeffery DeLong's Transaction with Defendants**

48.   On October 20, 2008, Plaintiff Jeffery DeLong called Taxmasters' Houston, Texas offices via telephone for a free consultation regarding a tax dispute he had with the IRS pertaining to taxes claimed due by the IRS for tax year 1997. Plaintiff spoke with "tax consultant" James Arline at Taxmasters' offices in Houston.

49.   During the telephone call between Plaintiff and Arline on October 20, 2008, Plaintiff entered into a contract with Taxmasters for tax relief services. During that call Plaintiff agreed to pay Taxmasters $3,000.00 in full for their services and in turn, provided Taxmasters authorization to charge his Visa ATM/check card in that amount.

50.   At the time, Taxmasters had not yet provided Plaintiff any written Engagement Agreement or other documents.   Plaintiff was told he could not receive the written contract until he had first authorized payment.   Only after the aforementioned telephone call ended did Plaintiff receive the written engagement

1    agreement and other documents from Defendants via fax.   *See* Defendants'

2    Engagement Correspondence to Plaintiff, attached hereto as Exhibit "K".

3        51.    On October 20, 2008 and prior to returning any forms or agreements,

4    Plaintiff e-mailed Arline asking that he email Plaintiff back "if the terms have been

5    modified since our discussion, prior to payments being made."   Arline did not

6    respond. *See attached* Exhibit "L".

7        52.    On October 21, 2008, Plaintiff returned the executed engagement

8    agreement.

9        53.    Plaintiff then discovered that the original terms discussed with Arline

10   during the initial consultation had been altered, including that the $3,000.00 paid

11   may no longer be payment in full for Taxmasters' services.   Had these terms been

12   made clear to Plaintiff before authorizing payment, he would not have entered into

13   the contract and paid Taxmasters any money.

14       54.    On October 24, 2008, Plaintiff notified Taxmasters in writing via e-mail

15   to james.arline@txmsttr.com and info@taxmastr.com to suspend all activities, to

16   cancel the contract, and provide a full refund of any and all funds received.   At that

17   point, no services had yet been provided to Plaintiff by Taxmasters to earn any fee.

18   To ensure delivery, Plaintiff printed out the same e-mail and faxed it to Arline at

19   Defendants' fax number that day. *See attached* Exhibit "N".   Plaintiff also revoked

20   the IRS Power of Attorney he had previously granted to Defendants by e-mail on

21   October 24, 2008 by e-mail and facsimile. *See attached* Exhibit "O".

22       55.    Instead of agreeing to cancel the contract, on November 6, 2006

23   Plaintiff received a package from Taxmasters' offices in Texas notifying him that

24   Taxmasters was proceeding with the contract.   The package was postmarked

25   November 3, 2008, yet the letter was backdated to October 23, 2008. *See attached*

26   Exhibit "M". On November 6, 2008, Plaintiff sent a letter to Taxmasters offices in

27

28

COMPLAINT (CLASS ACTION)                                                    19

Houston, Texas, via certified mail, confirming this. That certified letter was received by Defendants in Houston on November 7, 2010. *See attached* Exhibit "P".

56.   On or about October 27, 2008, Plaintiff complained to the Better Business Bureau in Houston Texas and his bank regarding his dealings with Defendants and Defendants' deceptive conduct and practices.

57.   Taxmasters refused to return the $3,000.00 Plaintiff paid them.

58.   While eventually Plaintiff received credit from his bank of the $3000 that Taxmasters refused to refund directly, he has nevertheless, incurred out of pocket loss as a result of Defendants' unlawful and deceptive conduct complained of herein, including but not limited to payment for facsimile costs, certified mailing costs, printing, other transaction costs and lost interest on his money. *See attached* Exhibit "Q".

## V.   CLASS ACTION ALLEGATIONS

59.   This action is brought as a class action and may properly be so maintained pursuant to Fed. R. Civ. P. 23 and other applicable rules of civil procedure.   This action seeks recovery of actual damages, restitution, injunctive and equitable relief arising from Defendants' unfair business practices.

60.   **Class Definition:** The Class sought to be represented in this action is defined as follows:

> All persons residing in California who, during the Class Period, contracted with TaxMasters for services and paid TaxMasters money during an initial telephone consultation. (hereinafter, the "Class").

The Class Period dates back four years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was commenced and continues through the present and the date of judgment. Excluded from the Class are: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member

of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case.

61.   **Numerosity of the Class.**   Members of the class and subclass are so numerous that their individual joinder herein is impracticable.   The precise number of members of the class and subclass and their addresses are presently unknown to Plaintiff, but is believed to each exceed 500 people. The precise number of persons in the class and their identities and addresses may be ascertained from Defendants' records. If deemed necessary by the Court, members of the class may be notified of the pendency of this action by mail and/or email.

62.   **Ascertainable Class**.   The proposed Class is ascertainable.   The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the Class and Subclass and hence, will have binding effect on all class members. These Class Members can be readily identified from business records, billing systems, and telephone records of the Defendants and other means readily available to the Defendants, and thus by the Plaintiff, through minimally intrusive discovery.   The class is numerous.   Joinder of all class members is impracticable due to the relatively small monetary recovery for each class member in comparison to the costs associated with separate litigation and likelihood that due to the nature of the underlying tax disputes that class members faced when initially contacting Defendants, class members are financially strapped.

63.   **Common Questions of Fact and Law Exist and Predominate over Individual Issues.**   There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class.  These common legal and factual questions include without limitation:

a. whether Taxmasters altered and/or breached class members contracts by changing and/or adding terms after receiving the initial payments, without consideration;

b. whether TaxMasters failed to proviode class members the required recision period under Bus. & Prof. Code § 17528.

c. whether TaxMasters falsely and deceptively represented, marketed and/or advertised that it provided "free consultations;"

d. whether TaxMasters sells legal services and advice and as such, has engaged in the unauthorized practice of law, rendering any contract void;

e. whether TaxMasters engages in illegal, unfair, deceptive, misleading, unconscionable, unlawful or fraudulent business practices prohibited by the CLRA and/or the UCL;

f. whether the Class is entitled to an accounting, restitution, disgorgement, damages and/or other relief due to Defendants' violations as described in this Complaint; and

g. whether an injunction is necessary in order to prevent Defendants from continuing to engage in illegal activity.

64. **Typicality.** The claims of Plaintiff DeLong are typical of the claims of the Class. Plaintiff and all Class members contracted with TaxMasters to reduce their tax liability during the Class Period. Plaintiff and all Class members paid a substantial up-front fee, only to have the contractual terms altered. Plaintiff and all Class members have been the subject of Defendants' unfair, illegal, fraudulent and deceptive business practices as described herein. The relief sought is common, unitary, and class-wide in nature.

65. **Adequacy.** Plaintiff is an adequate representative of the Class on whose behalf this action is prosecuted. Plaintiff's interests do not conflict with the interests of the Class. Plaintiff has retained competent counsel with

experience in class action litigation and will prosecute this action vigorously. As a result, Plaintiff can fairly and adequately represent and protect the interests of the class in that there are no conflicts between their interests and the interests of other class members, this action is not collusive, the named Plaintiff and her counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

66. **Community of Interest**. The proposed Class has a well defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiff has claims typical of the Class members.

67. **Superiority of Class Adjudication**. The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received. The economic damages, restitution and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims. Given the amount of the individual class members' claims, few, if any, class members could afford to seek legal redress individually for the wrongs complained of herein. Even if the members of the class themselves could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer

management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

68.    In the alternative, the above-referenced class may be certified because:

    a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual class members' claims which would establish incompatible standards of conduct for Defendants;

    b. The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudications, or which would substantially impair or impede the ability of other class members to protect their interests; and,

    c. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the class.

## VI. FIRST CAUSE OF ACTION
### FOR RECISSION OF CONTRACT

69.    Plaintiff fully incorporates by reference herein all of the above paragraphs, as though fully set forth herein.

70.    The contract between Defendants and each class member is formed when Defendants demand and receive the initial payment from the consumer during the initial telephone consultation.

71.    Only after the class member has entered into a contract with Defendants and provided payment based on the terms then-disclosed do Defendants send the

1   consumer a written contract disclosing new, different and additional terms, without

2   providing additional consideration. Such terms lack consideration.

3       72.    In the initial sales call, TaxMasters' representatives misrepresent and

4   fail to disclose important aspects of TaxMasters' service and the terms on which they

5   are offered, including, the fact that TaxMasters treats all fees paid as non-refundable;

6   the fact that TaxMasters will not begin working on a client's case until he/she has

7   paid all of the installment payments agreed to; that additional charges (at rates up to

8   $950 per hour) may be imposed at Defendants discretion when they subjectively feel

9   the undisclosed "budgeted time" and hourly rates allocated to the initial fee

10  previously paid is exhausted; that Defendants alone may unilaterally terminate the

11  agreement "without refund" (even if services are never performed) should they

12  subjectively feel the client is uncooperative or "abusive;" that the work will actually

13  not be performed by Defendants but be subcontracted to other undisclosed persons or

14  entities to perform and for which the class member waives important rights to

15  proceed against; that Defendants can sue the Class member for unlimited damaged,

16  but class members can only proceed against Defendants for a maximum recovery

17  equal to 20% of the contracted fee; that all disputes the class member has against

18  Defendants are limited and must be arbitrated in Houston, Texas while Defendants,

19  in contrast, retain their right to sue the class member in a state or federal court of

20  their choosing with no limitation on claims or recoveries.

21      73.    Further, Defendants fail to provide the required recission period under

22  Civ. Code 17538 et seq., but instead treat all fees paid by class members as non-

23  refundable even when no services have yet to be performed.  If a consumer upon

24  receiving the written contract attempts to reject the newly disclosed terms in the

25  written document, Defendants claim that the consumer is already contractually

26  bound and that it is entitled to keep all fees despite the fact no work has been done or

27  services performed to earn the fee. Thus, consumers are under financial duress and

28

have no choice but to go forward or else they risk losing the entire fee paid (plus any future scheduled installment payments to be debited from their accounts) without receiving any tax relief services in exchange.

74. As such, the contracts are unconscionable, unlawful, lack mutuality void, unenforceable and should be rescinded. Alternatively, to the extent Defendants attempt to alter the original contract by imposing new terms, they breach the original contract. All fees collected from class members should be refunded, along with all other damages and other relief that may be appropriate, including reasonable attorneys fees and costs.

## VII. SECOND CAUSE OF ACTION

### (Unlawful /Void Contract For Sale of Legal Services)

75. Plaintiff fully incorporates by reference herein all of the above paragraphs, as though fully set forth herein.

76. Defendants sell legal and other professional services to class members. *See, e.g.,* Exhibit "B", at pp. 8, 12, 19, 24-25:

> This is definitely something we can help you out with. One of our, in fact our main audit attorney, his name is Clyde Miller, you'll be, you'll be glad to know he's never lost a case.

> * * *

> So you're looking at $6,500 for us to take over the case and get all this taken care of. Now, again, I stress to you that, that Clyde Miller has never lost a case. --.

> * * *

> ...and we don't typically take on case that we know we're, that we know we can't win.

> * * *

> Because what we're going to do is tie, we're going to tie it up in litigation as long as we can.

> * * *

> Then we start building a case, while we are putting them, you know, while were stalling them with, you know, tying them up in litigations

and everything else and buying as much time as possible. You know, we want to try to stretch this out as long as we can, because what's, what happens here is the auditor it going to get tired of waiting, and he's just going to try, he'll either drop the case and say forget about it and move on to the next person, or you know, he'll go ahead and try to follow through with it, in which case, you know, we're, we're more than welcome to invite that, bring it on, in other words. You know, we, by the time, by the time they get done with all the litigation, we'll be ready for the case and have all the proof and documentation that we need, and it's at that point we pretty much just lay it down on the table and say listen, this is what it is, you know, you can scream and moan all you want to about this and that, but we have, right here in black and white, and according to tax article four, section six, you know, this is what's going on, this is the right stuff that we need. We, it's just a matter of knowing the laws and knowing what your rights are, and we do.

Like I told you earlier, Clyde Miller has never lost a case. We actually do more audits in one month than most firms do in a year and most tax attorneys do in a lifetime, so audits are one of our main things.

77.    Defendants contract to serve as class members' agents with regard to legal claims and disputed debts and liabilities.

78.    Defendants sell class members services which require the provision of professional legal judgment, legal discretion, legal analysis and advice with regard to legal claims and disputed debts and liabilities. *See attached* Exhibit "A".

79.    While Defendants sell legal services, they are not licensed to practice law in any state. By providing legal judgment, legal discretion, legal analysis and advice with regard to legal claims and disputed debts and liabilities and selecting and preparing legal instruments and documents, and charging consumers a fee therefore, Defendants rendered services which cannot lawfully be rendered by a person not admitted to practice law in the State of California for a fee or other compensation. Any such contract between Defendants and class members for legal services is unlawful and void.

80.    As a result of the foregoing, all fees collected from class members should be refunded, along with all other damages and other relief that may be appropriate, including reasonable attorneys fees and costs.

# VIII. THIRD CAUSE OF ACTION

## FOR VIOLATION OF *CONSUMER LEGAL REMEDIES ACT § 1750*

### (Brought on Behalf of Subclass Only)

81.   Plaintiff fully incorporates by reference herein all of the above paragraphs, as though fully set forth herein.

82.   Plaintiff brings this action individually, on behalf of the Class, and on behalf of the general public pursuant to *§ 1750 of the Consumer Legal Remedies Act*. Plaintiff and the purported class members are "consumers" within the meaning of *California Civil Code § 1761(d)*, who purchased goods or services, primarily for personal, family, or household use.

83.   Each Defendant is a "person" as defined by *California Civil Code § 1761(c)*.

84.   Venue is proper pursuant to *California Code of Civil Procedure § 1780(c)* because a substantial portion of the transactions, the subject matter of the above-captioned action, occurred in Los Angeles County.

85.   The services described above were bought by Plaintiff and by other consumers similarly situated for tax debt relief, and as such are subject to the requirements of the Consumers Legal Remedies Act and other consumer protection laws of the various states where Plaintiff Class members reside.

86.   Plaintiff is informed and believes, and thereon alleges, that TaxMasters intended their misrepresentations and/or advertisements to result in the above-mentioned "bait and switch" tactics, and to receive up-front fees from consumers similarly situated to Plaintiff.

87.   Defendants have engaged and continue to engage in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by *California Civil Code § 1750, et seq.* to the detriment of Plaintiff and the Class members.  Plaintiff and the Class members have suffered, and continue to suffer, harm as a proximate

1  result of the violations of law and wrongful conduct of each and every Defendant as

2  alleged herein.

3      88.    Defendants have violated Civil Code §§1770(a)(5), (7), (14) and (19),

4  through the acts alleged herein, thereby entitling plaintiffs and members of the class

5  to relief under Civil Code §1780 by, *inter alia*:

6      a)    Representing that goods or services have characteristics which

7  they do not have or that a person has a status, affiliation or connection which he or

8  she does not have, in violation of §1770(a)(5);

9      b)    Representing that goods or services are of a particular standard,

10  quality or grade when they are not, in violation of section 1770(a)(7);

11      c)    Representing that a transaction confers or involves rights,

12  remedies or obligations which it does not have or involve, or which are prohibited by

13  law, in violation of §1770(a)(14); and

14      d)    Inserting an unconscionable provision in a contract, in violation

15  of §1770(a)(19).

16      89.    Defendants' violations of Civil Code §1770 described above present a

17  continuing threat to class members and members of the public in that Defendants are

18  continuing to engage in these practices, is continuing to refuse to refund amounts

19  paid by consumers and will not cease until an injunction is issued by the Court.

20  Unless Defendants are enjoined from continuing to engage in these practices,

21  Plaintiff and the members of the Class, who lack an adequate remedy at law to deter

22  Defendant's wrongful conduct, will be irreparably harmed.

23      90.    By letter dated **February ---, 2011**, mailed as directed in Civil Code

24  section 1782, Plaintiffs notified Defendants of its violations of the Consumer Legal

25  Remedies Act and demanded that Defendants provide a remedy that rectifies its

26  conduct.

27

28

91.     As a direct and proximate result of the aforementioned acts, Plaintiffs and each member of the class they represent, have suffered injury.  Plaintiffs and the members of the class are therefore entitled to injunctive and declaratory relief, an award of attorneys' fees and costs against Defendant pursuant to the provisions of Civil Code § 1780(d).

92.     In this complaint, Plaintiff and the Class members seek only injunctive and other equitable relief pursuant to Civil Code § 1780(a) and (d).   If Defendants fail to give or agree to give within a reasonable time (30 days), a sufficient remedy as set forth in Civil Code section 1782(c) for the above-mentioned violations of law, Plaintiff will amend this complaint to also seek damages.

## IX. FOURTH CAUSE OF ACTION

### (For Violation of *Business and Professions Code § 17500 et. seq.*

93.     Plaintiff fully incorporates by reference herein all of the above paragraphs, as though fully set forth herein.

94.     Plaintiff fully incorporates by reference herein all of the above paragraphs, as though fully set forth herein.

95.     Plaintiff brings this action individually, on behalf of the Class, and on behalf of the general public pursuant to *§ 17500 et. seq. of the Bus. & Prof. Code* for Defendants' false advertising practices.

96.     Defendants' statements, representations, half-truths and failures to disclose as alleged herein were false, misleading, and likely to deceive the General Public, including Plaintiff and other members of the Class.

97.     Defendants fail to provide any free consultation" as advertised.  Rather, only consultation Defenndats provide for free before demanding and receiving payment from a class member is with a salesperson.

98.     Defendants promise "we solve your tax problems," and overstate their true success rates eliminating clients' tax debts.

99.   Defendants fail to provide a written contract to the consumer prior to charging fees, and binds the consumer to their oral commitment and payment, only to thereafter provide them with a written contract to the contrary, as described above.

100.   Defendants violate *§ 17500 et. seq. of the Bus. & Prof. Code* by refusing to provide consumers the required cancelation / recission period required for telephone and internet sales.

101.   Defendants knew, or in the exercise of reasonable care should have known, that their statements, representations, half-truths and failures to disclose as alleged herein were false and misleading.

102.   Plaintiff is informed and believes, and upon such information and belief, alleges that the General Public, including Plaintiff and other members of the Class, despite the exercise of reasonable diligence, were likely to be and were deceived by said statements, representations, half-truths and failures to disclose.

103.   As a result and in reliance upon the above-alleged acts of false advertising, Plaintiff and the other members of the Class were wrongfully deprived of the use and enjoyment of all the monies that TaxMasters promised it could save them.

104.   The untrue and misleading statements, representations, half-truths, and failures to disclose alleged hereinabove present a continuing threat to members of the General Public in that the acts alleged herein have been continuous and are ongoing, and the General Public will continue to suffer the harm alleged herein.

105.   Defendants have been unjustly enriched as a result of this wrongful conduct, and Plaintiffs are therefore entitled to disgorgement and restitution sufficient to fully disgorge the revenues obtained from plaintiffs as a result of Defendants' false and misleading advertising.

## X. FIFTH CAUSE OF ACTION

1    **FOR VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES—**

2    **CONSUMER PROTECTION ACT, TEX. BUS. & COM. CODE § 17.41 *et seq.***

3    106. Plaintiff fully incorporates by reference herein all of the above

4    paragraphs, as though fully set forth herein.

5    107. Defendants do not tell class members residing in California when

6    entering into a contract and receiving payments that the class member has waived

7    any rights to proceed against any service provider for damages, that he/she must

8    arbitrate disputes in Harris, County, Texas, and pay all costs of arbitration.

9    Defendants, in contrast, do not bind themselves to similar terms and limitations, and

10   retain their right to sue any class member in court without limitation.

11   108. The dispute resolution terms, waivers and restrictions set forth in

12   Defendants' written contract are unlawful, procedurally and substantivekly

13   unconscionable, unfair and void and unenforceable.

14   109. Defendants attempt to add such terms after receiving payment from

15   class members lack mutuality, are unconscionable, unlawful and void. Defendants

16   conduct also violates § 17.46(b)(23) of the TEXAS DECEPTIVE TRADE

17   PRACTICES—CONSUMER PROTECTION ACT, TEX. Bus. & COM. CODE §

18   17.41 *et seq.* (Vernon 2002 & Supp. 2009)("DTPA") and other applicable law.

19   As a result of the foregoing, class members have been injured and suffered damage.

20   As a result, class members are entitled to declaratory relief, damages, injunctive

21   relief and all other relief that may be appropriate under the circumstances.

22   ## XI. SIXTH CAUSE OF ACTION

23   **FOR VIOLATION OF *BUSINESS AND PROFESSIONS CODE § 17200***

24   110. Plaintiff fully incorporates by reference herein all of the above

25   paragraphs, as though fully set forth herein.

26

27

28

111.   Plaintiff brings this action individually, on behalf of the Class, and on behalf of the general public pursuant to § 17200 *et. seq.* of the Bus. & Prof. Code, the Unfair Competition Act (the "UCL").

112.   Plaintiff brings this claim on behalf of the Class pursuant to *Bus. & Prof. Code §17204* which prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice."   Plaintiff and the Class seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.  Plaintiff suffered injury and out of pocket loss as a result of Defendants' conduct, as described above Defendants' conduct, as described above. Defendants' conduct, as described above, has been and continues to be detrimental to the Class and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of *Code of Civil Procedure §1021.5*.

113.   Defendants conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable and/or fraudulent business acts and practices in California, and that conduct emanated to and affected Class members throughout California.   As such, the UCL applies to all such transactions and dealings.

114.   The acts complained of herein, and each of them, constitute unfair, unlawful or fraudulent business practices in violation of *Business and Professions Code §17200 et. seq.*  Such acts and violations have not abated and will continue to occur unless enjoined.   Defendants' acts and practices described herein offend established public policies, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

115.   The unfair business practices set forth above have and continue to injure the Class and the general public and cause the loss of money, as described further within.  These violations have unjustly enriched the Defendants at the expense of the

1    Class.   As a result, Plaintiff, the Class and the general public are entitled to
2    injunctive relief, restitution, and other equitable relief.   Failing to compensate the
3    Class Members for necessary expenditures constitute restitution of property earned
4    by the consumer.
5    By reason of the foregoing, Plaintiff and each member of the Class are entitled to
6    recover   from   Defendant   restitution,   unpaid   expenditures,   injunctive   relief,
7    declaratory relief, the cost of bringing this action (including reasonable attorneys'
8    fees and costs), and any other relief allowed by law and deemed just and equitable in
9    the circumstances.

## VII.   PRAYER FOR RELIEF

11       WHEREFORE, Plaintiff, Jeffery DeLong, as an individual and on behalf of
12   those similarly situated, pray for relief and judgment against Defendants, jointly and
13   severally, as follows:

14       A.     For an order certifying the class and any appropriate subclasses thereof
15   and appointing Plaintiff Jeffery DeLongand his counsel to represent the Class in this
16   litigation;

17       B.     For an order pursuant to *California Business and Professions Code
18   section 17203* and *California Civil Code section 1780(a)(2)* and other unfair
19   competition laws and/or consumer protection laws of the various states where
20   Plaintiff Class members reside enjoining TaxMasters from falsely advertising and/or
21   charging up-front fees for services it cannot perform.

22       C.     For judgment against TaxMasters ordering it to restore to Plaintiffs and
23   the Class Members all amounts which may have been acquired by means of any
24   practices found by the Court to be contrary to the provisions of *California Business
25   and Professions Code sections 17200, et seq.* and other unfair competition laws of
26   the various states where Plaintiff Class members reside;

27

28

COMPLAINT (CLASS ACTION)                                                              34

1    D.    For judgment against TaxMasters ordering it to disgorge its unlawfully-
2  obtained revenues, which may have been acquired by means of practices found by
3  this Court to be contrary to the provisions of *California Business and Professions*
4  *Code sections 17200, et seq.* And under other unfair competition laws of the various
5  states where Plaintiff Class members reside;

6    E.    For civil penalties as provided by *California Business and Professions*
7  *Code section 17206* and other unfair competition laws of the various states where
8  Plaintiff Class members reside;

9    F.    For payment of attorneys' fees pursuant to *California Code of Civil*
10 *Procedure section 1021.5* and/or pursuant to the "common fund" doctrine and/or
11 pursuant to equitable principles of contribution;

12   G.    For preliminary and permanent injunctive relief prohibiting Defendants
13 from engaging in the wrongful practices alleged in this Complaint;

14   H.    For costs associated with any and all notice to the Class Members
15 pursuant to *California Civil Code section 1781(d)* and other consumer protection
16 laws of the various states where Plaintiff Class members reside;

17   I.    For payment of costs of suit incurred herein;

18   J.    For payment of prejudgment interest as provided by law; and

19   K.    For any such further relief as this Court deems equitable, just and
20 proper.

Respectfully submitted,

RIDOUT & LYON, LLP

Dated: February 14, 2011 By:

Christopher P. Ridout, CA Bar No. 143931
Devon M. Lyon, CA Bar No. 218293
Caleb LH Marker, CA Bar No. 269721
555 E. Ocean Boulevard, Suite 500
Long Beach, CA  90802
(562) 216-7380 Telephone
(562) 216-7385 Fax

**Attorneys for Plaintiff**

COMPLAINT (CLASS ACTION)

# INDEX OF ATTACHED OF EXHIBITS

A. Plaintiff DeLong's Engagement Agreement with Defendants

B. Affidavit of Denise Miranda and Transcript of Telephone Sales Call BetweenTaxMasters and Denise Miranda

C. Affidavit of Curtis J. Smith, Jr.

D. Affidavit of Karen Sanchez

E. Affidavit of Crespin Gonzales

F. Affidavit of Arturo Fierro

G. Affidavit of Rosalinda Fierro, Texas Office of the Attorney General

H. Correspondence to Plaintiff DeLong from Harris County (Texas) District Attorney dated June 16, 2009

I. Defendants' Correspondence to Consumer Denying Refund dated October 26, 2009

J. Defendants' Collection Correspondence to Consumer dated February 12, 2010

K. Defendants' Engagement Agreement Cover Letter to Plaintiff DeLong dated October 20, 2008

L. Plaintiff's E-mail to Defendants dated October 20, 2008

M. Defendants' Correspondence to Plaintiff DeLong dated October 23, 2008

N. Plaintiff's Correspondence to Defendants and Fax Confirmation Log dated October 24, 2008

O. Plaintiff's E-mail to Defendants revoking Power of Attorney dated October 24, 2008 and Fax Confirmation Log

P. Plaintiff DeLong's Correspondence to Defendants dated November 6, 2008 and Certified Mail Receipt

Q. Correspondence to Plaintiff from Bank of America and Plaintiff's Corresponding Certified Mail Receipt dated November 6, 2008

R. Defendants' Hiring Advertisement