1  RIDOUT & LYON, LLP
   CHRISTOPHER P. RIDOUT (State Bar No. 143931)
2      Email: c.ridout@ridoutlyonlaw.com
   DEVON M. LYON (State Bar No. 218293)
3      Email: d.lyon@ridoutlyonlaw.com
   CALEB LH MARKER (State Bar No. 269721)
4      Email: c.marker@ridoutlyonlaw.com
   555 E. Ocean Blvd., Suite 500
5  Long Beach, California  90802
   (562) 216-7380 Telephone
6  (562) 216-7385 Facsimile



FILED
CLERK, U.S. DISTRICT COURT

MAR 2 3 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

7  **Attorneys for Plaintiff**

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10 | JEFFERY DELONG and DENNIS | CASE NO:  2:11-cv-01431-ODW-AGR
   | HOLMES, individually and on behalf of |
11 | all others similarly situated, | **FIRST AMENDED COMPLAINT (CLASS ACTION)**
12 |        Plaintiffs, | 1)  Recission of Contract
13 |     vs. | 2)  Unlawful/Void Contract for Sale of Legal Services
14 | TAXMASTERS, INC., a Nevada corporation, TMIRS ENTERPRISES, |
15 | LTD., a Texas partnership, and DOES 1 through 50, inclusive, | 3)  Violation of California Civil Code § 1750 *et seq.*
16 |        Defendants. | 4)  Violation of Business and Professions Code § 17500 *et seq.*
17 |
18 | | 5)  Violation of Texas Deceptive Trade Practices – Consumer Protection Act
19 |
20 | | 6)  Violation of Business and Professions Code § 17200 *et seq.*
21 | | (JURY TRIAL DEMANDED)

22

23     Plaintiffs Jeffery DeLong (hereinafter "DeLong") and Dennis Holmes

24 (hereinafter "Holmes") (DeLong and Holmes are collectively referred to herein as

25 the "Plaintiffs"), bring this action, by and through their undersigned counsel, on

26 behalf of themselves and all others similarly situated persons in the class defined

27

28

below, based upon information and belief and the investigation of counsel, except for information based upon personal knowledge, and hereby allege as follows:

## I.   NATURE OF ACTION

1.     This class action seeks damages, restitution, injunctive and declaratory relief on behalf of a class of all persons residing nationwide who contracted with Defendants TaxMasters, Inc., a Nevada corporation and/or TMIRS Enterprises, Ltd., a Texas partnership (collectively referred to herein as "Defendants" and/or "TaxMasters") to work on their behalf with the Internal Revenue Service ("IRS") and/or other tax authorities as it related to taxes owed by the person, the preparation and filing of overdue tax returns, handling IRS enforcement actions, and/or the performance of other  tax-related services involving the IRS.  This action seeks to remedy Defendants' deceptive and unlawful business conduct towards its customers including, but not limited to, false advertising practices, "bait and switch" tactics and altering contractual terms without valid consideration.   Once retained, Defendants unlawfully and unilaterally alter the contractual terms disclosed when they first took payment from class members without additional consideration, deliver little of what they promise in their sales pitches - or could possibly provide (i.e., the successful elimination of tax debt owing the IRS and/or state taxing authorities in the majority of cases), refuse to provide refunds even when services have yet to be performed or a contract signed stating the additional terms sought to be imposed by Defendants, and demand that class members travel to Houston, Texas to resolve any claims for refunds or other disputes.   As such, the Court should declare all such contracts unlawful, unconscionable and void and order Defendants to refund and provide restitution of all fees collected from the class, in addition to the other relief demanded below.

## II.   JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332.

3.     Venue is appropriate in this Court.  Plaintiff Dennis Holmes resides in this district.  Defendants transact business in this District and certain events and conduct giving rise to the claims in this action occurred in this District.  Holmes contracted with Defendants in this district.  Each Defendant has sufficient minimum contacts in the State of California or otherwise intentionally prevails itself of the California market through television, radio and internet advertising located in California and other activities, so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

### III.   THE PARTIES

4.     Plaintiff Jeffery DeLong is an adult individual who resides in the State of California, County of Mendocino.  Plaintiff DeLong has a physical impairment that substantially limits one or more major life activities and is a "disabled person" as that term is defined by Cal. Bus. and Prof. Code § 17206.1(b)(2).

5.     Plaintiff  Dennis Holmes is an adult individual who resides in the State of California, County of San Bernardino.

6.     At relevant times during the class period, DeLong and Holmes were both customers of Defendants TaxMasters, Inc., a Nevada corporation and/or TMIRS Enterprises, Ltd., a Texas partnership.  As a result of Defendants' unlawful and unconscionable conduct described further herein, suffered harm, injury and loss in an exact amount to be proven at trial.  Since Plaintiffs were harmed and suffered out of pocket loss in a manner typical of the Class, as confirmed by the recent actions taken by the Attorney Generals of several states against Defendants, including Texas and Minnesota, they bring this action as a class action.

7.     Upon information and belief, TaxMasters, Inc. is a publicly traded (NASDAQ: TAXS) Nevada corporation with its principal place of business located at 900 Town & Country Lane, Suite 400, Houston, TX  77024.  The agent for service

1   of process is Residential Agency National, Incorporated, 377 S. Nevada Street,

2   Carson City, NV 89703.

3       8.   Upon information and belief, TMIRS Enterprises, Ltd., is a Texas

4   partnership with its principal place of business located at 900 Town & Country Lane,

5   Ste. 400, Houston, TX 77024. Defendant TMIRS affairs are directed and controlled

6   by TM GP Services, LLC, its General Partner. TM GP Services, LLC is a Texas

7   limited liability company doing business throughout the United States, including

8   Pennsylvania, with a principal place of business at 900 Town & Country Lane, Suite

9   # 400, Houston, TX 77024 GP Services, LLC is a Texas limited liability company

10  doing business throughout the United States, with a principal place of business at

11  900 Town & Country Lane, Suite # 400, Houston, TX 77024

12      9.   Defendants unjustly profit from the activities challenged in this lawsuit.

13  For instance, in its 2009 annual report, Defendants reported annual revenue of

14  approximately $36.8 million.

15      10.  Plaintiffs are informed and believe that Defendants regularly conduct

16  business in the State of California directly or indirectly through subsidiaries owned,

17  licensed, operated, administered, managed, directed and/or controlled in the State of

18  California.

19      11.  Upon information and belief, the services Defendants provide class

20  members are performed at their offices, in Houston Texas.   The deceptive,

21  unconscionable and unfair business practices that Defendants engage in and

22  complained of herein are conducted in and from their primary business offices in

23  Houston, Texas and emanate to other states where class members reside, including

24  California, injuring those class members and causing them to incur out-of-pocket

25  loss.   Defendants are obligated to comply with Texas law with regard to operations

26  and business practices they conduct in and from Texas, even if those services affect

27  and injured consumers outside of Texas.   In addition, Defendants are also obligated

28

to comply with the laws of the states where they conduct business and contract with consumers, such as California.

## IV.   INTENT

12.   Defendants knowingly and intentionally undertook and directed that their respective businesses undertake the illicit practices which are the subject of this suit.

13.   Acting in concert, Defendants have undertaken a common scheme to systematically and intentionally ensnare and deceive unsuspecting and financially vulnerable consumers, like Plaintiffs, who at relevant times owed the IRS unpaid taxes and sought to address their tax problems, by systematically:

    a.  promising to eliminate class member's outstanding tax debts and obligations to the IRS;

    b.  establishing a "payment plan" for their services;

    c.  obtaining the consumers' credit card information, instantly charging monies against it;

    d.  failing to disclose hidden fees and other material terms at the time of contracting and receiving payment;

    e.  refusing to provide the required 30 day right of recission / cancellation with full refund required for telephone and internet sales;

    f.  then, only after receiving "non-refundable" payments from class members, altering and adding contractual terms and;

    g.  engaging in illegal collection services to pursue monies the Defendants deem are owed by class members - even when services have yet to be performed.

///

///

///

## IV.  FACTUAL ALLEGATIONS

**A.     Defendants Regularly Advertise in Order to Induce Potential Customers to Seek Their Counsel for Tax Liability Issues.**

14.    Defendants are in the business of performing tax relief services to individuals with federal and state tax debt problems and liabilities.

15.    Defendants do not have any "brick and mortar" stores to transact directly with consumers.   Instead, Defendants advertise on television, radio and internet markets both nationwide and throughout the State of California in order to reach prospective consumers and to induce them into contacting Defendants via telephone or internet concerning their tax liability problems.   All sales of services by Defendants are made via the Internet and telephone.

16.    Defendants utilize advertisements on national television and the internet (www.txmstr.com) that invite the consumer to solve their tax problems by calling TaxMasters' telephone number for a "free consultation" with a tax consultant.  *See e.g.* www.txmstr.com.

17.    Consumers who accept the invitation and call TaxMasters' toll free number are connected to a telephone sales representative who proposes a solution to the consumer's tax problems and then closes the deal by obtaining the consumers' credit card or bank account information without providing several material disclosures, including that the fees paid by the consumer will be immediately treated as non-refundable. *See* Affidavit of Denise Miranda and Transcript of Telephone Sales Call Between Defendants and Denise Miranda ("Miranda Affidavit"), attached hereto as Exhibit "B".

18.    Defendants operate what they describe as a 'tax resolution' firm, aimed at the market of taxpayers who have received an audit notice, a notice of tax deficiency, or are otherwise in some difficulty with the IRS.  Essentially TaxMasters offers to act as the taxpayers' agent in his/her dealings with the IRS. Although

TaxMasters claims that it "employ[s] and use[s] the expertise of ... tax attorneys [and] tax CPAs," it says that it "is not a law firm or a CPA firm." According to TaxMasters, it provides the following tax-related services, among others (a) stopping IRS wage garnishments, (b) stopping IRS property seizures:, (c) assistance with paying back taxes, (d) settlement of consumers' tax debts by reducing the amount of interest and penalties, (e) handling disputes in tax court.    The services that Defendants sell class members require legal judgment and advice to perform. *See attached* Exhibit "B" (Miranda Affidavit).

19.    The image and words of Patrick R. Cox, the President and Chief Executive Officer of TaxMasters, Inc., appear in the numerous TaxMasters television commercials and on the TaxMasters website, where he introduces himself as the founder of TaxMasters. He represents that TaxMasters will "get between" the IRS and the consumer, and will "solve" the consumer's tax problem. He says that former IRS agents, attorneys and other tax professionals are standing by to assist and advise the consumers with their tax problems.

20.    TaxMasters runs commercials which air frequently on network and cable television including MSNBC, CNN and Fox News, and on the internet. Customers who call the toll-free number featured in TaxMasters' advertisements are connected with an inside salesperson who is not required to have any previous tax knowledge, as a condition of employment, but rather is encouraged to have a thorough understanding of the sales process and how to close a sale. During the sales pitch, the salesperson presents the caller with a solution to his tax problem -- one of the services offered by TaxMasters -- and quotes a fee, which can run into thousands of dollars. The fee is generally presented as a flat fee.

21.    During the "free consultation" call, which is the initial call between a consumer and TaxMasters, the tax consultants work to "close the sale" by obtaining a credit card number or bank account from the consumer so that TaxMasters can

collect its fee.  To this end, TaxMasters' sales personnel emphasize the necessity of promptly retaining TaxMasters in order to solve the consumer's tax problem.  If the consumer asks to receive a written description of the service prior to agreeing to purchase TaxMasters' services, the salesperson refuses, telling the consumer that it is not possible to generate the documents without first inputting a payment method into the TaxMasters system. *See attached* Exhibit "B" (Miranda Affidavit).

22.   The fees that TaxMasters charge for its services are large, typically ranging from $1,500.00 to $10,000.00 or even more.  If the consumer cannot afford to pay the fee in whole, or if the consumer balks at agreeing to pay such a large amount without seeing written terms, the 'tax consultant' offers the consumer an installment plan to pay the TaxMasters fee.  The consumer is usually required to agree to a down payment of at least $500.00, or 25% of the total fee, whichever is greater.

23.   When the consumer agrees to retain TaxMasters and to make payment in full or payment via an installment plan, the tax consultant then turns the consumer's telephone call over to another member of the TaxMasters sales team, the "verifier" who tells the consumer what a good decision he/she has made and reviews the payment plan to which the consumer has agreed.  Neither the original consultant nor the verifier discloses to the consumer that it is TaxMasters' position that the consumer is now irrevocably bound to pay the initial fee and any future installments before the consumer has signed any written engagement letter or received any services from TaxMasters or that he/she has waived any claims.  *See attached* Exhibit "B" (Miranda Affidavit).

24.   After the call is ended, before TaxMasters sends the consumer any written materials or contract, TaxMasters charges the consumer's credit card, or debits the consumer's bank account, for the amount of the whole fee or down payment.  Only after a charge is made does Taxmasters *then* send a letter to the

consumer, along with the IRS form appointing TaxMasters as the consumers' agent, an engagement agreement, and engagement guide.  The letter instructs the consumer to immediately sign the engagement agreement and IRS forms and return them to TaxMasters.

25.   The engagement agreement is a multi-page standard-form document that contains numerous previously undisclosed terms and conditions printed in small type.  *See*, Plaintiff-Defendants Engagement Agreement, appended as Exhibit "A" hereto.   Upon information and belief, the same or substantially similar form engagement agreements were used in each class members' transaction.   As described above, these previously undisclosed terms and conditions materially and substantively limit and change the services as described by TaxMasters during the initial sales call with the consumer.   Since the contract was formed when the payment was made, the subsequently disclosed written terms alter the contract without valid consideration and are void, unconscionable and unenforceable.

26.   One of the terms disclosed for the very first time in the engagement agreement (but after the consumer has already paid Defendants) involves the cancellation of the agreement by the consumer and the consumer's right to receive a refund.  This disclosure reads as follows:

> Client's Early Termination Agreement
>
> Client may terminate this agreement at Client's discretion by providing Client's notice in writing to Firm. In the event of termination by client, the minimum professional fees due for services rendered or to be rendered will be the higher figure of: (1) the minimum total retainer specified above and the actual fee for any other services performed - or- (2) the actual time expended by Firm at standard billing rates, If Client has paid more than then minimum fee as determined herein, a refund will be paid. Client agrees to remit any balance in full with its termination notice or to permit any remaining balance to be drafted in full using the payment method established in the installment agreement.

*See attached* Exhibit "A" (Plaintiff's Engagement Agreement).  TaxMasters does not provide this disclosure to consumers during the sales calls and prior to accepting the

initial payment.

27. TaxMasters takes the position that its fees are binding and are immediately non-refundable whether the consumer has signed the engagement agreement or not and regardless of whether any services have been provided to earn any portion of the fee. Consumers who have called TaxMasters to cancel within 24 hours after the initial sales call have been told that TaxMasters will not refund any portion of the money paid, even though TaxMasters has provided no services at that point, and, indeed, cannot begin working on the consumer's behalf until the consumer has returned the IRS form appointing TaxMasters as his representative. *See attached* Exhibit "I" (Defendants' Correspondence Denying Consumer Refund).

28. Taxmasters not only refuses to refund the fees already collected by it after the sales call, it also attempts to continue to collect fees from consumers who cancel their agreements, even when no services have been provided to earn any portion of the fee. In fact, the Defendants have threatened to subject consumers to collection procedures in court if they refuse to pay fees after the consumer has cancelled the agreement, regardless of whether any services have been performed. In attempting to collect these fees, TaxMasters has threatened to bring suit to collect such fees in court in Harris County, Texas, even though the consumer is not a resident of Harris County, Texas and did not sign the contract on which the alleged debt is based in Harris County, Texas. Such terms and tactics are unlawful, lack mutuality, are unconscionable and violate Tex Bus. and Com. Code section 17.46(b)(23) and /or other law. *See attached* Exhibit "J" (Defendants' Collection Correspondence).

29. Further, on its website and during the sales call, TaxMasters represents that it will begin working on the consumer's tax problem as soon as the consumer purchases the services from TaxMasters. According to the engagement agreement, which is only sent after the initial fee has been paid, however, TaxMasters does not

---

1    have to begin working on the consumer's tax problem until the consumer has paid the

2    TaxMasters fee in full.  Therefore, when an installment payment plan is involved, it

3    may take months before the Defendants begin work on a consumer's file and the only

4    notice that consumers on an installment plan receive about this policy is information

5    that is included in the engagement agreement, as this issue is not disclosed to

6    consumers during the sales call.  *See* Affidavit of Karen Sanchez, attached hereto as

7    Exhibit "D".

8           30.    The contract between Defendants and the consumer class member is

9    formed when Defendants demand and receive the initial payment from the consumer

10   during this process.  Only after the class member has entered into a contract with

11   Defendants and provided payment based on the terms then-disclosed do Defendants

12   send the consumer a written contract altering the contract, disclosing new, different

13   and additional terms, without providing additional consideration.  If a consumer

14   upon receiving the written contract attempts to reject the newly disclosed terms set

15   forth in the written document, Defendants claim that the consumer is already

16   contractually bound and that it is entitled to keep all fees despite the fact no work has

17   been done or services performed to earn the fee.  Thus, consumers are under

18   financial duress and have no choice but to go forward or else they risk losing the

19   entire fee paid (plus any future scheduled installment payments to be debited from

20   their accounts) without receiving any tax relief services in exchange.  As such, the

21   contracts are unconscionable, unlawful, void, unenforceable and should be rescinded.

22          31.    In the initial sales call, TaxMasters' representatives misrepresent and

23   fail to disclose important aspects of TaxMasters' service and the terms on which they

24   are offered, including, the fact that TaxMasters treats all fees paid as non-refundable;

25   the fact that TaxMasters will not begin working on a client's case until he/she has

26   paid all of the installment payments agreed to; that additional charges (at rates up to

27   $950.00 per hour) may be imposed at Defendants discretion when they subjectively

28

---

FIRST AMENDED COMPLAINT (CLASS ACTION)                                                    11

feel the undisclosed "budgeted time" and hourly rates allocated to the initial fee previously paid is exhausted; that Defendants alone may unilaterally terminate the agreement "without refund" (even if services are never performed) should they subjectively feel the client is uncooperative or "abusive;" that the work will actually not be performed by Defendants but be subcontracted to other undisclosed persons or entities to perform and for which the class member waives important rights to proceed against; that all disputes the class member has against Defendants are limited and must be arbitrated in Houston, Texas while Defendants, in contrast, retain their right to sue the class member in a state or federal court of their choosing with no limitation on claims or recoveries. *See* Exhibit "B" (Miranda Affidavit), at pp. 40 - 41. Such terms are unconscionable, unlawful, void, lack mutuality and are unenforceable.

**B.      Defendants Overstate Their True Ability To Reduce Class Members' Tax Obligations**

32.     Defendants, through their various advertisement schemes and website, seek out consumers who are in dire financial condition, and those consumers who face possible immediate action by the Internal Revenue Service ("IRS"). The company makes a number of representations to entice such consumers to retain them and have consumers immediately allow Defendants to charge their credit cards before receiving the written contract, including:

    a.  "The former IRS agents and tax professionals at TaxMasters will solve your tax problems."

    b.  "We'll get between you and the IRS."

    c.  "We'll make sure they treat you fairly, and treat you with respect."

    d.  "Don't wait weeks for an appointment, call us today. We'll get you started today."

    e.  "TaxMasters—we solve your tax problems."

f.  The "IRS makes the rules and then apparently trains its employees to break them."

g.  The IRS will not treat consumers "fairly" or with "respect" if they attempt to represent themselves.

h.  "Relief from substantial federal tax debt is achievable and is even easier with TaxMasters than you might think."

i.  TaxMasters' staff is composed of former IRS agents, enrolled agents, tax attorneys and CPAs with tax expertise.

j.  "From the moment you give our tax consultant the go-ahead on the phone, we start working for you."

k.  TaxMasters is dedicated to quality client services, and "will do everything in our power and within the limits of the law to help you achieve tax relief."

l.  "Whether facing tax debt, unfiled returns, wage garnishment, or an IRS audit, TaxMasters can solve your tax problem."]

33.    The Better Business Bureau of Houston Texas, which is where the Defendants base their business operations, has given TaxMasters an "F" rating, and has received hundreds of complaints in the last three years.   Additionally, the Attorneys General of a number of states, including Texas and Minnesota have recently filed actions challenging Defendants' deceptive sales practices.   *See e.g. Swanson v. Taxmasters, Inc.,* Hennepin County (Minnesota) District Court, Fourth Judicial District, Case No. 27-CV-10-28133 (Filed December 16, 2010); *State of Texas v. Taxmasters, Inc., TMIRS Enterprises, Ltd., TM GP Services LLC, d/b/a/ Taxmasters and Patrick R. Cox,* D-1, GV-10-000486, Travis County, Texas, District Court.  According to the Minnesota Attorney General:

"The company gets worried people to pay thousands of dollars by overstating the help it will provide with their tax bills," said Attorney General Swanson. "This is the latest type of company we have seen

target the misfortunes of people who are facing tough sledding in the bad economy."

The lawsuit alleges that the company got consumers to pay advance fees of $2,000 to $8,000 by misstating the help it would provide people with unpaid tax bills. In some cases, the company claimed it could substantially reduce people's tax bills by up to 90 percent, but then delivered little or no help. In other cases, the company falsely promised that it could stop IRS collection efforts against consumers who hired it.

Contrary to TaxMasters' promises, most citizens do not qualify for special IRS programs that reduce a person's tax debt. Attorney General Swanson said that while the IRS won't reduce most people's tax bills, it will work with them on repayment plans-something people can do on their own without paying a tax relief company thousands of dollars.

TaxMasters heavily advertises on late-night television. In 2009 the company spent nearly $14 million on its television, radio and Internet advertising campaigns. Consumers who call TaxMasters talk to a "tax consultant," who is actually a salesperson. A job ad for this position states: "Previous tax knowledge is not required, but a firm understanding of the sales process and of selling services ... is a strong plus." Salespeople often make unrealistic promises of the company's ability to help in order to dupe consumers into paying thousands of dollars in advance fees. The company also falsely told some consumers it could put an immediate stop to collection efforts, such as wage garnishments, levies, or liens. The lawsuit alleges that TaxMasters sometimes left people in worse financial shape after paying the company's advance fees, failing to respond to important deadlines or requests of tax authorities.

\* \* \*

The lawsuit alleges that Taxmasters salespeople told consumers things like:

- "... based upon our success rate and our experience, on average, our clients see a savings of anywhere between 80 and 90% of what the IRS claims they owe."
- "We're highly successful; we are the most successful tax resolution company. We're 97% successful."
- "We'll save you anywhere from 65 to 90% is our goal on ... savings off the total tax debt. 97% of the time we reach that goal, the other 3% are the people who just flat out lie to us."

*See* Office of Minnesota Attorney General, Press Release, December 16, 2010. Other examples of Defendant's deceptive sales practices are evident in the Transcript of the initial free consultation between Denise Miranda, attached hereto as Exhibit "B" at pp. 8, 12, 24-25, and 40-41, where Defendants claim that the staff tax attorney, who's services Defendants sell, has never lost a case.

This is definitely something we can help you out with.  One of our, in fact our main audit attorney, his name is Clyde Miller, you'll be, you'll be glad to know he's never lost a case.

\* \* \*

So you're looking at $6,500 for us to take over the case and get all this taken care of.  Now, again, I stress to you that, that Clyde Miller has never lost a case. --.

\* \* \*

...and we don't typically take on case that we know we're, that we know we can't win.

\* \* \*

Because what we're going to do is tie, we're going to tie it up in litigation as long as we can.

34.     During the initial "free consultation" call, Defendants overstate their services and true ability to eliminate people's tax obligations to the class. Defendants engage in such activities in order to push sales and maximize their profits, to class members' financial detriment. *See* Affidavit of Crespin Gonzales, attached hereto as Exhibit "E".

35.     Upon information and belief, over the last four years, over 200 California consumers (and many more nationwide as evidenced by Defendants' sales figures set forth below) have retained TaxMasters during similar initial "free consultation" calls to "solve [their] tax problems."

**C     TaxMasters Makes Money By Aggressively Booking Consumer Sales Contracts Through "Free Consultations" with a Sales Person.**

36.     TaxMasters primarily earns revenue by charging consumers to prepare and amend tax returns, negotiate tax settlements, and handles IRS audits and collection cases.

37.     Taxmaster's advertisements and website offer consumers "free consultations."  In truth, this is nothing but a scheme to connect vulnerable class members facing legal problems with an aggressive sales person changed only with closing a sale and collecting an immediate fee, not providing the consumer any meaningful tax "consultation" from a qualified professional.

38.     When consumers agree to retain TaxMasters during the initial sales call, its sales people ask them to pay the company's large fees in advance.  These fees typically range from $1,500.00 to $10,000.00 or more.  Although many of these consumers are already experiencing financial difficulties, TaxMasters' salespeople ask them to empty their checking and savings accounts, borrow the amounts required, or charge its fees on high-interest credit cards.  If TaxMasters cannot get full payment in advance, its salespeople collect the large amount available as a "down payment," and place consumers on installment plans.

39.     The skill of TaxMasters' sales staff in extracting large, up-front (non-refundable) fees from consumers is reflected in the company's extraordinary revenue growth in the last four years.  For 2007, TaxMasters reported revenues of $6.5 million.  For 2008, its revenues grew by 132% to $15.1 million.  For 2009, its revenues grew by 131.1% to 36.8 million.  For the first nine months of 2010, when compared to the same period in 2009, TaxMasters' revenues grew by 21.8% to 32.8 million.  Patrick Cox noted in a November 17, 2010 press release that "We have implemented extensive advertising campaigns in the media most followed by our customers and we anticipate this will translate into higher revenue in the upcoming quarters."

40.     As TaxMasters' revenues have increased, so has the number of its employees.  In 2006, the company employed 15 people, in 2007 it employed 101 people, by the start of 2009 it employed 210 people, and it currently employs over 300 people.  TaxMasters' management has expressed plans to continue expanding TaxMasters staff in coming years.

41.     In March 2010, TaxMasters told investors that the "driving factor for assessing success at TaxMasters is both total revenue and newly booked sales contracts that will become future revenue."  Further, TaxMasters states on its website that "[t]he largest growth driver for TaxMasters has been the increasing number of

taxpayers who have issues dealing with the IRS and who are out of tax compliance. The recession and rising unemployment has increased the number of at-risk Americans, those who are most likely to have the severe financial difficulty that causes problems meeting IRS obligations."

42.    TaxMasters' focus on booking new sales contracts is apparent from its solicitation in the "help wanted" section of its website for "talented closers" to work as Tax Consultants—Inside Sales Representatives.    Such tax consultants will purportedly utilize their tax expertise to recommend services appropriate to resolve consumers' tax problems.  It is plain from TaxMasters' solicitation, however, that the focus of the tax consultant position is closing sales contracts rather than providing "free consultations" advising consumers appropriately about tax issues.  At relevant time, TaxMasters' solicitation enticed potential sales employees with the promise that:

> Salespeople search years to find an inside sales job as sweet as this. The leads come to you qualified and ready to bite.  All you have to do is what you were born to do.  Take the caller through a custom solution based on TaxMasters sound and proven service offerings and convert qualified prospects to closed deals.

It further provides that although "[p]revious tax knowledge is not required," an "[in] depth understanding of effective closing techniques practiced to an art form are required." *See* Defendants' Hiring Advertisement, attached hereto as Exhibit "R".

43.    These "consultants" are the people who provide the "free consultation" offered to consumers on Defendants' website and advertising.   Callers who dial Taxmaster's toll-free phone number do not receive any actual "consultation" on tax issues at all.  Instead, all they receive is a sales pitch from a salesperson charged with closing a sale and who is unqualified to provide any meaningful tax "consultation." *See* Exhibit "B" (Miranda Affidavit).

44.    Defendants' offer of a "free consultation" is misleading, deceptive, unfair and false.

**D.     TaxMasters Utilizes "Bait and Switch" Tactics, Charging Consumers Large, Up-front Fees Before Giving Them a Copy of the Engagement Agreement Contract.**

45.    As noted above, TaxMasters collects full or partial payment from consumers at the time of the initial sales call with the "consultant." It does so before giving consumers a copy of the Engagement Agreement that it requires them to execute and return.  TaxMasters does not e-mail or fax a copy of its Engagement Agreement to consumers until after it has completed the sales call and processed the payment.

46.    TaxMasters utilizes its "third-party" verification system to bind consumers to payment for TaxMasters' services whether the consumers return an executed copy of the contract or not.  If after receiving a copy of the Engagement Agreement, the consumer decides they do not want to enter into a contractual relationship with TaxMasters on the terms stated and refuse to execute and return it, TaxMasters refuses to refund the money these consumers have paid on the basis that they have verbally agreed to pay TaxMasters its fee.

47.    As described above, terms in the Engagement Agreement contradict representations made by TaxMasters' salespeople during the telephone consultation when payment is made.

48.    Taxmaster's refusal to provide class members who have contracted with it over the telephone and internet any cancellation or recission period violates applicable law.

**E.     Plaintiff Jeffery DeLong's Transaction with Defendants**

49.    On October 20, 2008, Plaintiff Jeffery DeLong called Taxmasters' Houston, Texas offices via telephone for a free consultation regarding a tax dispute he had with the IRS pertaining to taxes claimed due by the IRS for tax year 1997.

---

50.     Delong spoke with "tax consultant" James Arline at Taxmasters' offices in Houston.

51.     During the telephone call between Delong and Arline on October 20, 2008, Delong entered into a contract with Taxmasters for tax relief services.   During that call Delong agreed to pay Taxmasters $3,000.00 in full for their services and in turn, provided Taxmasters authorization to charge his Visa ATM/check card in that amount.

52.     At the time, Taxmasters had not yet provided Delong any written Engagement Agreement or other documents.   Delong was told he could not receive the written contract until he had first authorized payment.   Only after the aforementioned telephone call ended did Delong receive the written engagement agreement and other documents from Defendants via fax.   *See* Defendants' Engagement Correspondence to Delong, attached hereto as Exhibit "K".

53.     On October 20, 2008 and prior to returning any forms or agreements, Delong e-mailed Arline asking that he email Delong back "if the terms have been modified since our discussion, prior to payments being made."   Arline did not respond. *See attached* Exhibit "L".

54.     On October 21, 2008, Delong returned the executed engagement agreement.

55.     Delong then discovered that the original terms discussed with Arline during the initial consultation had been altered, including that the $3,000.00 paid may no longer be payment in full for Taxmasters' services.   Had these terms been made clear to Delong before authorizing payment, he would not have entered into the contract and paid Taxmasters any money.

56.     On October 24, 2008, Delong notified Taxmasters in writing via e-mail to james.arline@txmsttr.com and info@taxmastr.com to suspend all activities, to cancel the contract, and provide a full refund of any and all funds received.   At that

point, no services had yet been provided to Delong by Taxmasters to earn any fee. To ensure delivery, Delong printed out the same e-mail and faxed it to Arline at Defendants' fax number that day. *See attached* Exhibit "N". Delong also revoked the IRS Power of Attorney he had previously granted to Defendants by e-mail on October 24, 2008 by e-mail and facsimile. *See attached* Exhibit "O".

57.     Instead of agreeing to cancel the contract, on November 6, 2006 Delong received a package from Taxmasters' offices in Texas notifying him that Taxmasters was proceeding with the contract.  The package was postmarked November 3, 2008, yet the letter was backdated to October 23, 2008.  *See attached* Exhibit "M". On November 6, 2008, Delong sent a letter to Taxmasters offices in Houston, Texas, via certified mail, confirming this.  That certified letter was received by Defendants in Houston on November 7, 2010. *See attached* Exhibit "P".

58.     On or about October 27, 2008, Delong complained to the Better Business Bureau in Houston Texas and his bank regarding his dealings with Defendants and Defendants' deceptive conduct and practices.

59.     Taxmasters refused to return the $3,000.00 Delong paid them.

60.     While eventually Delong received credit from his bank of the $3000 that Taxmasters refused to refund directly, he has nevertheless, incurred out of pocket loss as a result of Defendants' unlawful and deceptive conduct complained of herein, including but not limited to payment for facsimile costs, certified mailing costs, printing, other transaction costs and lost interest on his money.  *See attached* Exhibit "Q".

**E.     Plaintiff Dennis Holmes' Transaction with Defendants**

61.     On or about May 1, 2009, Dennis Holmes contacted Taxmasters' Houston, Texas offices via telephone for a free consultation regarding a tax dispute he had with the IRS pertaining to taxes claimed due by the IRS.

62. Holmes spoke with a "tax consultant" named Samuel Hamilton at Taxmasters' offices in Houston.

63. During the telephone call between Holmes and Taxmasters, Holmes entered into a contract with Taxmasters for tax relief services. During that call Plaintiff agreed to pay Taxmasters $3,150.00 in full for their services. During that call, Holmes provided Taxmasters his bank routing number and authorized a deduction from his bank account at America Security Bank of $1,600.00. Taxmasters made said deduction by depositing a computer-generated check (No. 8000) in the amount of $1,600.00 drawn against Holmes' account on May 1, 2009.

64. At the time, Taxmasters had not yet provided Holmes any written Engagement Agreement or other documents. or disclosures. Only after the aforementioned telephone call ended did Plaintiff receive a written engagement agreement and other documents from Defendants via fax. Holmes never signed or returned that contract to Taxmasters. The only document that Holmes returned to Taxmasters was a power of attorney form.

65. On or about May 15, 2009, Holmes realized that he could deal with the I.R.S. directly regarding his debt obligation. In turn, Holmes called Taxmasters and cancelled his contract. Holmes told Taxmasters not to perform any work on his file, to refund any fees paid and not to make further charges against his account. He followed this up by faxing Taxmasters written notification stating that he was cancelling the contract and wanted a refund of any fees paid, which Taxmasters received on May 15, 2009.

66. Taxmasters did not provide Holmes any refund. Instead, Taxmasters charged an additional $1,550.00 against Holmes' bank account on July 1, 2009.

67. Personnel at Holmes' bank informed him that they could not reverse the charges and/or prevent unauthorized future withdrawals, suggesting that Holmes close his existing checking account and open a new one. Holmes followed their

1   advice and closed his existing checking account to protect against future withdrawals

2   by Taxmasters.

3       68.    At the time Holmes cancelled the contract and demanded a refund,

4   Taxmasters had performed no substantive work on Holmes behalf to negotiate and

5   settle his debt to the I.R.S.

6       69.    To date, Taxmasters has refused to refused to return the $3,150.00

7   Holmes paid them, despite doing no work to earn the fee.

8                   V.    **CLASS ACTION ALLEGATIONS**

9       70.    This action is brought as a class action and may properly be so

10  maintained pursuant to Fed. R. Civ. P. 23 and other applicable rules of civil

11  procedure.    This action seeks recovery of actual damages, restitution,

12  injunctive and equitable relief arising from Defendants' unfair business

13  practices.

14      71.    **Class Definition**:  The Class sought to be represented in this action is

15  defined as follows:

16

17      All persons residing in California who, during the Class Period,
        contracted with TaxMasters for services and paid TaxMasters money.
        (hereinafter, the "Class").

18  The Class Period dates back four years (or the length of the longest

19  applicable statute of limitations for any claim asserted) from the date this action

20  was originally filed (February 14, 2011) and continues through the present and the

21  date of judgment. Excluded from the Class are: (a) any officers, directors or

22  employees of the Defendants; (b) any judge assigned to hear this case (or spouse or

23  family member of any assigned judge); (c) any employee of the Court; (d) any juror

24  selected to hear this case.

25      72.    **Numerosity of the Class.**  Members of the class and subclass

26  are so numerous that their individual joinder herein is impracticable.    The

27  precise number of members of the class and subclass and their addresses are

28

presently unknown to Plaintiff, but is believed to each exceed 500 people. The precise number of persons in the class and their identities and addresses may be ascertained from Defendants' records. If deemed necessary by the Court, members of the class may be notified of the pendency of this action by mail and/or email.

73.   **Ascertainable Class**. The proposed Class is ascertainable.  The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the Class and Subclass and hence, will have binding effect on all class members. These Class Members can be readily identified from business records, billing systems, and telephone records of the Defendants and other means readily available to the Defendants, and thus by the Plaintiff, through minimally intrusive discovery.   The class is numerous.   Joinder of all class members is impracticable due to the relatively small monetary recovery for each class member in comparison to the costs associated with separate litigation and likelihood that due to the nature of the underlying tax disputes that class members faced when initially contacting Defendants, class members are financially strapped.

74.   **Common Questions of Fact and Law Exist and Predominate over Individual Issues.**   There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class.  These common legal and factual questions include without limitation:

    a. whether Taxmasters altered and/or breached class members contracts by changing and/or adding terms after receiving the initial payments, without consideration;

    b. whether TaxMasters failed to proviode class members the required recission period under Bus. & Prof. Code § 17528.

c.  whether TaxMasters falsely and deceptively represented, marketed and/or advertised that it provided "free consultations;"

d.  whether TaxMasters, a corporation, sells legal services and advice and as such, has engaged in the unauthorized practice of law, rendering any contract void and fees subject to refund;

e.  whether TaxMasters engages in illegal, unfair, deceptive, misleading, unconscionable, unlawful or fraudulent business practices prohibited by the CLRA and/or the UCL;

f.  whether the Class is entitled to an accounting, restitution, disgorgement, damages and/or other relief due to Defendants' violations as described in this Complaint; and

g.  whether an injunction is necessary in order to prevent Defendants from continuing to engage in illegal activity.

75.  **Typicality.**   The claims of both Plaintiffs DeLong and Holmes are typical of the claims of the Class.  Plaintiffs and all Class members contracted with TaxMasters to reduce their tax liability during the Class Period. Plaintiffs and all Class members paid a substantial up-front fee, only to have the contractual terms altered and the fees treated as non-refundable.  Plaintiffs and all Class members have been the subject of Defendants' unfair, illegal, fraudulent and deceptive business practices as described herein.  The relief sought is common, unitary, and class-wide in nature.

76.  **Adequacy.** The named Plaintiffs are adequate representatives of the Class on whose behalf this action is prosecuted.  Plaintiffs' interests do not conflict with the interests of the Class.   Plaintiffs have retained competent counsel with experience in class action litigation and will prosecute this action vigorously.   As a result, Plaintiffs can fairly and adequately represent and protect the interests of the class in that there are no conflicts between their interests and the interests of other class members, this

action is not collusive, the named Plaintiffs and their counsel have the necessary resources to litigate this action, and counsel has the experience and ability required to prosecute this case as a class action.

77.   **Community of Interest**. The proposed Class has a well defined community of interest in the questions of fact and law to be litigated.  The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The named Plaintiffs have claims typical of the Class members.

78.   **Superiority of Class Adjudication**. The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.  Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received.  The economic damages, restitution and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims.  Given the amount of the individual class members' claims, few, if any, class members could afford to seek legal redress individually for the wrongs complained of herein.  Such concerns are particularly acute here, where the class consists largely of people who lack resources to even pay the full amount of taxes claimed due by the I.R.S.  Even if the members of the class themselves could afford individual litigation, the court system could not.   Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court.

79.    In the alternative, the above-referenced class may be certified because:

    a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual class members' claims which would establish incompatible standards of conduct for Defendants;

    b. The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudications, or which would substantially impair or impede the ability of other class members to protect their interests; and,

    c. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the class.

## VI. FIRST CAUSE OF ACTION
### FOR RECISSION OF CONTRACT

80.    Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

81.    The contract between Defendants and each class member, including Plaintiffs, is formed when Defendants demand and receive the initial payment from the consumer during the initial telephone consultation.

82.    Only after the class member has entered into a contract with Defendants and provided an initial payment based on the terms then-disclosed do Defendants

1   send the consumer a written contract disclosing new, different and additional terms,

2   without providing additional consideration. Such terms lack valid consideration.

3      83.    In the initial sales call, TaxMasters' representatives misrepresent, omit

4   and/or fail to disclose important aspects of TaxMasters' service and the terms on

5   which they are offered, including: the fact that TaxMasters treats all fees paid as non-

6   refundable; the fact that TaxMasters will not begin working on a client's case until

7   he/she has paid all of the installment payments agreed to; that additional charges (at

8   rates up to $950 per hour) may be imposed at Defendants discretion when they

9   subjectively feel the undisclosed "budgeted time" and hourly rates allocated to the

10   initial fee previously paid is exhausted; that Defendants alone may unilaterally

11   terminate the agreement "without refund" (even if services are never performed)

12   should they subjectively feel the client is uncooperative or "abusive;" that the work

13   will actually not be performed by Defendants but be subcontracted to other

14   undisclosed persons or entities to perform and for which the class member waives

15   important rights to proceed against; that Defendants can sue the Class member for

16   unlimited damages, but class members can only proceed against Defendants for a

17   maximum recovery equal to 20% of the contracted fee; that all disputes the class

18   member has against Defendants are limited and must be arbitrated in Houston, Texas

19   while Defendants, in contrast, retain their right to sue the class member in a state or

20   federal court of their choosing with no limitation on claims or recoveries.

21      84.    Further, Defendants fail to provide the required recission period under

22   Cal. Bus. & Prof. Code §17538 *et seq.*, but instead treat all fees paid by class

23   members as non-refundable even when no services have yet to be performed.  If a

24   consumer upon receiving the written contract attempts to reject the newly disclosed

25   terms in the written document, Defendants claim that the consumer is already

26   contractually bound and that it is entitled to keep all fees collected (plus other future

27   scheduled installment payments) despite the fact no work has been done or services

28

performed to earn the fee.  Thus, consumers are under financial duress and have no choice but to go forward or else they risk losing the entire fee paid (plus any future scheduled installment payments to be debited from their accounts) without receiving any tax relief services in exchange.

85.  Prior to the time the consumer makes his/her first payment to Defendants, Defendants do not disclose in its offering or advertisements that all fees (plus other future scheduled installment payments) will be immediately treated by Defendants as completely non-refundable.  Defendants' advertisements, website and other offerings (http://www.txmstr.com) do not disclose to consumers in the class that once the first payment is made, all fees will be immediately treated by Defendants as completely non-refundable.  Defendants' telephone solicitations do not disclose to consumers in the class that once the first payment is made, all fees will be immediately treated by Defendants as completely non-refundable.  *See e.*g., Exhibit B (Transcript of sample class member-Defendants call, not mentioning any no-refund policy).  Such conduct violates, *inter alia*, Cal. Bus. & Prof. Code §17538 *et seq*.  Among, other things, Cal. Bus. & Prof. Code §17538 requires a 30 day recission/refund period.   Further, if the services sold are not fully provided within 30 days from the initial date of the sale, the opportunity for a refund must be provided. Bus. & Prof. Code §17538.

86.  As such, the contracts are unconscionable, unlawful, lack mutuality void, unenforceable and should be rescinded.  Alternatively, to the extent Defendants attempt to alter the original contract by imposing new terms, they breach the original contract.   All fees collected from class members should be refunded, along with all other damages, penalties and other relief that may be appropriate, including reasonable attorneys' fees and costs.

/ / /

/ / /

## VII. SECOND CAUSE OF ACTION

### (Unlawful /Void Contract For Sale of Legal Services)

87.   Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

88.   Defendants sell legal and other professional services to class members. *See, e.g.*, Exhibit "B", at pp. 8, 12, 19, 24-25:

> This is definitely something we can help you out with.  One of our, in fact our main audit attorney, his name is Clyde Miller, you'll be, you'll be glad to know he's never lost a case.

> * * *

> So you're looking at $6,500 for us to take over the case and get all this taken care of.  Now, again, I stress to you that, that Clyde Miller has never lost a case. --.

> * * *

> ...and we don't typically take on case that we know we're, that we know we can't win.

> * * *

> Because what we're going to do is tie, we're going to tie it up in litigation as long as we can.

> * * *

> Then we start building a case, while we are putting them, you know, while were stalling them with, you know, tying them up in litigations and everything else and buying as much time as possible.  You know, we want to try to stretch this out as long as we can, because what's, what happens here is the auditor it going to get tired of waiting, and he's just going to to, he'll either drop the case and say forget about it and move on to the next person, or you know, he'll go ahead and try to follow through with it, in which case, you know, we're, we're more than welcome to invite that, bring it on, in other words.  You know, we, by the time, by the time they get done with all the litigation, we'll be ready for the case and have all the proof and documentation that we need, and it's at that point we pretty much just lay it down on the table and say listen, this is what it is, you know, you can scream and moan all you want to about this and that, but we have, right here in black and white, and according to tax article four, section six, you know, this is what's going on, this is the right stuff that we need.  We, it's just a matter of knowing the laws and knowing what your rights are, and we do.

> Like I told you earlier, Clyde Miller has never lost a case. We actually do more audits in one month than most firms do in a year and most tax attorneys do in a lifetime, so audits are one of our main things.

89.    Defendants contract to serve as class members' agents with regard to legal claims and disputed debts and liabilities.

90.    Defendants sell class members services which require the provision of professional legal judgment, legal discretion, legal analysis and advice with regard to legal claims and disputed debts and liabilities. *See attached* Exhibit "A".

91.    Corporations cannot sell legal services performed by their employees, even if the employees are licensed to practice law in California.

92.    While Defendants sell legal services, they are not licensed to practice law in any state. By providing legal judgment, legal discretion, legal analysis and advice with regard to legal claims and disputed debts and liabilities and selecting and preparing legal instruments and documents, and charging consumers a fee therefore, Defendants rendered services which cannot lawfully be rendered by a person not admitted to practice law in the State of California for a fee or other compensation. Any such contract between Defendants and class members for legal services is unlawful and void.

93.    As a result of the foregoing, all fees collected from class members should be refunded, along with all other damages and other relief that may be appropriate, including reasonable attorneys' fees and costs.

## VIII. THIRD CAUSE OF ACTION

### FOR VIOLATION OF *CONSUMER LEGAL REMEDIES ACT § 1750*

### (Brought on Behalf of Subclass Only)

94.    Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

95.     Plaintiffs bring this action individually on behalf of themselves, on behalf of the Class, and on behalf of the general public pursuant to *§ 1750 of the Consumer Legal Remedies Act*.

96.     Plaintiffs and the purported class members are "consumers" within the meaning of *California Civil Code § 1761(d)*, who purchased goods or services, primarily for personal, family, or household use.

97.     Each Defendant is a "person" as defined by *California Civil Code § 1761(c)*.

98.     Venue is proper pursuant to *California Code of Civil Procedure § 1780(c)* because a substantial portion of the transactions, the subject matter of the above-captioned action, occurred in San Bernardino and Los Angeles Counties.

99.     The services described above were bought by Plaintiffs and by other consumers similarly situated for tax debt relief, and as such are subject to the requirements of the Consumers Legal Remedies Act and other consumer protection laws of the various states where Plaintiff Class members reside.

100.    Plaintiffs are informed and belief, and thereon alleges, that TaxMasters intended their misrepresentations and/or advertisements to result in the above-mentioned "bait and switch" tactics, and to receive up-front fees from consumers similarly situated to Plaintiffs.

101.    Defendants' insertion of terms in its standard-form contracts, *inter alia*, purporting to make fees already paid immediately non-refundable, for class members in California to arbitrate disputes over fees already paid in Texas, and to pay all related fees and costs, are substantively and procedurally unconscionable.  Such terms are contrary to, inter alia, California law and Tex. Bus. & Com. Code § 17.46 *et seq.*

102.    Defendants have engaged and continue to engage in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by *California Civil*

1    *Code § 1750, et seq.* to the detriment of Plaintiffs and the Class members.  Plaintiffs

2    and the Class members have suffered, and continue to suffer, harm as a proximate

3    result of the violations of law and wrongful conduct of each and every Defendant as

4    alleged herein.

5        103.   Defendants have violated Civil Code §§1770(a)(5), (7), (14) and (19),

6    through the acts alleged herein, thereby entitling Plaintiffs and members of the class

7    to relief under Civil Code §1780 by, *inter alia*:

8            a)      Representing that goods or services have characteristics which

9    they do not have or that a person has a status, affiliation or connection which he or

10   she does not have, in violation of §1770(a)(5);

11           b)      Representing that goods or services are of a particular standard,

12   quality or grade when they are not, in violation of section 1770(a)(7);

13           c)      Representing that a transaction confers or involves rights,

14   remedies or obligations which it does not have or involve, or which are prohibited by

15   law, in violation of §1770(a)(14); and

16           d)      Inserting an unconscionable provision in a contract, in violation

17   of §1770(a)(19).

18       104.   Defendants' violations of Civil Code §1770 described above present a

19   continuing threat to class members and members of the public in that Defendants are

20   continuing to engage in these practices, is continuing to refuse to refund amounts

21   paid by consumers and will not cease until an injunction is issued by the Court.

22   Unless Defendants are enjoined from continuing to engage in these practices,

23   Plaintiffs and the members of the Class, who lack an adequate remedy at law to deter

24   Defendant's wrongful conduct, will be irreparably harmed.

25       105.   By certified letter dated February 14, 2011, mailed as directed in Civil

26   Code section 1782, Plaintiff Delong notified Defendants of its violations of the

27   Consumer Legal Remedies Act and demanded that Defendants provide a remedy that

28

1   rectifies its conduct.  Defendants received said letter on February 17, 2011 but to

2   date have not agreed to comply with any of the demands made in the letter or to

3   refund class members any fees.

4       106.   As a direct and proximate result of the aforementioned acts, Plaintiffs

5   and each member of the class they represent, have suffered injury, damage and out-

6   of-pocket loss.  Plaintiffs and the members of the class are therefore entitled to actual

7   and statutory damages, injunctive and declaratory relief, an award of attorneys' fees

8   and costs against Defendants pursuant to the provisions of Civil Code § 1780(d), and

9   any other relief that may be just and equitable in the circumstances or otherwise

10   permitted by law.

## IX. FOURTH CAUSE OF ACTION

12   **(For Violation of *Business and Professions Code § 17500 et. seq.***

13       107.   Plaintiffs fully incorporate by reference herein all of the above

14   paragraphs, as though fully set forth herein.

15       108.   Plaintiffs bring this action individually, on behalf of the Class, and on

16   behalf of the general public pursuant to *§ 17500 et. seq. of the Bus. & Prof. Code* for

17   Defendants' false advertising practices.

18       109.   Defendants' statements, representations, half-truths and failures to

19   disclose as alleged herein were false, misleading, and likely to deceive the General

20   Public, including Plaintiffs and other members of the Class.

21       110.   Defendants fail to provide any "free consultation" as advertised.  Rather,

22   only consultation Defendants provide for free before demanding and receiving

23   payment from a class member is with a salesperson.

24       111.   Defendants promise "we solve your tax problems," and overstate their

25   true success rates eliminating clients' tax debts.

26       112.   Defendants fail to provide a written contract to the consumer prior to

27   charging fees, and binds the consumer to their oral commitment and payment, only

28

---

to thereafter provide them with a written contract containing terms to the contrary, as described above.

113.   Defendants violate *§ 17500 et. seq. of the Bus. & Prof. Code* by refusing to provide consumers the required cancelation / recission period required for telephone and internet sales. Bus. & Prof. Code §17538.

114.   Defendants knew, or in the exercise of reasonable care should have known, that their statements, representations, half-truths and failures to disclose as alleged herein were false and misleading.

115.   Plaintiffs are informed and believes, and upon such information and belief, alleges that the General Public, including Plaintiffs and other members of the Class, despite the exercise of reasonable diligence, were likely to be and were deceived by said statements, representations, half-truths and failures to disclose.

116.   As a result and in reliance upon the above-alleged acts of false advertising, Plaintiffs and the other members of the Class were wrongfully deprived of the use and enjoyment of all the monies that TaxMasters promised it could save them.

117.   The untrue and misleading statements, representations, half-truths, and failures to disclose alleged hereinabove present a continuing threat to members of the General Public in that the acts alleged herein have been continuous and are ongoing, and the General Public will continue to suffer the harm alleged herein.

118.   Defendants have been unjustly enriched as a result of this wrongful conduct, and Plaintiffs are therefore entitled to disgorgement and restitution sufficient to fully disgorge the revenues obtained from Plaintiffs as a result of Defendants' false and misleading advertising.    Plaintiffs are also entitled to injunctive relief, declaratory relief and any other relief that may be appropriate, including reasonable attorneys' fees and costs.

/ / /

# X. FIFTH CAUSE OF ACTION

## FOR VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES— CONSUMER PROTECTION ACT, TEX. BUS. & COM. CODE § 17.41 *et seq.*

119.   Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

120.   Defendants do not tell class members residing in California when entering into a contract and receiving payments that the class member has waived any rights to proceed against any service provider for damages, that he/she must arbitrate disputes in Harris, County, Texas, and pay all costs of arbitration. Defendants, in contrast, do not bind themselves to similar terms and limitations, and retain their right to sue any class member in court without limitation.

121.   The dispute resolution terms, waivers and restrictions set forth in Defendants' written contract are unlawful, procedurally and substantively unconscionable, unfair and void and unenforceable.

122.   Defendants attempt to add such terms after receiving payment from class members lack mutuality, are unconscionable, unlawful and void. Defendants conduct also violates § 17.46(b)(23) of the TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT, TEX. Bus. & COM. CODE § 17.41 *et seq.* (Vernon 2002 & Supp. 2009)("DTPA") and other applicable law.

123.   As a result of the foregoing, class members have been injured and suffered damage.   As a result, class members are entitled to declaratory relief, damages, injunctive relief and all other relief that may be appropriate under the circumstances.

/ / /

/ / /

/ / /

/ / /

---

FIRST AMENDED COMPLAINT (CLASS ACTION)                                              35

# XI. SIXTH CAUSE OF ACTION

## FOR VIOLATION OF *BUSINESS AND PROFESSIONS CODE § 17200*

124.   Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

125.   Plaintiffs both bring this action individually, on behalf of the Class, and on behalf of the general public pursuant to § 17200 *et. seq.* of the Bus. & Prof. Code, the Unfair Competition Act (the "UCL").

126.   Plaintiffs bring this claim on behalf of the Class pursuant to *Bus. & Prof. Code §17204* which prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." Plaintiffs and the Class seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices. Both Plaintiffs suffered injury, damage and out of pocket loss as a result of Defendants' unlawful, unfair, unconscionable, deceptive, conduct and practices, as described above. Defendants' conduct, as described above, has been and continues to be detrimental to the Class and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of *Code of Civil Procedure §1021.5*.

127.   Defendants and their principals conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable and/or fraudulent business acts and practices in California, and that conduct emanated to and affected Class members throughout California. As such, the UCL applies to all such transactions and dealings.

128.   The acts complained of herein, and each of them, constitute unfair, unlawful or fraudulent business practices in violation of *Business and Professions Code §17200 et. seq.* Such acts and violations have not abated and will continue to occur unless enjoined. Defendants' acts and practices described herein offend

1  established public policies, and involve business practices that are immoral,

2  unethical, oppressive, and/or unscrupulous.

3      129.  The unfair business practices set forth above have and continue to injure

4  the Class and the general public and cause the loss of money, as described further

5  within.  These violations have unjustly enriched the Defendants at the expense of the

6  Class.  As a result, Plaintiffs, the Class and the general public are entitled to

7  injunctive relief, restitution, and other equitable relief.  Failing to compensate the

8  Class Members for necessary expenditures constitute restitution of property earned

9  by the consumer.

10      130.  By reason of the foregoing, Plaintiffs and each member of the Class are

11  entitled to recover from Defendant restitution, complete refunds of all fees paid

12  defendants, disgorgement of revenues and profits obtained from unlawful practices,

13  recission, unpaid expenditures, injunctive relief, declaratory relief, the cost of

14  bringing this action (including reasonable attorneys' fees and costs), and any other

15  relief allowed by law and deemed just and equitable in the circumstances.

16  ## VII.  PRAYER FOR RELIEF

17      WHEREFORE, Plaintiff, Jeffery DeLong and Dennis Holmes, as individuals

18  and on behalf of those similarly situated, pray for relief and judgment against

19  Defendants, jointly and severally, as follows:

20      A.  For an order certifying the class and any appropriate subclasses thereof

21  and appointing Plaintiff Jeffery DeLong, Dennis Holmes and their counsel to

22  represent the Class in this litigation;

23      B.  For an order pursuant to *California Business and Professions Code*

24  *section 17203* and *California Civil Code section 1780(a)(2)* and other unfair

25  competition laws and/or consumer protection laws of the various states where

26  Plaintiff Class members reside enjoining TaxMasters from falsely advertising and/or

27  charging up-front fees for services it cannot perform.

28

C.     For judgment against TaxMasters ordering it to restore to Plaintiffs and the Class Members all amounts which may have been acquired by means of any practices found by the Court to be contrary to the provisions of *California Business and Professions Code sections 17200, et seq.* and other applicable laws;

D.     For judgment against TaxMasters ordering it to disgorge its unlawfully-obtained revenues, which may have been acquired by means of practices found by this Court to be contrary to the provisions of *California Business and Professions Code sections 17200, et seq.* and under other applicable laws;

E.     For judgment against TaxMasters ordering it to pay actual, statutory, and punitive damages to Plaintiffs and Class Members pursuant to *California Civil Code § 1780(a)* and under other applicable laws;

F.     For judgment against TaxMasters ordering it to pay enhanced statutory damages of up to $5,000.00 to Plaintiff DeLong and other Class Members who are disabled and/or senior citizens pursuant to *California Civil Code § 1780(b)* and under other applicable laws;

G.     For civil penalties as provided by *California Business and Professions Code sections 17206, 17538* and any other applicable laws;

H.     For payment of attorneys' fees and costs pursuant to *California Code of Civil Procedure section 1021.5* and/or pursuant to the "common fund" doctrine and/or pursuant to equitable principles of contribution and/or other applicable method of awarding attorneys' fees and costs in class actions;

I.     For preliminary and permanent injunctive relief prohibiting Defendants from engaging in the wrongful practices alleged in this Complaint;

J.     For costs associated with any and all notice to the Class Members pursuant to *California Civil Code section 1781(d)* and other applicable alw;

K.     For payment of costs of suit incurred herein;

L.     For payment of prejudgment interest as provided by law; and

M.     For any such further relief as this Court deems equitable, just and proper.

Respectfully submitted,

RIDOUT & LYON, LLP

Dated: <u>March 22, 2011</u>     By: _____

Christopher P. Ridout, CA Bar No. 143931
Devon M. Lyon, CA Bar No. 218293
Caleb LH Marker, CA Bar No. 269721
555 E. Ocean Boulevard, Suite 500
Long Beach, CA  90802
(562) 216-7380 Telephone
(562) 216-7385 Fax

**Attorneys for Plaintiff**

# INDEX OF ATTACHED OF EXHIBITS

A. Plaintiff DeLong's Engagement Agreement with Defendants

B. Affidavit of Denise Miranda and Transcript of Telephone Sales Call BetweenTaxMasters and Denise Miranda

C. Affidavit of Curtis J. Smith, Jr.

D. Affidavit of Karen Sanchez

E. Affidavit of Crespin Gonzales

F. Affidavit of Arturo Fierro

G. Affidavit of Rosalinda Fierro, Texas Office of the Attorney General

H. Correspondence to Plaintiff DeLong from Harris County (Texas) District Attorney dated June 16, 2009

I. Defendants' Correspondence to Consumer Denying Refund dated October 26, 2009

J. Defendants' Collection Correspondence to Consumer dated February 12, 2010

K. Defendants' Engagement Agreement Cover Letter to Plaintiff DeLong dated October 20, 2008

L. Plaintiff's E-mail to Defendants dated October 20, 2008

M. Defendants' Correspondence to Plaintiff DeLong dated October 23, 2008

N. Plaintiff's Correspondence to Defendants and Fax Confirmation Log dated October 24, 2008

O. Plaintiff's E-mail to Defendants revoking Power of Attorney dated October 24, 2008 and Fax Confirmation Log

P. Plaintiff DeLong's Correspondence to Defendants dated November 6, 2008 and Certified Mail Receipt

Q. Correspondence to Plaintiff from Bank of America and Plaintiff's Corresponding Certified Mail Receipt dated November 6, 2008

R. Defendants' Hiring Advertisement

# EXHIBIT A

**TaxMasters**
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

# CLIENT

# TAX SERVICES

# ENGAGEMENT AGREEMENT

## TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

October 20, 2008

Jeffery D. Delong
Client Name

Address
Ukiah, CA  95482
City, State  Zip

Home Phone

Mobile Phone
pacpc@hotmail.com
Email

This agreement, including all attached pages incorporated herein, will spell out the complete agreement and the complete terms of service between TMIRS Enterprises, Ltd. dba. TaxMasters (hereinafter "Firm"), and Client Named above (hereinafter "Client"). This agreement states the minimum total retainer for the services to be provided by Firm. Installment Arrangements, if any, are outlined in the attached schedule. Client agrees that Firm may correct any addition errors discovered at a later date and adjust any Installment agreements pro-rata for such addition errors. If no amount is indicated for a service description below, Client and Firm agree that, based on information available as of the date of this agreement, Client either does not appear to need the service or Client has declined that service.

## RETAINER

| | |
|---|---|
| Settlement Analysis | $ |
| (See Offer In Compromise Information if applicable) | |
| Wage Garnishment Release or Reduction | $ |
| Collection Hearing (CDP, CAP or OIC Appeal) | $ |
| Lien Subordination | $ |
| ACS Collections Case | $ |
| Revenue Officer or Revenue Agent | $        (RO / RA / TC) |
| Income Tax Returns (Form: 1040 ) | $    Fed(200)/ST(50)x6yrs=$1,500.00 |
| | Years: 00.01.02.03.04.05.06 |
| All returns must be filed before work can proceed.  Assumes W-2 only, and no compilation of records. | |
| IRS Audit; Audit Appeal; Tax Court Services | $ |
| Compliance Package | $ |
| Includes Corporate Formation, Payroll & Accounting Firm Service Referral | |
| IRS Consultation Fee | $    550.00(Trans – SP) |
| Installment Agreement or Uncollectible | $    950.00 Uncollectible |
| **Total** | $       3000.00 |

This engagement agreement including the attached pages fairly represents the agreement between the Client and Firm in all material respects. TaxMasters is Not a CPA Firm and TaxMasters is Not a Law Firm.

TMIRS Enterprises, Ltd., d.b.a. Tax Masters                    Client

By:  James Arline                                             (1)

10/20/2008                                                   Jeffery D. Delong
Date                                                         (Printed Name)

2

# TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

## Purpose of Agreement

This agreement addresses the provision of tax consulting services to Client regarding resolution of Client's Internal Revenue Service (hereinafter referred to as "IRS") problems and any known outstanding federal tax obligations that exist under terms stated in the attached pages. This agreement is limited strictly to those services which Client requests in the agreement. No other services are implied or may be inferred by this agreement.

Firm will follow such procedures, ethical responsibilities, and processes as rise to the level of tax professionals. Every reasonable effort will be made to represent the best interests of Client and maintain confidentiality of Client information in all dealings with the IRS. In no case will Firm assist Client in any actions that are or may be, in the sole opinion of Firm, a criminal, unethical, or immoral act.

## Sub Contracted Services

Client agrees that Firm may, at its sole discretion, contract other companies for any of the services which Client has retained Firm to handle. This sub-contracting company may be or may not be affiliated with Firm in some form or manner including relationship. No client relationship other than that of confidentiality is created in this engagement or any amendments to this engagement.

Client expressly waives any and all claims for potential monetary damages against the subcontracting company whether such claim arises from actions taken or from failure to take any action by subcontracting company on Client's behalf. Further, in the event Client shall be deemed by a competent court of law to have a right to collect damages despite this agreement, such damages shall be limited to the figure of twenty percent (20%) of the actual fees paid by Client to Firm for the service or services creating the damages.

## Acknowledgements of Client and Firm

- Client acknowledges and agrees to the following:
  - Firm represents Client and is not an agent of and has no authority over the IRS;
  - Final decision on acceptance of any negotiated settlements rests with the IRS;
  - Any and all governmental fees required for submission, review, approval, acceptance, filing, issuance of documents or such other fees as may be imposed by the governmental entities involved in Client's case remain the sole responsibility of the Client. Client's refusal to pay such fees may cause delays or the governmental entity may suspend or terminate all discussions regarding Client's case and result in additional professional fees from such a delay. Client is solely responsible for the events associated with payment or non-payment of the government's fees;
  - Timeliness in Client response to Firm is critical to success of any matters before the IRS and for any negotiated settlements – delay in response, even when such delay is out of Client's control, can result in IRS rejection of all previously accepted negotiating positions causing the process to begin again and increasing Client's cost of this process including additional professional fees for the added services;
    - Important Note: IRS requests frequently allow only 10 or 15 days for response. It is important that you immediately read all IRS documents and contact us to discuss it. We should receive a copy of the documents from the IRS, but it is not a certainty. As a result, it is imperative that you contact us on receipt.
- Client affirms that it enters this agreement willingly.
- Client agrees that all fees under this agreement are due Firm without regard to the success or failure of the service rendered.
- Client agrees Firm is not obligated to begin providing services to Client until all fees are paid in full. Firm may begin providing services earlier than this date at its sole discretion without waiver of this provision or future right to invoke it.
- Client agrees and acknowledges:
  - Client retains sole responsibility for the accuracy of the financial data and other information presented to IRS.
  - Firm will not audit, review, or examine the financial information – nor will Firm express any opinions or other forms of assurances on the financial or other information presented.
- Client indemnifies Firm for any omissions or errors in Client's data provided to Firm to develop the documents described in this agreement whether such omissions or errors were intentional or unintentional.
- Although the IRS will make exceptions, it is the general experience of Firm that the IRS will require that all tax returns be current and filed before the IRS will consider collection alternatives and garnishment relief. Client agrees that, in addition to payment of fees, Firm is not obligated to begin other services until all returns are complete. Should Client request and should Firm agree to begin other services before all required tax returns are complete and filed, Client is solely responsible for the failure of such efforts.

3

# TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmsfr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

**Services to be Rendered by Service Type**

All retainer amounts assume the Client responds to all requests for documents in a timely manner. Client agrees to summarize and or compile such required information in a form to be reasonably specified by Firm. Client agrees to separately compensate Firm for providing such services. No analysis, summary or compilation related services are anticipated in any services other than as specified. Client and Firm agree that the fees were determined assuming that any and all IRS and other governmental authorities will not take any adverse or unreasonable positions in pursuit of Client. All potential services are described below in the event Client should later need additional services not anticipated in the original agreement. This section is not intended to add or remove services client purchased in other sections of this agreement.

The description below is agreed by Client and Firm to fairly represent the anticipated scope of the services between the two parties.

1. **Settlement Analysis**
   o Firm will analyze Client financial data submitted in the form requested by Firm;
   o Firm will prepare a draft form of the IRS Form 433-A or 433-B using the Client provided financial data. Additional fees will apply if both Form 433-A and 433-B are required by IRS;
   o Firm will recommend to Client what Firm believes in its professional judgment to be the best alternative for Client of the various IRS programs including but not limited to Offer In Compromise, Partial Pay Installment Agreement, Installment Agreement, Uncollectible status, or, such other alternatives as may be now or become in the future available from the IRS.

2. **Offer In Compromise (See Disclosure Attached for Costs and Additional Terms)**
   o Firm will prepare the IRS Form 656 for submission of an offer in compromise with the IRS of federal tax obligations;
   o Firm will advise Client on the steps, if any, to take in response to IRS communication related to the offer in compromise submission provided Firm receives the IRS communication from either the IRS or Client;
   o Client is required to submit data and all IRS correspondence timely, accurately, and completely to Firm;
   o Client will advise Firm when Client receives correspondence from the IRS by submitting a copy to Firm;
   o Client agrees to respond promptly to all inquiries from Firm;
   o Client acknowledges that any delay in response will result in delays in resolution of Client's IRS problems and may result in additional fees. Resubmission of IRS documents and filings that result from adverse actions by the IRS or due to Client's action or failure to act timely, completely, and accurately will result in additional fees for the additional work required to either resume or restore Client's case.

3. **Reinstatement of Negotiated Settlement (See Disclosure Attached for Costs and Additional Terms)**
   o Firm will contact the IRS to seek reinstatement of the settlement terms previously held by Client.
   o Client assumes all liability if IRS refuses to grant a reinstatement.
   o Should IRS require a new or updated financial disclosure such as Form 433-A, Firm will advise Client of the cost of Settlement Analysis services.
   o Should Client reject Firm's offer of additional services or not agree and complete payment timely resulting in IRS termination of discussions or resulting expiration of Client's regulatory rights in the matter, Client agrees that all services are satisfactorily completed in this matter.

4. **Wage Garnishment Release or Reduction**
   o Analyze client submitted financial data; obtain clarification, if needed, of any information submitted; contact the IRS via telephone once to obtain relief for which Client is eligible; negotiate amount of relief due Client with the IRS if appropriate; advise Client of the results; advise Client's employer if requested by Client.
   **Important Notes:** (1) Client's employer may or may not accept any communication from Firm regarding this matter. (2). Employer's frequently process payroll several days before the pay date -- Client assumes all responsibility for timeliness of any required communication; (3) The IRS often fails to send notification of garnishment rescission to employers. Client is solely responsible for the consequences of the IRS' actions or failure to act.
   o If the IRS refuses to follow IRS regulations or IRS manual rules and Firm is required to make additional phone calls, Client will be invoiced at the Firm's then prevailing rate for second or subsequent phone calls.
   o Client is responsible for notifying Firm if the Client's employer does not receive the garnishment release order from the IRS. We will follow up after being notified by the Client of the IRS failure to submit the release or reduction to the IRS. The cost of this follow up service will be invoiced to Client at the Firm's then effective prevailing rate for such services. Payment for this service will be due before other services will commence or payments from other services will be applied to these invoices at Firm's sole discretion.

5. Collection Hearing (CDP, CAP, or OIC Appeal)

4

**TaxMasters**
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

- o CDP Hearing: Prepare CDP hearing request form and submit to the IRS; attend the hearing; negotiate with hearing officer on behalf of client for whatever relief may be available to the client; advise client of results of hearing.
- o CAP Hearing: Prepare CAP hearing request and submit to the IRS; attend the hearing; negotiate with hearing officer on behalf of client for whatever relief may be available to the client; advise client of results of hearing.
- o OIC Appeal: Prepare appeal notification and submit to the IRS; attend the hearing; negotiate with hearing officer on behalf of client for whatever relief may be available to the client; advise client of results of hearing.

6. Lien Subordination
   - o Using information provided by Client, Firm will attempt to obtain a subordination of lien so that Client may proceed with whatever transaction is anticipated and that requires lien subordination.
   - o Firm makes no representation or warranty as to the acceptable nature of the terms that IRS may impose in agreeing to the lien subordination.
   - o Client represents that Client will provide complete disclosure to Firm of all required financial information.
   - o If Release of Federal Tax Liens is the most viable option in Firm's judgment at the time, Firm will obtain release of federal tax liens from IRS personnel after resolution of the tax debt causing the lien to be filed.
   - o Resolution of the tax debt is excluded from this service.

7. Revenue Officer or ACS Collections
   - o Discussions with Client and IRS agent in the case as it progresses
   - o Analysis of open items due the IRS in the case (preparation of un-filed returns, CAP or CDP appeal hearings, OIC appeals, and such other services as may be needed are at additional fees)
   - o Negotiation on behalf of client with IRS agents to establish payment plans and other alternatives to payment plans. Preparation of tax returns and CAP, OIC, or CDP appeals will require additional fees.

8. Income Tax Returns to File.
   - o Assumes W-2 only type return – maximum of 2 form W-2's. Additional charges will apply if number of W-2's is greater than 2 per tax return.
   - o Additional required schedules, statements, sub schedules, worksheets, or documents that are necessary to be submitted with the tax return to ensure a complete and accurate return are at an additional fee. Fees vary – begin at $5.00 and increase based on complexity of the schedule or other document. Current fee schedule in force at time of preparation will apply.
   - o Firm will advise Client of the fee adjustment, if any, after reviewing the final documents required to prepare the tax return completely and accurately. Firm may, at its sole discretion, begin completion of returns before advising client of any fee adjustments.
   - o Assumes no compilation, sorting, or analysis of records.
   - o Any re-runs of return due to omitted information, any organizing or gathering and sorting or records for Client, any unusual or required additional follow up contacts necessary to complete the return, and any other services required to prepare and gather documents to enable preparation of a complete and accurate return will be at additional cost.
   - o Client agrees to provide full and complete disclosure of all information deemed relevant by Firm in preparation of the tax returns. Firm may suspend completion of tax returns until such full and complete disclosure is provided. Client is solely responsible for the effects of such a suspension should it become necessary.

9. IRS Audit OR IRS Audit Appeal OR Tax Court Services
   - o IRS Audit
     1. Audit representation at IRS offices or in Firm offices if a field audit by IRS.
     2. Consult with and advise Client on actions that should be taken to prepare records for audit.
     3. Consultations with Client on results of audit visit with IRS and discussion of any actions needed based on the audit result.
     4. Should IRS take an unreasonable position in Client's case or should informal appeals and research be needed for discussion with IRS audit management, additional fees will apply.
   - o IRS Audit Appeal
     1. Appeal of IRS audit findings or resolution at manager level of auditor or audit manager objections.
     2. Preparation of appeal documents for first level appeal.
     3. Consultations with Client on results of audit appeal including discussion of any actions recommended based on the appeal results.
   - o Tax Court Services
     1. Retain outside counsel to prepare and file the Tax Court petition.
     2. Provide assistance to outside counsel with petition preparation as needed.
     3. Attend Tax Court hearings with outside counsel as needed.

5

# TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

- o Client agrees that Firm may substitute the above services as needed to pursue the best options on the client's audit. If more than one of the above options will apply, Client will be responsible for any additional fees. Such additional work requiring multiple services will only be done with Client's advance approval.

10. Bookkeeping Services
- o Prepare summarized income and expense information on an income tax basis for Client using Client's original source records.
- o Reconcile depreciation schedules, if needed in Firm's opinion.
- o Reconcile bank accounts, if needed in Firm's opinion.
- o Prepare asset and liability schedules, if needed in Firm's opinion.
- o Firm is not a CPA firm and will not provide any form of opinion or transmittal letter to go with the above mentioned schedules of financial information.

11. Compliance Package
- o Introduce Client to an accounting company that will provide needed business accounting services
- o Introduce Client to a payroll service company
- o Client to execute separate agreement regarding services and fees with each of the payroll and accounting companies
- o Corporate Formation Services by Firm
  1. Prepare formation documents.
  2. Register corporation with state authorities.
  3. Obtain Federal and State Tax Identification Number from IRS if requested by Client.
  4. File an election to be treated as an S Corporation with the IRS if requested by Client.
  5. File an election to be treated as an S Corporation with the state revenue authorities if available in client's state and if requested by Client.
  6. Prepare corporation book of records for Client including seal if requested by Client.
  7. Provide all filing documents used in formation to Client.

12. IRS Consultation Fee
- o Transcript Consultation: prepare power of attorney form 2848 or equivalent; contact IRS by phone once; obtain IRS income and withholding information from the IRS and obtain tax filing status and tax debt information from IRS; inform client of results of this contact.
- o Report Consultations: obtain data and information from client; contact IRS once if necessary; conduct analysis of case; and prepare recommendation where appropriate of action to be taken by Client.
- o Other services as agreed in writing (SP).

13. Installment Agreement or Uncollectible
- o Using Settlement Analysis information, request uncollectible status with the IRS on behalf of the Client if requested by Client AND if Client qualifies according to regulations in place as of the time of the request.
  1. Client acknowledges that the IRS may annually review the Client's uncollectible status and may return the Client to active collections at the IRS' sole discretion and may return the
  2. Client agrees that Firm will provide this service once. If unsuccessful or if IRS later terminates the status and returns Client to active collections, Firm has no additional obligation.
  3. Client agrees that if Firm is unable to obtain uncollectible status with the IRS for Client, Firm may agree to a pay plan that is based on Client's financial data as provided by Client during the Collection Alternatives analysis. If Client rejects this pay plan based on the financial data, Firm and Client agree that Firm has met its obligations to Client in this service in all material aspects.
  4. If Client has not purchased a Settlement Analysis, Firm is not obligated to conduct a complete financial analysis and may rely on Client providing complete and accurate information. Firm will then make one attempt at obtaining uncollectible status for Client after Firm makes a simple and cursory initial review of Client financial data provided.
- o Using Settlement Analysis information, if this additional service is purchased, request an installment agreement with the IRS on behalf of Client.
  1. Installment agreement may be either a partial pay agreement or a standard agreement or such other installment agreements as may now exist or, at Firm's sole discretion to include the service, such other installment arrangements as may be created in the future by the IRS
  2. It is anticipated that after conducting the Settlement Analysis, Firm will contact the IRS once to establish the payment plan. Second or additional calls may result in additional fees at Firm's sole discretion.
  3. If Client has not purchased a Settlement Analysis, Firm is not obligated to conduct a complete financial analysis and may rely on Client providing complete and accurate information. Firm will then make one attempt at obtaining uncollectible status for Client after Firm makes a simple and cursory initial review of Client financial data provided.

6

# TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmsfr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

## Minimum Fees, Minimum Retainer, and Additional Fees

The MINIMUM RETAINER stated herein for professional services is the minimum fee for the service indicated.  It is not a flat fee for the service.  Client and Firm agree that should a stated service later be found not to be needed, Firm may, at its sole discretion, refund the amount of the stated retainer for that service if it has been paid, void the service and not collect the amount if unpaid by Client, apply the retainer to additional services needed by Client, or hold the amount of the retainer on the unneeded service as a credit against future services Client may need.

All retainer amounts assume the Client responds to all requests for documents in a timely manner and that all required tax returns of any kind required of the Client have been filed with the appropriate governmental authorities and that the governmental authorities will not take any adverse or unreasonable positions in pursuit of Client and that the IRS or other governmental entity will perform their duties with all due and reasonable professionalism.  Client is solely responsible for any additional fees and costs incurred should the actual time required on Client's behalf exceed the normal budgeted amount for such services due to any of the above or for other reasons beyond Firm's control.

All fees quoted are a retainer and a minimum fee to complete that service.  Additional fees will apply (1) if Client fails to fully disclose all relevant data and information; (2) if Client requests or demands regular status reports in excess of those anticipated by Firm; (3) if Client requests or requires excessive consultations (as defined by Firm at its sole discretion) either by phone or in person; (4) service requirements on Client's case exceed the norm due either to Client needs or to the requirements of the IRS or other governmental entities pursuing Client's case.  The additional professional fees when applicable will be based on actual time required and the Firm's professional hourly fee rates that range from fifty to eight hundred and fifty dollars per hour depending on the type of service and the staff providing the service.  Rates are subject to change without requirement of advance notice.  Invoices will be presented monthly or more frequently at Firm's discretion.  Invoices are due on presentation.  Firm's obligation to continue to provide services is strictly contingent upon Client's payment of invoices on or before the due date on the invoice.

Client agrees that, should Client seek the assistance of any third party in this matter in the event of disagreement with Firm, all time spent in discussion with such third party shall be charged against the budgeted time purchased by Client in its retainers for services and shall reduce the time available for providing of services to Client.  Client further agrees that should such an event occur, Client agrees to hold Firm harmless for any and all disclosure of Client information required to resolve such disagreement.  Client agrees that Client provides his or her permission to disclose all information in Firm's files about Client to such third party without need of additional agreement to disclose and that Client waives all confidentiality expectations of Firm in such an event.

Client agrees that collection costs including reasonable attorney's fees and a monthly late fee of 1.5% or the maximum allowed by law, of the amount due may be added to any invoices unpaid after the due date or in the event Client defaults on payment of the retainers agreed herein.

## Client's Early Termination of Agreement

Client may terminate this agreement at Client's discretion by providing Client's notice in writing to Firm.  In the event of termination by Client, the minimum professional fees due for services rendered or to be rendered will be the higher figure of: (1) the minimum total retainer specified above and the actual fee for any other services performed - or - (2) the actual time expended by Firm at standard billing rates.  If Client has paid more than the minimum fee as determined herein, a refund will be paid.  Client agrees to remit any balance in full with its termination notice or to permit any remaining balance to be drafted in full using the payment method established in the installment agreement.

## Other Terms: Damages: Arbitration: Jurisdiction

Travel and other expenses, if required, are excluded and subject to prior approval of Client.  Travel to local IRS offices is included in the fees provided herein.

Unless otherwise agreed in writing, the above fees and this engagement letter properly executed by Client shall be remitted to TaxMasters before Firm is obligated to provide any services described herein.

The parties agree that the obligation of Firm to render professional services to Client is expressly contingent upon full payment of fees provided under this agreement.

Headings, underlined passages, or bold lettering in this agreement are provided for ease of reference and emphasis on the passage.  Client and Firm agree that no other purpose to these visual aides is intended or may be inferred.

Client agrees to conduct himself herself in a professional manner while in Firm offices or while communicating with Firm staff, in person, by telephone, or by any electronic means.  Should Client's behavior become abusive, in Firm's sole discretion, Firm retains the right to terminate the agreement without refund.

7

# TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

Damages – Client agrees that damages are limited in all causes of action and in all claims that can be reasonably anticipated in this matter should Client and firm become engaged in litigation over this agreement or the services provided. In the event of litigation, Client agrees that damages sought against Firm, including attorney's fees, shall be limited to the amount of fees paid by Client pursuant to this agreement and or any validly executed subsequent supplemental engagement agreement, for all causes of action brought against Firm, should Client prevail in any and all claims or causes of action.

Arbitration Agreement:

- Client agrees that any and all claims, demands, disputes, or controversies of any kind or nature that Client has construing any of the negotiations leading to the purchase of the services, terms and provisions of the sale, engagement agreement, arrangements of payment, purchase of service contracts, the performance of the engagement agreement or services, or any other aspect of the services from Firm shall be settled by binding arbitration conducted pursuant to the provisions of Title 9 of the United States Code Chapter 1 et seq. and according to the Rules of the American Arbitration Association.

- Client agrees, covenants, and contracts that there shall be no class arbitration between the parties and the only parties to any disputes or controversies to be arbitrated as more particularly described herein shall be the Client and Firm. Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The Client agrees that the arbitration proceedings to resolve all such disputes shall be conducted in Houston, Harris County, Texas. Client agrees to bear all costs of arbitration. Client agrees to keep confidential the results, decisions, and conversations and all communications in connection with the arbitration proceedings and or Arbitration Agreement. Firm may seek damages and or injunction against the Client for any violations of the confidentiality requirements set forth herein.

- Client and Firm agree that all prior contracts and agreements between the parties of any kind and executed at any time prior to the date of this agreement shall, as part of this agreement, be deemed to be modified to include and adopt the arbitration terms of this agreement and to remove the litigation provisions as if all of the prior agreements or contracts originally contained these provisions.

8

# TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

## INSTALLMENT ARRANGEMENT

### Pre-Authorized Payments by Credit Card

**Credit Card Information:**   Visa   MC      Discover      AMEX

I, ___Jeffery D. Delong___, authorized user of credit card number ████████ that expires ████ with card code of ████ and billing address of ████ ___Ukiah, CA___ and billing Zip code of ___95482___ acknowledge the transaction in the amounts specified below with the merchant whose location is Houston, Texas on the transaction dates specified below and request my bank release these funds to the merchant processing bank in order to credit the merchant for any chargeback dispute on this item. Authorization to charge the account below for service fees is given irrevocably.

Card Number: ██████████
Card Code: ████
Billing Zip: ___95482___      Billing Address: ████████ ___Ukiah, CA___

Expires: ████████

Total of Services:          $      3000.00
Less: Down Payment      $      3000.00   10/20/08
Balance Due:               $        00.00

**Client may pre-pay installments without penalty at any time.**

| | Amount: | Due Date: | | Amount: | Due Date: |
|---|---|---|---|---|---|
| 1. | $ | | 5. | $ | |
| 2. | $ | | 6. | $ | |
| 3. | $ | | 7. | $ | |
| 4. | $ | | 8. | $ | |

Installment Total:    $      00.00
(Should equal amount of Balance Due Above)

_Cardholder Signature_

Jeffery D. Delong
Cardholder Name

10/20/2008
Date

9

## TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

## INSTALLMENT ARRANGEMENT

### Pre-Authorized Payments by Bank Draft

**Checking Account Information:**

Client Name: Jeffery D. Delong    Bank Name: _____

Bank Address: _____    Bank Phone: _____

Routing #: _____    Checking Account #: _____

Terms: Client requests that pre-authorized checking drafts be created on the dates of the installment schedule below. Such drafts will not require signature of Client. Unless another account is indicated, Client instructs that the account used for the initial payment is the drafting account. Client is responsible for timely payment if pre-authorized check is not honored for any reason. Client requests that the above bank release the funds as requested below and waives all disputes, changes, and stop payments with above bank now or in the future. Authorization is given irrevocably. Payment amounts to change to pro-rata amount on remaining installments if supplemental billing occurs.

Total of Services:    $    3000.00

Less: Down Payment    $    3000.00  10/20/08

Balance Due:    $    00.00

Client may pre-pay installments without penalty at any time.

| | Amount: | Due Date: | | | Amount: | Due Date: |
|---|---|---|---|---|---|---|
| 1. | $ | | | 5. | $ | |
| 2. | $ | | | 6. | $ | |
| 3. | $ | | | 7. | $ | |
| 4. | $ | | | 8. | $ | |

Installment Total: $    00.00
(Should equal amount of Balance Due Above)

_____    Jeffery D. Delong    10/20/2008
Accountholder Signature    Accountholder Name    Date

| |
|---|
| Attach Voided Check Here |

10

## TaxMasters
*"We Solve Your IRS Problems."*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

## Garnishment Disclosure
### (Applicable if Garnishment Relief is a selected service)

Except for the tax returns that Firm was engaged to prepare, I/We have filed all required tax returns for tax years ended to the date of engaging Firm at least sixty (60) days prior to the date of the engagement. I/We have noted any exceptions to this statement below. If I/We have left it blank, Firm is advised that the above statement is true and complete. If I/We have left it Not Filed as of 60 days prior: _____
(Attach separate sheet if needed.)

## Offers In Compromise Disclosure
### (Applicable if Client desires to submit or reinstate an Offer in Compromise)

Client agrees that the following fee will be paid to Firm at the time of submission to the IRS of the Client's Offer In Compromise IRS Form 656 or its then effective equivalent if substantially equal in service requirements (prepared only on IRS request for reinstatement). This fee is intended to pay only for the submission and management of the submission of the Offer In Compromise or to request a reinstatement of a previously approved offer in compromise. Any required financial analysis of Client financial position or appeals of IRS actions in the event this offer in compromise or reinstatement is rejected for any reason are not included in this service fee.

Fee Amount:  $ _____ (Fee is due in Money Order, Check, or Cashiers Check before submission of Offer In Compromise)

Client Signature

10/20/2008
Date

Jeffery D. Delong
Client Name

Spouse Signature

Spouse Name



# Next Process in Handling Your Case

Once again, thank you for using TaxMasters for solving you Federal and/or State Tax dilemma. Below are the next following steps and the proper way of getting information concerning on your particular case.

1. After documents have been sent to you please return the signed documents to the following fax number: 713-463-2924 or email it to james.arline@txmstr.com
2. Now that you have become a TaxMasters client, within the next seven (7) business days, one of our case coordinators will contact you to introduce the next steps of the process.
3. A Case Coordinator with be in contact with you at least once a month to provide a progress report.

## To Contact the Operation in Regards to Your Case:

Direct Contact Number to TaxMasters Operations Department:

## 1-800-682-3679 Dial Extension #1102
## Your Personal Client ID # is: E3126

This will direct you to the Operations Department cue where one of our case coordinators can discuss your case with you if you have any questions.

Once again, thank you for using TaxMasters for solving your Tax dilemma.

*James R. Arline*
Nationwide Number: 888-497-5937 ext 3525
james.arline@txmstr.com

The information in this document may include confidential and/or client-privileged communications. This document is intended to be reviewed only by the individual or individuals named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, use, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system. Any use, publishing, copying, disseminating, forwarding or other use is prohibited as the content remains the property of the author.

Form **2848**
(Rev. March 2004)
Department of the Treasury
Internal Revenue Service

## Power of Attorney
## and Declaration of Representative

▶ Type or print. ▶ See the separate instructions.

OMB No. 1545-0150

For IRS Use Only
Received by:
Name _____
Telephone _____
Function _____
Date _____

| **Part I** | Power of Attorney |

**Caution:** Form 2848 will not be honored for any purpose other than representation before the IRS.

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on page 2, line 9.

Taxpayer name(s) and address

Jeffery D. Defong

Ukiah, CA 95482

| Social security number(s) | Employer identification number |
| --- | --- |
| | |

| Daytime telephone number | Plan number (if applicable) |
| --- | --- |

hereby appoint(s) the following representative(s) as attorney(s)-in-fact:

**2 Representative(s)** must sign and date this form on page 2, Part II.

| Name and address | |
| --- | --- |
| Lekshmy Ravindranathan<br>900 Town & Country Ln, Ste 400<br>Houston, TX 77024 | CAF No.   7805-93473R<br>Telephone No.   281-205-0654<br>Fax No.   713-465-8034<br>Check if new: Address ☐   Telephone No. ☐ |
| Name and address<br>Autry Griggs<br>900 Town & Country Ln, Ste 400<br>Houston, TX 77024 | CAF No   0303-86583R<br>Telephone No.   281-205-0654<br>Fax No.   713-465-8034<br>Check if new: Address ☐   Telephone No. ☐ |
| Name and address<br>Teresa K. Pitre<br>900 Town & Country Ln, Ste 400<br>Houston, TX 77024 | CAF No.   0303-94322R<br>Telephone No.   281-205-0654<br>Fax No.   713-465-8034<br>Check if new: Address ☐   Telephone No. ☐ |

to represent the taxpayer(s) before the Internal Revenue Service for the following tax matters:

**3 Tax matters**

| Type of Tax (Income, Employment, Excise, etc.)<br>or Civil Penalty (see the instructions for line 3) | Tax Form Number<br>(1040, 941, 720, etc.) | Year(s) or Period(s)<br>(see the instructions for line 3) |
| --- | --- | --- |
| Income Tax | 1040 | 1983 thru 2008 |
| Civil Penalty | 1040 | 1983 thru 2008 |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for Line 4. Specific uses not recorded on CAF. ▶ ☐

**5 Acts authorized.** The representatives are authorized to receive and inspect confidential tax information and to perform any and all acts that I (we) can perform with respect to the tax matters described on line 3, for example, the authority to sign any agreements, consents, or other documents. The authority does not include the power to receive refund checks (see line 6 below), the power to substitute another representative, the power to sign certain returns, or the power to execute a request for disclosure of tax returns or return information to a third party. See the line 5 instructions for more information.

**Exceptions.** An unenrolled return preparer cannot sign any document for a taxpayer and may only represent taxpayers in limited situations. See Unenrolled Return Preparer on page 2 of the instructions. An enrolled actuary may only represent taxpayers to the extent provided in section 10.3(d) of Circular 230. See the line 5 instructions for restrictions on tax matters partners.

List any specific additions or deletions to the acts otherwise authorized in this power of attorney: _____

_____

_____

**6 Receipt of refund checks.** If you want to authorize a representative named on line 2 to receive, **BUT NOT TO ENDORSE OR CASH** refund checks, initial here _____ and list the name of that representative below.

Name of representative to receive refund check(s) ▶ _____

For Privacy Act and Paperwork Reduction Notice, see page 4 of the instructions.   Cat. No. 11980J   Form **2848** (Rev. 3-2004)

Form 2848 (Rev. 3-2004)                                                                    Page 2

7   **Notices and communications.** Original notice and other written communications will be sent to you and a copy to the first representative listed on line 2.

   a If you also want the second representative listed to receive a copy of notices and communications, check this box ▶ ☐

   b If you do not want any notices or communications sent to your representative(s), check this box ▶ ☐

8   **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same tax matters and years or periods covered by this document. If you do not want to revoke a prior power of attorney, check here ▶ ☐

YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.

9   **Signature of taxpayer(s).** If a tax matter concerns a joint return, both husband and wife must sign if joint representation is requested, otherwise, see the instructions. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the authority to execute this form on behalf of the taxpayer.

   ▶ IF NOT SIGNED AND DATED, THIS POWER OF ATTORNEY WILL BE RETURNED.

| | | |
|---|---|---|
| _(signature)_ | 20 OCT 08 | |
| Signature | Date | Title (if applicable) |
| **Jeffery D. Delong** | ☐☐☐☐☐ | |
| Print Name | PIN Number | Print name of taxpayer from line 1 if other than individual |
| | | |
| Signature | Date | Title (if applicable) |
| | ☐☐☐☐☐ | |
| Print Name | PIN Number | |

| **Part II** | **Declaration of Representative** |
|---|---|

**Caution:** Students with a special order to represent taxpayers in Qualified Low Income Taxpayer Clinics or the Student Tax Clinic Program, see the instructions for Part II.

Under penalties of perjury, I declare that:

   • I am not currently under suspension or disbarment from practice before the Internal Revenue Service;

   • I am aware of regulations contained in Treasury Department Circular No. 230 (31 CFR, Part 10), as amended, concerning the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and others;

   • I am authorized to represent the taxpayer(s) identified in Part I for the tax matter(s) specified there; and

   • I am one of the following:

    a **Attorney**—a member in good standing of the bar of the highest court of the jurisdiction shown below.

    b **Certified Public Accountant**—duly qualified to practice as a certified public accountant in the jurisdiction shown below.

    c **Enrolled Agent**—enrolled as an agent under the requirements of Treasury Department Circular No. 230.

    d **Officer**—a bona fide officer of the taxpayer's organization.

    e **Full-Time Employee**—a full-time employee of the taxpayer.

    f **Family Member**—a member of the taxpayer's immediate family (i.e., spouse, parent, child, brother, or sister).

    g **Enrolled Actuary**—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Service is limited by section 10.3(d) of Treasury Department Circular No. 230).

    h **Unenrolled Return Preparer**—the authority to practice before the Internal Revenue Service is limited by Treasury Department Circular No. 230, section 10.7(c)(1)(viii). You must have prepared the return in question and the return must be under examination by the IRS. See Unenrolled Return Preparer on page 2 of the instructions.

▶ IF THIS DECLARATION OF REPRESENTATIVE IS NOT SIGNED AND DATED, THE POWER OF ATTORNEY WILL BE RETURNED. See the Part II instructions.

| Designation—Insert above letter (a–h) | Jurisdiction (state) or | Signature | Date |
|---|---|---|---|
| b | 054550 | | |
| b | 87950 | | |
| b | 86969 | | |

Form 2848 (Rev. 3-2004)

Form **8821**

(Rev. April 2004)
Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Do not use this form to request a copy or transcript of your tax return. Instead, use Form 4506 or Form 4506-T.

| OMB No. 1545-1165 |
|---|
| For IRS Use Only |
| Received by: |
| Name |
| Telephone ( ) |
| Function |
| Date |

**1 Taxpayer information.** Taxpayer(s) must sign and date this form on line 7.

Taxpayer name(s) and address (type or print)

Jeffery D. Delong

E3126

Ukiah, CA 95482

| Social security number(s) | Employer identification number |
|---|---|
| ▉▉▉▉▉ | |
| Daytime telephone number | Plan number (if applicable) |
| ( ) | |

**2 Appointee.** If you wish to name more than one appointee, attach a list to this form.

Name and address

Nikita Nichols
800 Town and Country Ln Ste 400
Houston, TX 77024

CAF No. 0304-91783R
Telephone No. 281-203-0884
Fax No. 713-403-2681
Check if new: Address ☐  Telephone No. ☐  Fax No. ☐

**3 Tax matters.** The appointee is authorized to inspect and/or receive confidential tax information in any office of the IRS for the tax matters listed on this line. Do not use Form 8821 to request copies of tax returns.

| (a) Type of Tax (Income, Employment, Excise, etc.) or Civil Penalty | (b) Tax Form Number (1040, 941, 720, etc.) | (c) Year(s) or Period(s) (see the instructions for line 3) | (d) Specific Tax Matters (see instr.) |
|---|---|---|---|
| Income Tax | 1040 | 1983 thru 2008 | All Tax Matters Can Be Discussed |
| Civil Penalty | 1040 | 1983 thru 2008 | All Tax Matters Can Be Discussed |

**4 Specific use not recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions on page 3. If you check this box, skip lines 5 and 6 ▶ ☐

**5 Disclosure of tax information** (you must check a box on line 5a or 5b unless the box on line 4 is checked):

a If you want copies of tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this box ▶ ☐

b If you do not want any copies of notices or communications sent to your appointee, check this box ▶ ☐

**6 Retention/revocation of tax information authorizations.** This tax information authorization automatically revokes all prior authorizations for the same tax matters you listed on line 3 above unless you checked the box on line 4. If you do not want to revoke a prior tax information authorization, you must attach a copy of any authorizations you want to in effect and check this box ▶ ☐
To revoke this tax information authorization, see the instructions on page 3.

**7 Signature of taxpayer(s).** If a tax matter applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute this form with respect to the tax matters/periods on line 3 above.
▶ IF NOT SIGNED AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.

| Signature | 20 OCT 08 Date | Signature | Date |
|---|---|---|---|
| Jeffery D. Delong | | | |
| Print Name | Title (if applicable) | Print Name | Title (if applicable) |
| ☐☐☐☐☐ PIN number for electronic signature | | ☐☐☐☐☐ PIN number for electronic signature | |

For Privacy Act and Paperwork Reduction Act Notice, see page 4.   Cat. No. 11596P   Form **8821** (Rev. 4-2004)

# EXHIBIT B

STATE OF CALIFORNIA § § §

COUNTY OF LOS ANGELES

BEFORE ME, the undersigned notary public, on this day personally appeared Denise J. Miranda who proved herself to be the person whose name is subscribed hereon through her California Drivers License which contained her photograph and signature, and who after being by me duly sworn, upon her oath deposed and said:

"On April 20, 2010 I listened to the attached audio recordings of the my conversation with persons at Taxmasters and have reviewed a transcript of that recording. Both the audio recording and the transcript are an accurate record of my conversation with persons at Taxmasters, which took place on June 18, 2009, pursuant to my call to Taxmasters at 1-888-497-5973 to seek help for a tax problem. Very shortly - within an hour or two of completing this call - I called Taxmasters because I had changed my mind and decided I wanted to wait before committing to use their services. The Taxmasters representatives that I spoke with were very uncooperative and told me my bank card had already been charged. They told me I had to contact to the billing department to cancel and gave me a phone number which did not go through to the billing department. I called back again and was told to send an email, which I did. I sent multiple emails but never received a response confirming my cancellation. When I was finally able to speak with a person in the billing department who told me that my written request for a refund would have to be reviewed by her and several other persons in the company. Four days later on June 22, 2009 my bank account was charged $1500.00 by Taxmasters. I continued attempting to contact Taxmasters by phone and via email but never received a response to my refund request. Eventually I was able to work with my bank to reverse the charges that Taxmasters had placed against my account. I never received any services from Taxmasters, and tried to cancel the same day I signed up, but Taxmasters was unwilling to return my money to me.

"Further affiant sayeth not."

Denise Miranda

SUBSCRIBED AND SWORN TO before me on the 20th day of April, 2010 by DENISE MIRANDA who proved to me on basis of satisfactory evidence to be the person who appeared before me

Notary Public in and for the State of California

CHRISTI M. PIDO
Commission # 1848385
Notary Public - California
Los Angeles County
My Comm. Expires Apr 26, 2013

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPTION OF SALES CALL

BETWEEN TAXMASTERS, INC. AND DENISE MIRANDA

ON JUNE 18, 2009

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIBED BY: JANE DEMARS
Job No. 85268



**ORIGINAL**
Sunbelt Reporting & Litigation Services

DALLAS/FORT WORTH
13155 Proctor, Ste. 303
Dallas, Texas 75208
214-747-0723

CORPORATE OFFICE
6575 West Loop South, Ste. 303
Houston/Bellaire, Texas 77401
713-521-0783

SAN ANTONIO
8200 IH-10 West, Ste. 1000
San Antonio, Texas 78210
210-253-0723

CORPUS CHRISTI
711 N. Carancahua, Ste. 700
Corpus Christi, Texas 78475
361-882-0763

AUSTIN
1016 La Posada Dr, Ste. 294
Austin, Texas 78752
512-458-9100

EAST TEXAS
102 North College, Ste. 1014
Tyler, Texas 75702
903-593-3213

1-800-665-0733 · www.sunbeltreporting.com

2

1    UNIDENTIFIED FEMALE:  Thank you for
2  calling Taxmasters.  If you are already a client, please
3  press five to be connected to client services.
4  Otherwise, please hold while we connect you with the
5  next available tax consultant.  All calls may be
6  monitored or recorded for quality assurance.
7       JD:  Thank you for calling Taxmasters.
8  This is JD speaking.  May I ask who I'm speaking with?
9       DENISE MIRANDA:  Hi, JD.  My name is
10 Denise.
11      JD:  Hey, Denise.  How you doing?
12      DENISE MIRANDA:  I'm, I'm not doing too
13 well.
14      JD:  Uh-oh.  Tell me what's going on so I
15 can --
16      DENISE MIRANDA:  Um.
17      JD:  -- see if I can help you out.
18      DENISE MIRANDA:  This is my first audit.
19 I was contacted in May --
20      JD:  Okay.
21      DENISE MIRANDA:  -- via letter.
22      JD:  Okay.
23      DENISE MIRANDA:  Mail letter and I had my
24 first appointment with the auditor yesterday, and it
25 lasted a whole entire day, and I can't do, I don't think

3

1   I can do this by representing myself.  It's just way too

2   complicated.

3           JD:  Okay.

4           DENISE MIRANDA:  And I think, I think

5   there's a lot of unfair things going on, but I'm not too

6   sure, you know, because I don't know.

7           JD:  That's exactly why they like you to

8   represent yourself because you don't know.

9           DENISE MIRANDA:  Yeah.

10          JD:  And that's okay.  That's okay.  You

11  know, we've got tax attorneys that went to school for

12  seven years to learn everything that needs to be known,

13  and they still learn something new every day.  So --

14          DENISE MIRANDA:  Yeah.

15          JD:  -- don't feel alone.

16          DENISE MIRANDA:  Okay.

17          JD:  All right.  So tell me, let's talk

18  about the audit and let's talk --

19          DENISE MIRANDA:  Okay.

20          JD:  Well, let's first, let's talk about

21  the reason for the audit.  There's always typically

22  usually a reason for the audit.  What do you think --

23          DENISE MIRANDA:  He wouldn't --

24          JD:  What --

25          DENISE MIRANDA:  He wouldn't give me a

4

1   direct answer why.  Everything that we kind of went

2   over, he -- it didn't seem like there was anything wrong

3   with it.  He did say something that I didn't file, I had

4   a CD account with Washington Mutual --

5           JD:  Uh-huh.

6           DENISE MIRANDA:  -- which collected $400

7   interest.--

8           JD:  Uh-huh.

9           DENISE MIRANDA:  -- and that's something

10  I didn't, I don't remember filing, so I think it could

11  have, that was probably the red flag.

12          JD:  Okay.

13          DENISE MIRANDA:  Other than that, we went

14  over everything and everything was fine until he opened

15  my, my bank statements of my personal checking account.

16  He added up all of the withdrawals and all of the

17  deposits.  Some of those withdrawals were, were cash --

18  I mean not withdrawals, the deposits were cash, and he

19  said that those, the IRS sees all of those as revenue,

20  because I also have a side business.  So he said that

21  those, I was supposed to claim that for my side

22  business, which it wasn't, because it was all -- a lot

23  of that is personal with like my mom helping me with

24  rent.  Some of it were birthday gifts.  Some of it, I

25  know some of it must have even been from a student loan.

5

1          JD:  Uh-huh.

2          DENISE MIRANDA:  So I asked him, you

3    know, if there's any way I could prove it, and he said

4    to get bank deposits.  Well, the bank deposits don't

5    show what exactly the income is from.  It just shows

6    cash deposits.

7          JD:  Uh-huh, uh-huh, uh-huh.

8          DENISE MIRANDA:  So he's, he added it up

9    and it was $1,100, and I'm getting penalized on that,

10   and he wants to have another meeting to go through my

11   other bank statements from '06 and '08.

12         JD:  Okay.  So, so '06, '07 and '08 are

13   the three years that he's trying to audit you for, then.

14         DENISA MIRANDA:  Right.

15         JD:  Okay.  Okay.  All right.  Here's,

16   here's what needs to happen.  Okay.  I think you've got,

17   a, a firm understanding that audits are guilty until

18   proven innocent.

19         DENISE MIRANDA:  Uh-huh.

20         JD:  And then, and I think you understand

21   the need for representation.

22         DENISE MIRANDA:  Yes.

23         JD:  Okay.  Now, if you're being audited

24   for three years, which is the typical time frame that

25   they audit you for, so we need to say it's '06 to '08.

6

1   Okay? Okay. Now, have, do you have any idea of what

2   the fallout's going to be yet?

3            DENISE MIRANDA:  No idea.  He's not

4   giving me any type of lead for that at all, even when I

5   asked.  He's like, (inaudible) this attorney thing, he's

6   just trying to go through every single little thing, so.

7            JD:  Was he asking a bunch of odd

8   questions?

9            DENISE MIRANDA:  What do you mean by odd?

10  I mean he asked so many questions.  I --

11           JD:  Generic, generic questions, and then

12  you answer and he goes uh-huh uh-huh uh-huh, and he

13  writes it down on his pad.

14           DENISE MIRANDA:  Yes.  That, that was the

15  whole audit, how the entire audit was.

16           JD:  Okay.  What happens there is is --

17  And these guys are trained professionals.  Okay?  What

18  they do is is they, they try to ask you a bunch of

19  generic questions and based on your answers is whether

20  or not they can deny any of your claims that you've made

21  on your return, and then what they do is they go back

22  and remove those deductions, charge you for what you

23  were paid on them, plus interest and penalties.  So

24  typically, for one year of -- And they only audit you,

25  okay, I don't give a crap what they say, they always say

7

1   oh, it's random.

2              DENISE MIRANDA:  Yeah.

3              JD:  Bull.  It's not random.  Okay?

4   They, they select you based on the amount of money they

5   think they can get from you.

6              DENISE MIRANDA:  Got it.

7              JD:  So if they've already identified

8   somewhere in the three years of returns, then they're

9   not going to waste their time on, you know, a couple

10  thousand dollars.  They're going to waste their time on

11  20, 30, $40,000.

12             DENISE MIRANDA:  Yeah.

13             JD:  Okay.

14             DENISE MIRANDA:  It's -- Yeah.  See, the

15  thing is I've been filing for a family with me and my

16  fiance, and I, I have a CD account that has quite a good

17  amount, and, and I know, you know, what scared me is

18  that he can seize all of that.

19             JD:  Yeah, he can.

20             DENISE MIRANDA:  He can seize all of it.

21             JD:  Yes, ma'am.

22             DENISE MIRANDA:  Which I'm really afraid

23  of, because I, I just really got pregnant and it took so

24  long for that to happen, you know so --

25             JD:  Right.  Well, congratulations.

8

1        DENISE MIRANDA:   Thank you.

2        JD:   You're welcome, you're welcome.

3  I'm, I'm a proud pappa of a two-year-old.

4        DENISE MIRANDA:   Oh, congratulations to

5  you.

6        JD:   Thank you.   Thank you.

7        DENISE MIRANDA:   Yeah.

8        JD:   Okay.   This is definitely something

9  we can help you out with.   One of our, in fact our main

10  audit attorney, his name is Clyde Miller, you'll be,

11  you'll be glad to know he's never lost a case.   So what

12  happens in an audit is you just need somebody that has

13  the backbone to stand up to the IRS, and that has the

14  ability to back up all of your, all of your claims and

15  all of your deductions to the hilt.   Okay?   The

16  beautiful thing about tax attorneys is, a lot of people

17  think, you know, they, they can file your taxes and this

18  and that, they're, yeah, they're great with tax

19  problems, but they're also great when it comes to audit

20  because they know the, the rule book better than most

21  IRS agents.   What we try to find is where the IRS agent

22  has taken shortcuts and, you know, did not allow things

23  that they should have allowed and everything else.

24        Now, here's my fear.   Okay?   And this is,

25  this is a pretty standard fear whenever you get this far

9

1  is how much information have you given him and is it

2  damaging to your case.

3          DENISE MIRANDA:  We went through the, the

4  most part of it was an interview session --

5          JD:  Uh-huh.

6          DENISE MIRANDA:  -- which lasted a few

7  hours where he asked me about my side business, which is

8  a really small business.  I don't even make any money.

9  I'm a personal trainer, and I do boot camps on the side.

10         JD:  Okay.

11         DENISE MIRANDA:  Yeah, and I, I had

12 claimed my equipment, my apparel and park permits, you

13 know, things I had to buy to put on these boot camps.

14         JD:  All right.

15         DENISE MIRANDA:  And it, I took a loss

16 because I didn't make any money off of them.  I was

17 doing a lot of promotional things, trying to promote my

18 business, trying to get it up off, off of its feet, you

19 know, on to its feet.

20         JD:  All right.

21         DENISE MIRANDA:  And there's also, you

22 know, the, the travel, the cost of travel to get

23 certifications in order to train people and to be out

24 there, you know, giving instruction on exercise.

25         JD:  Right.

10

1        DENISE MIRANDA:  So that was pretty much

2  the whole part of it, and other than that, I, I can't

3  think of anything would would be detrimental to the

4  whole case, that I -- you know.

5        JD:  Okay.  Any time, any time, you know,

6  and we tell all of our clients in any matter, whether it

7  be an audit or just plain old, you know, somebody needs

8  a negotiation, to stop any contact with the IRS.  Now,

9  I'm not telling you to, to avoid meetings with them,

10  just simply because, you know, if you do that, then what

11  they're going to do is they're just going to go and, and

12  make their own assumptions and do what they were

13  planning on doing in the first place.

14        DENISE MIRANDA:  Yeah.

15        JD:  So sounds like you, you've gotten a

16  decent handle on what's going on and that's, that's,

17  that's half the battle for me, because a lot of times I

18  have to spend, you know, 45 minutes to an hour

19  explaining to people the nature of an audit.  You know,

20  most of the people that call me haven't gone to the

21  meetings yet.  They don't understand what they're in

22  for.

23        DENISE MIRANDA:  Yeah.

24        JD:  Oh, no, I can take care of this.  I

25  can do this on my own.  Oh, okay.  Okay.

11

1   DENISE MIRANDA: Yeah, I, I really
2   can't, only because I, you know, I, I didn't want to
3   argue with him because I knew what he was doing, and I
4   was like there's no way you can put this into, you know,
5   say that this, I was making business revenue when this
6   is my personal account. Like I, I didn't understand how
7   I had to claim a gift from my family or like, you know,
8   they were supporting me with my rent, too, because I was
9   out here by myself.
10      JD: Right.
11      DENISE MIRANDA: So depositing money in
12  my account, and he was going to penalize me for that, so
13  it, it didn't seem right.
14      JD: Right. What do you do for a living,
15  your, your real job?
16      DENISE MIRANDA: My real job also health
17  fitness, so I work, I work with health fitness and I, I
18  do, you know, I run at corporate, at corporate sites,
19  like for Mattell and for Toyota, I'm here and I'm taking
20  care of their, you know, their members, their employees,
21  so.
22      JD: Yeah. I see you're calling from a
23  Toyota --
24      DENISE MIRANDA: Yeah.
25      JD: -- looks like a Toyota --

12

1        DENISE MIRANDA:  Yeah, right now.

2        JD:  -- dealership?

3        DENISE MIRANDA:  Right, yeah, correct.

4        JD:  Okay.  Okay.  Well, here's, here's

5 what it boils down to.  Okay?  And this is, this is

6 what's going to make or break the case for you.  Okay?

7 To do an audit, we charge 2,000 a year.

8        DENISE MIRANDA:  Okay.

9        JD:  Okay?  So you're looking at $6,000

10 to take care of the audit, and then the consultation

11 fee, not between you and I, but between us and the

12 IRS --

13        DENISE MIRANDA:  Uh-huh.

14        JD:  -- and all the communication that

15 needs to go forth, because the IRS charges per phone

16 call.

17        DENISE MIRANDA:  Yeah.

18        JD:  Okay?  So you're looking at $6,500

19 for us to take over the case and get all this taken care

20 of.  Now, again, I stress to you that, that Clyde Miller

21 has never lost a case --

22        DENISE MIRANDA:  Okay.

23        JD:  -- and we don't typically take on

24 cases that we know we're, that we know we can't win.

25        DENISE MIRANDA:  Yeah.

13

1    JD:  So just from where I'm standing, it

2  sounds like you've done everything on the up and up.

3  You'd be surprised at some of the losers I have calling

4  me that have, yeah, well, I've cheated the system and

5  now they've caught up with me and I need you guys to

6  defend me.  Well, if you cheated the system, you know, I

7  paid my taxes, you know, I did what I was supposed to

8  do, and I'm not going to pay for your mistake, you know,

9  and I, if it's you've made just a bunch of ridiculous

10  claims on your, your income taxes, I can't protect you.

11    DENISE MIRANDA:  Yeah.

12    JD:  So if that's, you know -- And that

13  doesn't sound like the case here, so that's good.

14    DENISE MIRANDA:  No.  I, I didn't, I know

15  I didn't make any ridiculous claims.  There, I know

16  2007, I did make some mistakes because it was my first

17  time claiming taxes.

18    JD:  Uh-huh.

19    DENISE MIRANDA:  And I didn't know what

20  the hell I was doing and I was using Turbo Tax, which

21  wasn't any help.

22    JD:  Right.

23    DENISE MIRANDA:  And I was trying to

24  reach the deadline and get my taxes done, you know,

25  before the deadline.

14

1      JD: Uh-huh, uh-huh, uh-huh.

2         DENISE MIRANDA:  And so I know he found

3   some mistakes.  Like I claimed I had a renter when I,

4   I'm, I thought it was meant that I was the renter, but

5   the way it was worded was, you know, I didn't

6   understand.

7         JD: Uh-huh.

8         DENISE MIRANDA:  So I know that, but

9   other than that, there was no -- I wasn't trying to go

10  around anybody, I wasn't trying to get more money than I

11  was supposed to or make all these weird, ridiculous

12  claims.

13        JD: Okay.  Good.  If there's some

14  fallout, you know, that's okay.  Some fallout is better

15  than, you know, going back and reversing everything

16  you've claimed for the last three years, because that's,

17  that's where you get in big trouble.

18        DENISE MIRANDA:  Yeah, yeah, and I

19  understand that.

20        JD: Right.  And it's far easier to

21  defend your, to defend your claims than it is to go back

22  and try to negotiate an amount that comes from, from an

23  audit.

24        DENISE MIRANDA:  Uh-huh.

25        JD: Okay?  So, and, and this, you know,

15

1   out and dry, plain and simple, the $6,500 to, to take

2   care of you, you know, we, we need, obviously, as, as

3   much of that up front as possible, especially in an

4   audit, especially in an audit case. I mean, you tell me

5   what are you comfortable coming up with, and, and I can

6   get creative with the rest of it.

7           DENISE MIRANDA: I can probably come up

8   with 2,000 right now, at the most.

9           JD: Okay. All right. Let's do this

10  here. Let me do some quick math here.

11          DENISE MIRANDA: Uh-huh.

12          JD: Not my strong suit, believe it or

13  not. I'm great with numbers and a calculator, but when

14  I, when I get them all rattling around in my head, I get

15  lost.

16          DENISE MIRANDA: Yeah.

17          JD: Okay. So if we do 2,000 down, that

18  will leave a balance of 4,500 and you know, obviously I

19  want to get that, you know, as, as quickly as possible

20  because audit appeals, we can get audit -- Usually what

21  we try to do is get involved and get the audit

22  completely thrown out.

23          DENISE MIRANDA: Yeah.

24          JD: Sometimes we can. Sometimes we

26  can't. If we actually physically have to go through the

16

1   audit, that's fine too.  Okay?  So the sooner, the
2   sooner we get all the funds in, the better.  So you --
3   $4,500 split up over two months, is that going to be
4   okay for you?
5            DENISE MIRANDA:  Well, what would those
6   payments look like?
7            JD:  Oh, let's see, 2,250 a month for the
8   next two months.
9            DENISE MIRANDA:  2,250 a month?  Okay.
10           JD:  Okay?  All right.  So let's do that.
11   And that should, that should be ample enough opportunity
12   for us to get involved, because you can only do one year
13   at a time so --
14           DENISE MIRANDA:  Yeah.  Just, just to be
15   clear, the 2006, I don't know if he -- I know he looked
16   at it so --
17           JD:  If he --
18           DENISE MIRANDA:  But he didn't --
19           JD:  If he actually --
20           DENISE MIRANDA:  He (inaudible) over it.
21           JD:  If he asked you questions, any
22   questions at all about 2006, then he's -- Audits always
23   happen in threes.  Usually what happens is is they come
24   after you for one year.
25           DENISE MIRANDA:  Yeah.

17

1    JD: Okay? And then based on the results
2 of that one year, then they go back. Like say, say he
3 audits you for -- which is, which is what it sounds to
4 me has happened, he's audited you for '07 first.
5    DENISE MIRANDA: Yes.
6    JD: Okay. Now, because he's opened up
7 the floor for '06 and '08, that tells me that he's
8 already got a substantial amount for 2007 that you may
9 not be aware of, but he is, and he knows that if he can
10 get that amount from '06 -- if he knows he can get that
11 amount from '06, he can probably get it from '06 -- or
12 excuse me. He knows if he can get that amount from '07,
13 there's a good chance he can get it from '06 and '08,
14 plus interest and penalties.
15    DENISE MIRANDA: Yeah. I, I don't think
16 he's auditing '06, because I didn't, I didn't work in
17 '06. There's, I made nothing, not even -- You know, I
18 filed my taxes. I didn't, didn't make any money.
19    JD: Okay. So it's just two years then,
20 '07 --
21    DENISE MIRANDA: I --
22    JD: -- and '08?
23    DENISE MIRANDA: I'm pretty sure it was
24 two years, but he did look at '06, but totally skipped
25 over it. He, he even said, oh, you don't make enough

18

1   money in '06,

2            JD:  Okay.  Okay.  So then it's just two

3   years.  Well, that's good.  Then it makes it, that will

4   be $4,500, then, and then with 2,000 down, that will

5   leave $2,500.

6            DENISE MIRANDA:  Uh-huh.

7            JD:  And we can split that up if you

8   want, into two months, or we can do one month some

9   payment, and the next month.

10           DENISE MIRANDA:  Okay.

11           JD:  So I mean you tell me what, in your

12  budget, what's come, what's comfortable for you.

13           DENISE MIRANDA:  What if I gave you 1,500

14  now?

15           JD:  Okay.

16           DENISE MIRANDA:  Then what would it look

17  like for my payments?

18           JD:  Okay.  Let's see here.  That would

19  be 3,000, so it would be 1,500 next month and the

20  following month, or it will be 3,000 one, one lump sum.

21           DENISE MIRANDA:  One lump sum.

22           JD:  You want to do one lump sum?  Okay.

23           DENISE MIRANDA:  No, I don't want to.

24           JD:  Oh, you don't?

25           DENISE MIRANDA:  Yeah.

19

1    JD:  Okay.

2    DENISE MIRANDA:  Just right now it's kind

3 of -- because I have all my medical stuff that I'm going

4 through, too, that I'm paying as well, so I want to -- I

5 mean I could pay it.  I just need, like I need it to be

6 spread up, spread up, because I don't know what --

7    JD:  Okay.

8    DENISE MIRANDA:  -- I --

9    JD:  That's fine.  I can do, I can do

10 1,500 down and then we'll do 1,500 next month and then

11 1,500 the month after that.

12    DENISE MIRANDA:  Okay.

13    JD:  Okay?  Because what we're going to

14 do is we're going to tie, we're going to tie it up in

15 litigation as long as we can.

16    DENISE MIRANDA:  Uh-huh.

17    JD:  Okay.  And basically all we do is we

18 use their own rules and laws against them and make them

19 wait, and put them on the spot, make them, you know, let

20 them squirm a little bit, and kind of turn the table on

21 them.  That gives us enough opportunity to buy some time

22 to get ready for any appeals that need to happen.  So,

23 so you're looking at -- Let's see.  Let me start at,

24 yeah, 4,500, and then split up over the course of the

25 next three months with 1,500 down, or two months, three

20

1  months counting this month, so let's go ahead and get

2  that started.  Let me get some information from you.

3            DENISE MIRANDA:  Okay.  How do I know

4  this is legit, first, because I don't want to get, I

5  don't want to get, you know.

6            JD:  Oh, I understand, I understand.

7  Well, first, first of all, you know, we've, we're, we've

8  been in business for a very long time.  This is a

9  question we get sometimes.  And we're endorsed by Bill

10 O'Reilly and a lot of the big guys on, on Fox News

11 Network and, and everyone else.  You know, we've, just,

12 you know, when you picked up the phone today and you

13 called, you found us, so it's, you'll find us again

14 tomorrow and the day after that.  We're not going

15 anywhere.  We're not hiding.  We advertise pretty

16 heavily.  We spend lots of money on advertising every

17 month, you know, to, to put our name out there, so.

18 Have you ever heard of, you, you know who Bill O'Reilly

19 is?

20            DENISE MIRANDA:  I'm familiar with Bill

21 O'Reilly.

22            JD:  You know who Dennis Miller is?

23            DENISE MIRANDA:  Dennis Miller?

24            JD:  Uh-huh.

25            DENISE MIRANDA:  No.

21

1    JD:  He, he is, he does some similar to

2  Bill O'Reilly.  He's on, he's on Fox News, and he also

3  does, he has a big radio talk show.  He was a football

4  announcer for a long time, and then it didn't work out

5  for him.

6    DENISE MIRANDA:  Uh-huh.  Yeah.  It

7  sounds familiar, but I'm not too sure.

8    JD:  He also endorses us, personally

9  endorses us.  So that was a, that was a really huge, a

10  monumental thing for our company is to, is to get

11  endorsed by those guys because you know, they're big

12  names in the political world, and they do a lot of help

13  for, they do, they help out a lot of folks so.

14    DENISE MIRANDA:  Uh-huh.

15    JD:  But other than that, I mean, you

16  know, we've been in business, like I said, been in

17  business for a long time so.

18    DENISE MIRANDA:  Okay.  And how, I don't

19  know, I just, I kind of feel like I, I need a -- I don't

20  know.  It's just like a lot of money to give out when

21  I'm not too sure on the first phone call.

22    JD:  Uh-huh.

23    DENISE MIRANDA:  But I do definitely, I

24  know I definitely need help with this.  This is a lot to

25  take on on my own.

22

1    JD:  Yeah.  And, and rightfully,

2    rightfully, you know, you should -- you, you are

3    obviously, an understanding of the severity of the

4    situation, the gravity of what's going on, so -- And in

5    an audit, you know, time is never on your side, so I

6    mean, we're -- You've already, you've already had one

7    appointment with the, with the auditor and -- What is,

8    what was the -- You said you went yesterday was the day

9    of the audit?

10    DENISE MIRANDA:  Yes.

11    JD:  Okay.  So you --

12    DENISE MIRANDA:  All right.  Yeah.  He

13    wants the, ho said at least one more appointment

14    for '07, and then he wants to go through '08 as well.

15    JD:  Okay.  Okay.  Did he set up a time,

16    a timetable with you?

17    DENISE MIRANDA:  Yeah.  It's July 1st is

18    the next one.

19    JD:  Okay.

20    DENISE MIRANDA:  But he --

21    JD:  1st of July.

22    DENISE MIRANDA:  You know, it's just hard

23    because I have to go -- He made me buy bank statements

24    for three years and that's $5 a bank statement.

25    JD:  Yeah.

23

1          DENISE MIRANDA:  So I've already put a

2    lot of money into it, like, you know, according to my

3    budget, because I don't, you know, I don't have that

4    much money.

5          JD:  The next one is for 2007?

6          DENISE MIRANDA:  They both are.  The

7    first one was, and then this will be a followup for

8    2007.

9          JD:  Okay.  And then the one after that,

10   did he set a date for the one after that?

11         DENISE MIRANDA:   No.

12         JD:  Okay.  He will next time.  2007, and

13   then for 2000 -- You'll probably have the same situation

14   with 2008 as well.  They'll want to, they'll want to

15   meet with you twice for 2008, so that will probably be,

16   I'd say mid, mid to late July.

17         DENISE MIRANDA:  Okay.

18         JD:  And then he'll have another one for

19   2008 to wrap, to wrap it up.  Okay.  Let's see here.

20   All right.  So I'm; you tell me what do you want to do

21   next.

22         DENISE MIRANDA:  Can I just hear like

23   some of the benefits, how this is going to help me?  You

24   know, it's just --

25         JD:  Absolutely.  I mean absolutely.

24

1  What's -- And, you know, just to kind of reiterate

2  what's going to happen here is when we get involved, the

3  first thing we do, obviously, is contact the IRS and you

4  know, we give them legal documents, power of attorneys,

5  let them know we're your representation, because, you

6  know, you should never, you should never go into an

7  audit alone and by yourself, and I think you've, you've

8  gotten a firm understanding of why that is now.   Then we

9  pull your master file and find out exactly, you know,

10  get the, get the reasoning behind the audit, because

11  there's, there's always a reason.   They don't just audit

12  you for, for no apparent reason.   They, they have

13  ulterior motives.

14            DENISE MIRANDA:   Yeah.

15            JD:  Okay?  So we find out, you know,

16  what's going on.  We're going to try to locate ourselves

17  the, what they can be consider to be fishy and, and you

18  know, identify ahead of time what we're working against.

19  Then we start building a case, while we are putting

20  them, you know, while we're stalling them with, you

21  know, tying them up in litigations and everything else

22  and buying as much time as possible.  You know, we want

23  to try to stretch this out as long as we can, because

24  what's, what happens here is the auditor is going to get

25  tired of waiting, and he's just going to; he'll either

25

1  drop the case and say forget about it and move on to the

2  next person or, you know, he'll go ahead and try to

3  follow through with it, in which case, you know, we're,

4  we're more than welcome to invite that, bring it on, in

5  other words.  You know, we, by the time, by the time

6  they get done with all the litigation, we'll be ready

7  for the case and we'll have all the proof and

8  documentation that we need, and it's at that point we

9  pretty much just lay it down on the table and say

10  listen, this is what it is, you know, you can scream and

11  moan all you want to about this and that, but we have,

12  right here in black and white, and according to tax

13  article four, section six, you know, this is what's

14  going on, this is the right stuff that we need.  We,

15  it's just a matter of knowing the laws and knowing what

16  your rights are, and we do.

17          Like I told you earlier, Clyde Miller has

18  never lost a case.  We actually do more audits in one

19  month than most firms do in a year and most tax

20  attorneys do in a lifetime, so audits are one of our

21  main things.

22          DENISE MIRANDA:  Okay.

23          JD:  So rest, rest assured, we're, we're

24  very, we're very good at what we do and we're proud of

25  that.

26

1    DENISE MIRANDA:  Do you -- I mean in the
2  long run, you think I'd be saving money rather than, you
3  know, paying out all this money to the IRS?
4        JD:  Yeah, because here's -- It's like I
5  said before.  Here's what happens in an audit.  Okay?
6  Before they even decide to audit you, they've already
7  identified something in your return that is going to get
8  them a sizable amount of money back.  Okay?  What,
9  what's, what has really spawned all this and let's,
10  let's kind of take the long, the long leap around to
11  kind of get back to where we're at is, you know, with
12  all the corporate bailouts and everything that's been
13  going on, you know, with buying, you know, bailing out
14  the big three, you know, Ford, Chevy and, and Chrysler
15  and --
16        DENISE MIRANDA:  Yeah.
17        JD:  -- you know, all the, the financial
18  institutions that need bailing out, you know, they've,
19  they're shelled out, you know, close to a trillion
20  dollars now in, in bailout money. .And what they didn't
21  tell you was, yeah, what they -- They gave you the, the,
22  you know, the warm fussy, you know, yeah, we're going to
23  do this, this is going to save them, this is going to,
24  you know, what this is going to do for America is great,
25  blah, blah, blah, blah, blah.  What they didn't tell you

27.

1  was, by the way, taxpayer, you're responsible, you know,

2  for the amount of money that -- you're, you're

3  responsible, you're going to wind up being responsible

4  for, you know, whatever the outcome is, you know,

5  whatever you wind up owing the IRS, so what, you know,

6  whatever.  So they've increased their collection

7  activity to, you know, pursue tax evaders, and they've

8  been looking a little bit harder at folks' tax returns.

9  And they, what they've done is they've identified

10 somewhere in your return where they can make money, and

11 they can get some money back to pay for the deficit,

12 because it's fallen on the taxpayer.  Just in the last

13 two months alone, Obama has beefed up the, the

14 collection efforts and the collection team for the IRS

15 by hiring, you know, 8,000 new revenue agents and

16 collection agents and everything else.  You know, first,

17 their, their first strike is, you know, on small

18 companies and corporate organizations.  Then, then it's

19 going to trickle down into, you know, private tax

20 returns and everything else like that, which is, which

21 is where you're at right now, and unfortunately, you

22 know, once, once they get involved, there's not a whole

23 lot that we're going to be able -- you know, all we're

24 going to be able to do is be able to help people deal

25 with the fallout and, you know, try to help represent

28

1  people as much as possible, because these next couple of

2  years are going to be pretty shaky when it comes to tax

3  returns. So --

4         DENISE MIRANDA:  Okay.

5         JD:  -- just for future reference, make

6  sure you're being careful when you do all your tax

7  returns, because --

8         DENISE MIRANDA:  Yeah.

9         JD:  -- they're really starting to look

10  hard at folks, really --

11         DENISE MIRANDA:  Yeah, because I just --

12         JD:  -- starting to look hard at folks.

13         DENISE MIRANDA:  I just started mine for

14  myself, because not a lot of -- You know, when I went to

15  people to do my taxes, they didn't know about my

16  business that I do, so they didn't know -- You know, I

17  was -- they didn't how to file it, but --

18         JD:  Uh-huh.

19         DENISE MIRANDA:  -- I've done it my own.

20  But there's other parts besides just the Schedule C that

21  I didn't know.  I, I may or may not, I don't think I've

22  messed up on that one that much, but.

23         JD:  Well, what you need to do is, what

24  you need to do, too, in the future is you need to find

25  yourself a good little local CPA firm to take care of

29

1  your taxes for you.  And something else, too, is, you

2  know, even if you're a sole proprietor, you should think

3  about, you know, incorporating your business.  You know,

4  it gets you more, more tax leverage.  You know, you --

5              DENISE MIRANDA:  Yeah.

6              JD:  -- get a little bit, you get tax

7  breaks and everything else, and plus it's, if you do

8  like a limited liability, then it lowers your liability

9  for, you know, if something were to happen to the

10  company or, you know, for instance something like this

11  were to happen.  Now, the only difference is is if you

12  were to incorporate your business and you were to bring

13  on, you know, employees, instead of just being a sole

14  proprietor, then instead of paying them, you know, cash

15  and 1099ing them, which I'm not sure if you know what

16  that means, but --

17              DENISE MIRANDA:  Yeah, I know.

18              JD:  Okay.  Instead of 1099, you would W

19  -- you would give them a W-2 and actually have

20  withholdings and you'd pay quarterly taxes, but the

21  amount of taxes that you'd pay out for your business is

22  minimal compared to what you're paying right now.

23              DENISE MIRANDA:  Yeah.

24              JD:  So that's just something to think

25  about in the future too.  But that, you should

30

1  definitely, you know, for the, for the future and for

2  2009 you should find, you know, somebody local that's,

3  you know, not too -- because there's some, there's some

4  CPAs out there that will rip your head off. You know,

5  they're, they're big corporate CPAs, and they're used to

6  dealing with bigger agencies, and quite honestly, their

7  time is extremely expensive.

8             DENISE MIRANDA: Yeah.

9             JD: So you just find somebody that's

10  local, that's not necessarily small time, but you don't

11  want to them to be big time either, to help prepare your

12  taxes for you. That way you don't find yourself in

13  this --

14             DENISE MIRANDA: Okay.

15             JD: -- position later.

16             DENISE MIRANDA: Okay.

17             JD: Okay?

18             DENISE MIRANDA: All right. Okay. So

19  going through this, do I have to do anything more? Like

20  do I have to contact the IRS and send them --

21             JD: Not at --

22             DENISE MIRANDA: -- any more?

23             JD: Not at all, not at all. We, we want

24  to, we want you to have as little contact with the IRS

25  as possible. In fact, from now on, when they contact

31

1  you, all you have to tell them is I've hired Taxmasters
2  as my representation, my audit appeal.  If you have any
3  questions, please call them.  You hang up the phone and
4  close the door.  That's it.
5            DENISE MIRANDA:  Okay.
6            JD:  You don't have to say anything else.
7  Your part in the process, all we'll need from you, when
8  we go into your audit, there's going to, any time
9  there's an audit, we're going to have lots of questions
10 for you.
11           DENISE MIRANDA:  Yeah.
12           JD:  We're going to kind of give you a
13 mini audit so that we can figure out what needs to
14 happen.
15           DENISE MIRANDA:  Okay.
16           JD:  You know, just, just some, not
17 necessarily generic questions.  Our questions are going
18 to be more specific, because they're obviously prudent
19 to your case.
20           DENISE MIRANDA:  Yes.
21           JD:  And then if there's any receipts or
22 anything that we're going to need to, you know, validate
23 any of your deductions or any of your claims, then, you
24 know, we'll have you generate those for us.  You can
25 either, you know, fax them, e-mail them, mail, you know,

32

1   whatever, hand deliver them, doesn't matter.

2           DENISE MIRANDA:  Okay.

3           JD:  Okay?  So that we can get this taken

4   care of for you.

5           DENISE MIRANDA:  All right.

6           JD:  All right?  So we, we try to, we try

7   to have as little -- What's a, a what's a good way to

8   explain this?  We try to have as, as little

9   responsibility on our clients' hands as possible.  You

10  guys are busy with your own businesses and your own

11  lives.  This is what we do for a living.  So, you know,

12  why not take all the responsibility off your shoulders?

13  Our ultimate goal in the process is to, you know,

14  relieve you of the burden, put it on our shoulders, get

15  everything solved for you so that, you know, everything

16  is back to normal.

17          DENISE MIRANDA:  Okay.

18          JD:  This is a pretty chaotic time, you

19  know --

20          DENISE MIRANDA:  Yeah.  It's, you know --

21          JD:  (Inaudible)

22          DENISE MIRANDA:  It was so much, and I,

23  you know, I couldn't even make that -- Those three years

24  combined, I probably made like a total of 3,000, you

25  know.  It's like --

33

1        JD:  Uh-huh.

2        DENISE MIRANDA:  -- you know, why are you

3  guys picking on me?

4        JD:  Right.

5        DENISE MIRANDA:  So, but and then, and

6  then to hear that they can take all of my savings, my

7  life savings, you know, it's kind of --

8        JD:  Absolutely.  See, what they're doing

9  there is, is it's scare tactics.

10       DENISE MIRANDA:  Yeah.

11       JD:  They, they, they do have the power

12  to take a lot of stuff from you.  You know, they can

13  take up to 90 percent of your income.  They can take,

14  you know, bank accounts, you know, 401Ks, IRAs CDs, any

15  kind of investments that you have that's liquid, they

16  can, they can get their hands on it and take it, and

17  with very little to no warning at all.  So obviously,

18  they don't want to tell you, we're going to take $10,000

19  from you next month out of your account.  They're not

20  going to give you a heads up.  Usually what happens is

21  is they send you letters in the mail, the notice of

22  intent to levy, and then about three or four days later

23  you get a notice from your bank the IRS has seized your

24  funds.

25       DENISE MIRANDA:  Okay.

34

1    JD:  So they usually always happen on the

2    same day, so you don't get an opportunity to counteract.

3    It's just from this point on, you're reactive instead of

4    being proactive.

5        DENISE MIRANDA:  Yeah.

6        JD:  So and that's what's important is

7    keeping the -- keeping control, keeping the ball in your

8    court, and keeping everything on your terms, and that's

9    what we, that's what we bring to the table, and that's

10   what we enforce is to make sure everything stays in your

11   power, in your hands.

12       DENISE MIRANDA:  Okay.

13       JD:  Okay?

14       DENISE MIRANDA:  All right.

15       JD:  All right.  So let's, let's talk a

16   little bit about the funds.  You said you wanted to do

17   $1,500 down, and then we can split up the rest of it

18   over the course of the next two months.  Okay.  I didn't

19   catch your last name, though.

20       DENISE MIRANDA:  It's Miranda,

21   M-I-R-A-N-D-A.

22       JD:  Okay.  All right.  And you got a

23   mailing address?

24       DENISE MIRANDA:  I do.  It's █████████

25       JD:  Okay.

36

1    DENISE MIRANDA:  And that's on ███████

2    ████████████████████

3          JD:  Okay.  And what's --

4          DENISE MIRANDA: ████████████████████

5    yeah, ███████

6          JD:  Okay.

7          DENISE MIRANDA:  And ████████████████████

8          JD: ███████████

9          DENISE MIRANDA:  And that's Long Beach,

10   California.

11         JD:  Oooh, LBC.

12         DENISE MIRANDA:  Yup.

13         JD:  All right.

14         DENISE MIRANDA:  And the zip code there

15   is 90803.

16         JD:  All right.  Let's see here.  Okay.

17   Let's see here.

18         DENISE MIRANDA:  So then all the bank

19   statements that I just ordered, do I even need to do

20   that still?

21         JD:  Yeah.  Yeah, because there's a good

22   chance we're probably going to need it too.

23         DENISE MIRANDA:  Okay.

24         JD:  So absolutely, yeah, go ahead and

25   follow through with that.

36

1.     DENISE MIRANDA:  Okay.

2.     JD:  You know, information, at this.

3.  point, is, is knowledge -- you know, knowledge is power.

4.     DENISE MIRANDA:  Got it.

5.     JD:  So, you know, anything we can have

6.  and use, the better.

7.     DENISE MIRANDA:  Okay.

8.     JD:  Let's see here.  Now, let's do this,

9.  I'm filling in some of these fields.  What's your date

10. of birth?

11.    DENISE MIRANDA: ██████████

12.    JD:  Okay.  Is your, is your husband

13. involved in any of this at all?  Is his name on any of

14. this or is this just solely on you?

15.    DENISE MIRANDA:  It's solely on me.

16.    JD:  Okay.  Okay.  Well, that's, that's

17. good.  That's good.

18.    DENISE MIRANDA:  Yeah.  He's only my --

19. We haven't gotten married yet, so --

20.    JD:  Oh, okay.  Okay.  Cool.  You-all

21. have a debt -- You-all have a date set?

22.    DENISE MIRANDA:  It was supposed to be

23. this year in July, but with everything going on.

24.    JD:  Yeah.  Actually, believe it or not,

25. my, my fiance and I, we're tying the knot in two weeks,

37

1   so we're --

2                   DENISE MIRANDA:  Oh --

3                   JD:  -- pretty excited about it.

4                   DENISE MIRANDA:  -- congratulations.

5   That's great news.

6                   JD:  Yeah, yeah, June 28th, so we're,

7   we're extremely pumped.

8                   DENISE MIRANDA:  Perfect month, perfect

9   date right there.

10                  JD:  Oh, yeah.

11                  DENISE MIRANDA:  Picked a good one.

12                  JD:  Yeah.  And youb know, it's, it's

13  been great because we've, we've been planning this; you

14  know, for years, it seems like, you know.

15                  DENISE MIRANDA:  Yeah.

16                  JD:  And we set one date and then that

17  date, you know, it was getting --

18                  DENISE MIRANDA:  That's --

19                  JD:  -- closer to that date and we just

20  weren't ready --

21                  DENISE MIRANDA:  Yeah.

22                  JD:  -- and then we set it again, and

23  then we just weren't ready.  So now it's, you know,

24  everything's planned.  All we got to do is show up.

25                  DENISE MIRANDA:  Yeah.  Yeah, that's, I

38

1    think that's what's going on with us.  So hopefully, you

2    know, once we get everything out of the way and cleared

3    up, we, you know, just have a perfect wedding, no, no

4    hassle, no worries, no stress.

5              JD:  Absolutely.  Well, at least until

6    you start planning.  I, my, my, my fiance has been

7    running around like a chicken with her head out off --

8              DENISE MIRANDA:  Yeah.

9              JD:  -- about six months now, getting

10   everything planned, and you know, she's, she's got this

11   image in her mind of what she wants it all to be like,

12   and where she wants and what she wants to wear.  You

13   know, she's been planning her wedding since she was four

14   so.

15             DENISE MIRANDA:  Yeah, see, that's the

16   opposite of me.  I'm making my fiance do everything

17   because I, I just don't want to deal with it.

18             JD:  Yeah, exactly.

19             DENISE MIRANDA:  Yeah.

20             JD:  Exactly.  All right.  Let me get

21   your social, so I make sure we get the right taxpayer.

22             DENISE MIRANDA:  Sure.  It's ████

23             JD: ████

24             DENISE MIRANDA: ████

25             JD: ████

39

1             DENISE MIRANDA: ███

2             JD: ███

3             DENISE MIRANDA: ███

4             JD: ███ Okay. All righty. How did you

5  want to take care of the 15? Did you want to do credit

6  card, debit cards --

7             DENISE MIRANDA: Um.

8             JD: (Inaudible).

9             DENISE MIRANDA: Yeah. My credit, my

10  Mastercard.

11             JD: Okay. That's fine.

12             DENISE MIRANDA: Okay.

13             JD: All right. Go ahead.

14             DENISE MIRANDA: It's ███

15             JD: ███

16             DENISE MIRANDA: ███

17             JD: ███

18             DENISE MIRANDA: ███

19             JD: ███

20             DENISE MIRANDA: ███

21             JD: Okay. And expiration date?

22             DENISE MIRANDA: ███

23             JD: Okay. Should be a three digit code

24  oh the back of the card.

25             DENISE MIRANDA: Yeah, ███

40

1     JD: ███████  All right. Is the billing

2   address the same as your home address?

3            DENISE MIRANDA:  Correct.

4        JD:  Okay.  Just a second here.

5          DENISE MIRANDA:  And is there any way I

6   can have like a, a receipt?

7            JD:  Absolutely.

8            DENISE MIRANDA:  Give the details?

9        JD:  Absolutely.

10          DENISE MIRANDA:  Okay.

11          JD:  Absolutely.  Actually, believe it or

12  not, in about 45 minutes to an hour you're going to

13  have, oopsy, you're going to have all of this.  There's

14  quite a bit of stuff I'm actually going to be sending

15  you.

16          DENISE MIRANDA:  Okay.

17          JD:  So let's see here.  One of, there's

18  one of the things I'm going to be sending you is the

19  engagement agreement, which is basically what we've

20  talked about, the services that we're going to do for

21  you.

22          DENISE MIRANDA:  Okay.

23          JD:  And then the other is going to be

24  two of the -- Why does it keep doing that?  Ah, shoot.

25  Okay.  Hang on just a second.  My computer is acting

41

1   goofy on me here.

2         DENISE MIRANDA:   Okay.

3         JD:   Okay.  There we go.  The two power

4   of attorneys that we're going to be sending you, which

5   it gives us the right to represent you, and the other

6   one is the gain -- let's us gain access to your, your

7   master file.  And then what comes after that is a, an

8   engagement agreement guide, which is kind of a list of

9   things to, to, you know, expect and, you know, it will

10  answer a lot of, you know, questions that you guys may

11  have, you know, in the next couple months.  What do I

12  need to do now?  What's next?  You know, it also

13  includes some information that we may need from you

14  guys, so it will, it will help you be prepared for the

15  future, too, and it gives you some good pointers,

16  especially if you're a business owner too, so.

17        DENISE MIRANDA:   Okay.

18        JD:   All right.  What I'm going to do now

19  is I'm going to get you on the line with my assistant.

20  My spelling is, is worse than my math, so I want to make

21  sure that I spelled everything right, and then she's

22  also going to talk to you a little bit more about the

23  two forms I'm going to be sending you, and she's also

24  going to tell you what your rights are.  So listen up.

25  This is important info, you know, basically kind of

42

1   stuff like if the IRS contacts you, just tell them
2   you're with us, you don't need to talk to them anymore,
3   you know, you can put them at bay.  So let me get her on
4   the line real quick.  Too, one, one question before I
5   do.  What is your e-mail address, so I can send all that
6   info to you?
7            DENISE MIRANDA:  Okay.  It's ████████
8   that's ████████████
9            JD:  Uh-huh.
10           DENISE MIRANDA: ██████████████████
11           JD:  Okay.
12           DENISE MIRANDA:  And then ██████████████
13  and that's at █████████████
14           JD: ████████████████████████████
15           DENISE MIRANDA: ██████████████████████████
16  ████
17           JD:  Oh, that's what I meant, ████████████
18  ████████████
19           DENISE MIRANDA:  Yeah.  So the ████ takes
20  the place of the ████
21           JD:  All right.  Cool.  All right.
22           DENISE MIRANDA:  That's at ████████████
23           JD:  All right.  Fantastic.  All right.
24  Give me just a couple seconds.  I want to get her on the
25  line.  Okay?

43

1    DENISE MIRANDA:  Okay.

2    JD:  Okay.  Just a second.  Let me track

3 her down.

4    DENISE MIRANDA:  Can I have your name

5 again?

6    JD:  Yeah.  It's JD.

7    DENISE MIRANDA:  JD, thank you for all

8 your help.

9    JD:  Hey --

10    DENISE MIRANDA:  Really appreciate it.

11    JD:  Not a problem.  That's what I'm here

12 for.

13    DENISE MIRANDA:  All right.  Thank you.

14    JD:  All right.  Miranda, are you

15 there --

16    DENISE MIRANDA:  Yeah.

17    JD:  -- or Ms. Miranda?

18    DENISE MIRANDA:  Yeah, yeah.

19    JD:  All right.  You're in luck.

20 Actually, the -- I actually tracked down my supervisor,

21 so he's going to be taking care of it from here, and if

22 you have any questions, just feel free to shoot away.

23 I'm going to stay on the line, and, and he'll be able to

24 answer all your questions too.

25    DENISE MIRANDA:  Okay, perfect.

44

1   KEITH:  Hi, Denise.  This is Keith.  I
2   will be doing the third party verification.  I've got
3   the spelling of your name as D-E-N-I-S-E, last name
4   M-I-R-A-N-D-A.  Is that correct?
5          DENISE MIRANDA:  Correct.
6          KEITH:  That your contact number is a
7   mobile phone.
8          DENISE MIRANDA:  Yes.
9          KEITH: ██████████████████
10         DENISE MIRANDA:  Actually incorrect.
11         KEITH:  Okay.
12         DENISE MIRANDA:  Contact, my mobile phone
13  is area code ████████████
14         KEITH: ████████████
15         DENISE MIRANDA:  Correct.
16         KEITH:  Got you.  And the other,
17  ██████████████
18         DENISE MIRANDA:  Correct.
19         KEITH:  And what was the other number?
20         DENISE MIRANDA:  I have another home
21  line.  It's ████████████
22         KEITH:  Okay.  And we have a, a mailing
23  address of ████████████████████████
24  ████ Long Beach, California, 90803.
25         DENISE MIRANDA:  Correct.

45

1    KEITH:  I like Long Beach.  I've been out
2    there before a few times.
3        DENISE MIRANDA:  Yeah, it's nice.
4        KEITH:  And we've got your date of birth
5    as ███████████████
6        DENISE MIRANDA:  Yes.
7        KEITH:  And your social security number
8    is ████████████
9        DENISE MIRANDA:  Yes.
10       KEITH:  Okay.  And then total fees for
11   the service is going to be $4,500 for an audit appeal,
12   an audit defense, and we're going to be putting $1,500
13   down today on a Mastercard.
14       DENISE MIRANDA:  Yeah.
15       KEITH:  It's going to leave a balance of
16   $3,000, and we're going to do $1,500 same time next
17   month and then $1,500, the remaining balance, a month
18   later on August the 18th.
19       DENISE MIRANDA:  Is there any way to
20   split that up, or even more, like add one more month, or
21   does it have to be in three months?
22       KEITH:  It's, it's best if it is, but if
23   you need three months and you're telling me that up
24   front, then we'll go ahead and do that real quick.
25       DENISE MIRANDA:  Yeah.  If -- I can pay

46

1  it, but if I can split it up one more month, that would

2  work --

3                    KEITH:  Okay.

4          DENISE MIRANDA:  -- a little better.  So

5  I can still put the 1,500 down today, but if I can add

6  one more month to the rest.

7                    KEITH:  Sure, absolutely.

8          DENISE MIRANDA:  Okay.

9                    KEITH:  So we could do $1,000 on July the

10 18th, thousand dollars on August 18th, and $1,000 on

11 September 18th.

12         DENISE MIRANDA:  Yes.

13                   KEITH:  Okay.  And then the credit card

14 we're going to be using is a ███████        It's

15 ████████████

16         DENISE MIRANDA:  Uh-huh.

17                   KEITH:  And that's in your name, Denise?

18         DENISE MIRANDA:  That's Denise, yeah.

19                   KEITH:  And the expiration date is, is

20 December -- is ████████████

21         DENISE MIRANDA:  Yes.

22                   KEITH:  And on the back of the card, the

23 last three digits are ████

24         DENISE MIRANDA:  Yes.

25                   KEITH:  Now, is the billing address on

47

1   that credit card the same as your home mailing address?

2            DENISE MIRANDA:  Yes.

3            KEITH:  Okay.

4            DENISE MIRANDA:  I think you got the last

5   four numbers wrong.  It's ███ You said, I think you

6   said ███

7            KEITH:  Oh, I might have said the wrong

8   number.

9            DENISE MIRANDA:  Oh.

10           KEITH:  But it, it is typed ███

11  Thanks --

12           DENISE MIRANDA:  Oh.

13           KEITH:  -- for catching that.

14           DENISE MIRANDA:  Okay.

15           KEITH:  I don't normally do this.  My,

16  our assistant does.

17           DENISE MIRANDA:  Yeah.

18           KEITH:  She might have stepped away for a

19  minute or two.  And e-mail, we have your first name

20  ███ it looks like no ███ it's just ███

21           DENISE MIRANDA:  Right.

22           KEITH:  Is that a typo?

23           DENISE MIRANDA:  No.  That's correct.

24           KEITH:  The, at ███ Okay.

25           DENISE MIRANDA:  Yeah.

48

1      KEITH:  And it's, that's interesting.

2  Okay.  I wanted to congratulate you.  You've taken an

3  important first step in resolving the tax problem,

4  Miranda, Denise.

5      DENISE MIRANDA:  Denise.

6      KEITH:  The good news is that your

7  initial payment today authorizes us to immediately begin

8  working on your case.  Isn't that great news?

9      DENISE MIRANDA:  That's perfect news.

10      KEITH:  Okay.  Now, do you have any

11  questions about the services you purchased today?

12      DENISE MIRANDA:  I just, I just want to

13  make sure everything is legit and I'm not just throwing

14  my money on someone who, you know, I don't know.

15      KEITH:  I understand.

16      DENISE MIRANDA:  I'm still nervous, you

17  know, about the whole situation, because I mean this

18  whole tax audit came out of the blue and just kind of,

19  you know, it took me by surprise and, you know, I've

20  never tried to deal with anything like this before.

21      KEITH:  Yeah.  It's, it's important that

22  you get great representation on this.  Our, our audit

23  defense team is just phenomenal.  Mr. Clyde Miller and

24  his team, we've, we've been fighting the IRS for about

25  20 years now.  He's won every single case he's ever

49

1  done.  Here at Taxmasters we do about 25 cases every

2  month, which is most -- which is more than most firms do

3  in an entire lifetime, so --

4         DENISE MIRANDA:  Yeah, that's what JD was

5  telling me.

6         KEITH:  Yeah.  We're phenomenal at it.

7  It's our strongest, strongest --

8         DENISE MIRANDA:  I'm really worried.  I,

9  I don't -- I told JD, it's kind of personal, but I --

10 it's taken me so long to get pregnant, I, you know, I

11 finally am now, and I'm very high risk, and I'm trying

12 my best not to stress out, so I just want to make sure

13 everything is going to be smooth for me, and I, I don't

14 want to lose the baby, you know.

15        KEITH:  Oh, congratulations.  Yeah,

16 that's right.

17        DENISE MIRANDA:  (Inaudible).

18        KEITH:  That's awesome.  I have three

19 children myself.  Yeah, it's --

20        DENISE MIRANDA:  Yeah.

21        KEITH:  Yeah.  It's something that's

22 important to know that, that you can get through to us

23 any time you need us, and contact JD or myself, and we

24 have a direct line to our customer service, as well.  We

25 also call outbound every month or so, and, and in audit

50

```
1   cases it's a little more often, so I hope you don't
2   think we're too pesty, but --
3               DENISE MIRANDA:  Oh, no;
4               KEITH:  -- we like to make sure that
5   you're up to date on everything.
6               DENISE MIRANDA:  Okay.  Perfect.
7               KEITH:  And so any idea if it's a boy or
8   girl yet?
9               DENISE MIRANDA:  It's a boy.
10              KEITH:  Oh.
11              DENISE MIRANDA:  Yeah, yeah, it's a
12  little boy.  He's throwing it all out and everything,
13  so,
14              KEITH:  Oh, wow, fantastic.  Do you have
15  a due date yet?
16              DENISE MIRANDA:  Halloween.
17              KEITH:  Halloween.
18              DENISE MIRANDA:  Halloween, yeah.
19              KEITH:  That's fantastic.
20              DENISE MIRANDA:  Yeah.
21              KEITH:  Wow.
22              DENISE MIRANDA:  Yeah.  So the doctor --
23  because I've already broken out in hives, I've had
24  already two -- about three or four panic attacks, so
25  they're about to put me on disability, and then the tax
```

51

1   audit came and I was like, oh, gosh, I, I don't know if

2   I can do it, so, you know, I'm just, I, I think this is

3   the best bet for me --

4                   KEITH:  Yes --

5                   DENISE MIRANDA:  -- help me out.

6                   KEITH:  -- it is, absolutely.

7                   DENISE MIRANDA:  Because IRS doesn't care

8   what I'm going through right now.

9                   KEITH:  No.  You could be on a terminal

10  death bed and they wouldn't care, unfortunately.

11                  DENISE MIRANDA:  Yeah, yeah.

12                  KEITH:  They just -- yeah, they're pretty

13  bad.

14                  DENISE MIRANDA:  Yeah.

15                  KEITH:  Well, I want to read this real

16  quickly to you here.  Wanted to welcome you aboard

17  again, Denise, and you'll be -- You may continue to

18  receive letters from the IRS.  Now, two of the documents

19  we need you to sign are official notices to the IRS that

20  we represent you, so please sign and return those

21  immediately.  Okay?

22                  DENISE MIRANDA:  Okay.

23                  KEITH:  And now the IRS is not supposed

24  to contact you by phone or by person, they're not

25  supposed to visit you at work or at home after they

52

1  receive these notices.  However, some rogue IRS

2  representatives may choose to ignore the law and contact

3  you anyway.  This is unethical, but it does happen.  So

4  please make sure you instruct the IRS representative to

5  contact Taxmasters immediately.  Terminate all

6  discussions.  Don't talk to them.  After you tell them

7  that you've retained Taxmasters to represent you, you

8  can hang up the phone or you can close the door.  Okay?

9          DENISE MIRANDA:  Okay.

10         KEITH:  Now, make sure you sends any IRS

11 notices you receive, in case the IRS forgets to send us

12 a copy.  This information might be vital in carrying out

13 the services you've purchased.  Okay?

14         DENISE MIRANDA:  Okay.

15         KEITH:  Now, do you have any other

16 questions for me now about your engagement agreement

17 with Taxmasters or anything about the services you

18 purchased today?

19         DENISE MIRANDA:  No, no.  I think I'm

20 good.

21         KEITH:  Okay.  Well, we'll be getting

22 these documentations drawn up for you in our department,

23 legal department, and get them out to you via e-mail.

24 Okay?

25         DENISE MIRANDA:  Okay.  Is there anything

53

1 more that I need to do on my end?

2         KEITH:  No.  Just get the documents

3 signed and get them back to us as soon as you can.

4         DENISE MIRANDA:  I sure will.  Okay.

5         KEITH:  All right.  Well, let me get you

6 back in contact with JD.

7         DENISE MIRANDA:  Okay.

8         KEITH:  Here he is.

9         DENISE MIRANDA:  Thank you, Keith.

10         KEITH:  You're welcome.

11         JD:  Denise, you there?

12         DENISE MIRANDA:  Yes, I am.

13         JD:  Okay.  What needs to happen now, I'm

14 just going to get all these documents drawn up.  It's

15 going to take me about 30 or 45 minutes.  You should

16 have them all to your e-mail within an hour.

17         DENISE MIRANDA:  Uh-huh.

18         JD:  Okay?  If you haven't got them

19 within an hour, give it another hour, and check your

20 spam box, because sometimes with Yahoo, they send them

21 directly to spam, not sure why.  And then if you still

22 don't have it, you can give me a call.  I'll be here for

23 another couple more hours.

24         DENISE MIRANDA:  Okay.

25         JD:  So feel free to give me a buzz, and

54

1  we'll, we'll figure out an alternative way to get you

2  the documents.

3          DENISE MIRANDA:  Okay.  Is there any

4  documents that I need to send right now?

5          JD:  Yeah.  I'll tell you what, why don't

6  you, when you send all that back, why don't you send

7  anything the IRS has given you, any of the notices, you

8  know, if you want to scan them and send them back or fax

9  them back.  All of my contact information is on the

10 documents.  Okay?  My, my direct line, my fax number, my

11 e-mail address, you'll have my e-mail address because

12 I'll be sending it to you through e-mail, my assistant's

13 e-mail address, and I'll send my supervisor, his contact

14 number, which is who you just spoke with.  So if you

15 need any, any information, you, you all, you can contact

16 any one of us.  We'll be able, we'll all be able to help

17 you out.

18         DENISE MIRANDA:  Okay.  Perfect.

19         JD:  Okay?

20         DENISE MIRANDA:  Okay.  So any documents

21 I need to send back, I can send back via fax or --

22         JD:  Yes, ma'am.  That's usually, that's

23 usually how we -- That's usually how I recommend it,

24 just simply because electronically things work great,

25 but sometimes, you know, e-mails just don't make it or

55

1   they don't get through like they're supposed to, but

2   faxes are, faxes work like nobody's business.  We always

3   get those --

4                DENISE MIRANDA:  Okay.

5                JD:  -- so --

6                DENISE MIRANDA:  All right.  Perfect.

7                JD:  All right?

8                DENISE MIRANDA:  Okay.

9                JD:  All righty.

10               DENISE MIRANDA:  So I'll wait another

11  hour.  Otherwise I'll call the 800 number again?

12               JD:  Yeah, and with my extension, which

13  is --

14               DENISE MIRANDA:  Okay.

15               JD:  In fact, I'll tell you what, write

16  this down.  This is my number and -- my direct number

17  and my extension.

18               DENISE MIRANDA:  Okay.

19               JD:  It's 1-888 --

20               DENISE MIRANDA:  Uh-huh.

21               JD:  497.

22               DENISE MIRANDA:  Okay.

23               JD:  5937.

24               DENISE MIRANDA:  All right.

25               JD:  And my extension is 8420.

56

1    DENISE MIRANDA:  Okay.  So that's JD

2  1(888) 497-5937.

3    JD:  Uh-huh.

4    DENISE MIRANDA:  Extension 3420.

5    JD:  Yeah.  Whenever you dial that

6  number, there's going to be a lady start shooting.

7  She's going to start talking.  It's a automated voice.

8    DENISE MIRANDA:  Yeah.

9    JD:  Soon as you hear her start talking,

10  you just punch in 3420.

11    DENISE MIRANDA:  Okay.

12    JD:  It will ring my phone directly.

13    DENISE MIRANDA:  Okay.  Perfect.

14    JD:  Okay?

15    DENISE MIRANDA:  Okay.  Thank you so

16  much, JD.  I appreciate it.

17    JD:  You're welcome, Denise.

18    DENISE MIRANDA:  Okay.  Have a good day.

19    JD:  You too.

20    DENISE MIRANDA:  Uh-huh.  Bye.

21

22

23

24

25

57

1      I, Jane Demars, Certified Shorthand

2  Reporter for the State of Texas, certify that the

3  foregoing is a correct transcription from the audiotaped

4  recordings in the above-entitled matter.

5      I further certify that I am neither

6  counsel for, related to, nor employed by any of the

7  parties to the action in which this transcript was

8  prepared, and further, that I am not financially or

9  otherwise interested in the outcome of the action.

10      Certified to by me this 16th day of

11  April, 2010.

12

13      Jane E. Demars, Texas CSR No. 2789
         Expiration Date:  12-31-11

14      Sunbelt Reporting & Litigation
         Firm Registration No. 87

15      1010 La Posada Drive, Suite 294
         Austin, Texas 78752

16      (512) 465-9100
         Job No. 85288

17

18

19

20

21

22

23

24

25

# EXHIBIT C

STATE OF NORTH CAROLINA

COUNTY OF LINCOLN

### AFFIDAVIT

BEFORE ME, the undersigned notary public, on this day personally appeared Curtis J. Smith, Jr., who proved himself to be the person whose name is subscribed hereon through his driver=s license which contained his photograph and signature, and who after being by me duly sworn, upon his oath deposed and said:

AMy name is Curtis J. Smith, Jr. The following is true and accurate to the best of my recollection:

AA salesperson at Taxmasters, AOctavio,@ called me on August 28, 2009. Octavio told me that Taxmasters would not charge me for our conversation. Octavio transferred me to another Taxmasters= employee, who performed the Athird party verification@ and obtain my payment information. At no time during the call with Octavio, nor during the third party verification, was I told that the fees were non-refundable. Taxmasters also did not tell me that it would not begin working on my tax issue until I had paid its entire fee. After the call, Taxmasters removed the initial payment from my account, and then sent me the Taxmasters contract and some Powers of Attorney by email. I reviewed the contract, and did not like the terms. I did not sign and return the contract or the Powers of Attorney to Taxmasters. I called to cancel on August 31, 2009, which was the next business day after August 28, 2009. I spoke with Octavio, who transferred me to a voice mail box in the refunds division. I left a message, but no one at Taxmasters returned my call. I called again on September 1, 2009, and spoke again with Octavio. Octavio told me that he would send an email to the refund division on my behalf, and connected me again to the refund division. I left another message. No one from Taxmasters returned my call. I called the refund/billing division directly that afternoon, and again left a message. No one at Taxmasters returned my call. After this, I contacted my bank for assistance. I subsequently received a letter from B. Dewayne Logan, the VP of Quality Assurance at Taxmasters, dated October 26, 2009. A true and correct copy of that letter is attached to this affidavit. In that letter, Taxmasters refused to give me a refund of the $800.00 it had taken from me, and threatened to subject me to collection procedures if I did not pay it an additional $7,150.00. Taxmasters claimed that the Athird party verification@ during the Afree@ call on August 28, 2009 states that all fees are non-refundable. I have made attempts to obtain a refund of $800.00 that was charged to my credit card. I was never informed that all fees were non-refundable. I never signed a contract. I never signed a power of attorney. I was informed twice that the consultation fee was free. I was unable to talk to anyone about my refund.@

AFurther affiant sayeth not.@

Chrtie J. Smith, Jr.

SUBSCRIBED AND SWORN TO before me on the ___23___ day of April, 2010.

Notary Public in and for the State of North Carolina

Henry A. Brassel, Jr.

MY COMMISSION EXPIRES   5/6/14

# EXHIBIT D

STATE OF GEORGIA

COUNTY OF COBB

BEFORE ME, the undersigned notary public, on this day personally appeared Karen Sanchez who proved herself to be the person whose name is subscribed hereon through her driver=s license which contained her photograph and signature, and who after being by me duly sworn, upon her oath deposed and said:

AMy name is Karen Sanchez. I am 65 years old. The following is true and accurate to the best of my recollection:

AI contacted TaxMasters on 11/10/09 requesting assistance with respect to a tax debt that I have. I spoke with James Ballentine who told me that TaxMasters needed to act quickly in order to assist me. He informed me that the IRS would take my home and place a lien against all of my earnings and that TaxMasters would have to file documentation of representation right away in order to avoid me losing my home. I am a single woman and a senior. This frightened me very much. Mr. Ballentine told me that the only way this process won=t work was if I didn=t cooperate with him.

Mr. Ballentine sent me the documentation and told me that it would cost me no more than $6,250.00 for TaxMasters to help me and that TaxMasters typically helps people settle their tax dispute for 1/3 of what the IRS says they owe. He also reiterated that TaxMasters would assist me in keeping my home and vehicle.

Mr. Ballentine insisted that I needed to provide him with signed contracts right away and a deposit of $2083.24 so that TaxMasters could immediately file the paperwork in order for my home to be protected. Mr. Ballentine told me over the phone and in the email where I needed to sign. When I questioned him about the content of the documentation, he indicated that I just needed to hurry up and sign as time was of the essence.

I paid Mr. Ballentine over the phone with my debit card, the amount of $2083.34. He indicated he would notify me as soon as possible after the paperwork was filed to preclude the IRS from taking my personal belongings. I attempted to obtain a copy of the documentation filed on my behalf on November 12, 2009, December 8, 2009, and December 16, 2009. The only response I received was an email from Mr. Ballentine dated November 13, 2009 (after paperwork signed and down payment was received) indicating that "We have already started the process for you. We will be in touch to keep you up to date with how thing are progressing." (Stet).

                                        Cobh Co.

TaxMasters withdrew another $1,000.00 from my bank account in December, 2009. When I did not hear anything more from TaxMasters, I contacted the IRS who indicated that nothing had been filed on my behalf by TaxMasters; and further informing me that my right to appeal had expired. I explained to the IRS what had transpired with TaxMasters and they allowed me to request an appeal again.   I requested an appeal in or around late December 2009 with the IRS.  Still, I was unable to reach anyone from TaxMasters.

I was finally able to talk to the Operations Manager who informed me that nothing had been done in my case because the full amount had not been paid.  She further informed me that nothing would be done until April, 2010, when the final payment was due to be paid.  When I explained to her what Mr. Ballentine told me, she only told me that I would have to handle the matter myself.

On December 29, 2009, I notified TaxMasters that I was withdrawing my consent for their representation and demanding that they cease withdrawing funds from my account.  I notified my bank of the fraud and was required to close my account.

I have requested my money be returned. As I have been unable to speak with my former representative, I cannot resolve this issue with TaxMasters directly.  However, I have received three messages from them wanting to discuss my account.

I was never informed by TaxMasters that I would not be able to obtain a refund, never informed that TaxMasters would not begin working on my case until the entire amount was paid, and I was never informed that I would be required to pay the fee even if nothing was done on my case.@

AFurther affiant sayeth not.@

*Karen Sanchez*
KAREN SANCHEZ


SUBSCRIBED AND SWORN TO before me on the  22  day of April, 2010.

*Alan Jordan*
Notary Public in and for the State of Georgia


Alan N Jordan IV
Notary Public
Cobb County, Georgia
exp 5-15-12

# EXHIBIT E

STATE OF TEXAS        §
                         §
COUNTY OF BEXAR      §

## AFFIDAVIT

BEFORE ME, the undersigned notary public, on this day personally appeared Crespin Gonzales who proved himself to be the person whose name is subscribed hereon through his Texas Drivers License which contained his photograph and signature, and who after being by me duly sworn, upon his oath deposed and said:

"In February 2008 I found out that I owed money to the Internal Revenue Service. I called TaxMasters and spoke to Chuck Autrey. Mr. Autrey told me that TaxMasters was successful 99% of the time and that TaxMasters could get the matter 'done in six weeks or less.' In addition, Mr. Autrey informed me that TaxMasters could negotiate my debt which was about $5,500.00 down to 10-15 cents on the dollar. I received an email from Mr. Autrey on February 13, 2008, that stated this and it also listed what the fees were going to be. The fee consisted of $550.00 for an IRS consultation and $1050.00 for a negotiated settlement with the IRS. A true and correct copy of the email I received from Mr. Autrey is attached to this affidavit. I signed up on February 13, 2008 and sent in the Power of Attorney on February 15, 2008. Mr. Autrey told me that I could make a down payment of $800 (retainer) and four monthly installments of $200.00. I made a $800 down payment and began making monthly payments. I was never informed that TaxMasters would not begin working on my case until the fee was paid. When I realized that the fee had to be paid in full, I went ahead and paid the last two installments so that Taxmasters would work on my case.

"I continued to call in June 2008, August 2008, September 2008 and October 2008 but TaxMasters could not find my documents. In the fall of 2008, I received a notice from the IRS stating that a lien would be placed on my property if I did not pay. I called TaxMasters again and nothing had been done on my case. When the IRS placed the lien, I took money out of my Individual Retirement Account to pay the taxes.

"I contacted TaxMasters to request a refund and spoke to Lucky Ravin who informed me that TaxMasters can not do a negotiated settlement but it will negotiate an installment plan with the IRS. I sent her a copy of the email I had received from Mr. Autrey and I have not heard from TaxMasters regarding the refund. Later, TaxMasters told me that it can not do a negotiated

Apr 24 10 12:20p     Chris                                    210.647.9955              p.2

settlement on such a small amount.  In addition, I was never told that the monies I paid were non-refundable."

"Further affiant sayeth not."

Crespin Gonzales

SUBSCRIBED AND SWORN TO before me on the _24_ day of April, 2010.

Notary Public in and for the State of Texas

BRADLEY J. THOMAS
Notary Public, State of Texas
My Commission Expires
August 02, 2012

# EXHIBIT F

STATE OF TEXAS       §
                                 §

COUNTY OF TRAVIS     §

**AFFIDAVIT**

     BEFORE ME, the undersigned notary public on this day personally appeared Arturo F. Fierro, who proved himself to be the person whose name is subscribed hereon through his Texas Drivers License which contained his photograph and signature, and who after being by me duly sworn, upon his oath deposed and said:

     "My name is Arturo F. Fierro and I am a resident of Collin County, Texas. I am over 18 years of age, and am competent to make this affidavit. The following facts are based upon my personal knowledge and are true and correct.

     In the summer of 2009, I received a notice from the IRS requesting documentation of deductions claimed in a previously filed tax return. I requested an extension and was given until August 29, 2009 to respond. Out of an abundance of caution, my wife and I decided to seek professional advice to be sure we were appropriately responding.

     During this same time period I saw several television commercials advertising TaxMasters and offering the services of its qualified tax professionals.

     On or about August 4, 2009, I telephoned the toll free number advertised in the TaxMasters TV commercials. The person who answered asked me a series of questions about how I had heard about their services and took my contact information. On that same day, Mr. Alex Rodriguez -whom I believe identified himself as a "senior tax consultant" with TaxMasters- called me back. I explained the situation and impressed upon him that a response to the IRS was required by August 29th and that if I agreed to retain TaxMasters I wanted to be able to communicate directly with the person in charge of my case. In other words, I did not want to end up dealing with a voice mail or telephone answering service system. Mr. Rodriguez assured me that he personally would be representing me in this matter to the IRS. This conversation left me with the impression that my matter was in the hands of attorneys who would be handling this matter and that they would be quickly coordinating with the IRS. During that initial call Mr. Rodriguez quoted me a price of $ 1200 for the service and asked for payment. I understood the price was the total fee required by TaxMasters and provided him with my American Express Card number for billing purposes. I do not recall Mr. Rodriguez or the third person who got on the phone to verify my information saying anything to me about whether my payment was or

was not refundable.

On that same day, June 4, 2009, TaxMasters billed my credit card in the amount of $ 1200 and Mr. Rodriguez sent me an e-mail in which he assigned me a case number, instructed me to sign pages 2, 9 or 10 & 11 of an "Engagement Agreement" and page 2 of a Power of Attorney and Form 8821 and also instructed me to return these documents "...as soon as possible so we can take care of this matter efficiently."   This e-mail identified Mr. Rodriguez as a "Sr. Tax Consultant & Analyst."

These signatures and the additional documentation requested by the IRS were all provided to TaxMasters by the following day, August 5, 2009.

Subsequent to that I attempted to contact Mr. Rodriguez on several occasions to determine whether they had responded to the IRS request for information and whether they had reviewed the materials which I sent.  Mr. Rodriguez did not return calls or respond to e-mails and when I was ultimately able to speak to him, he informed me that someone else in "operations" was handling my case and that he knew nothing about it.  I asked to speak to Mr. Rodriguez's supervisor and he transferred me to an individual who would only identify himself by the first name "Keith" and who said they would contact me when they were ready.  He did not care that the IRS response was now due within 10 days and hung up the telephone on me.

On August 17, 2009 I confirmed that the IRS had received nothing from TaxMasters on my behalf other than the Power of Attorney and on that same date I sent TaxMasters an e-mail informing them that their services were no longer required.  I handled the matter with the IRS personally, responded before the deadline and my issue was resolved.

On September 2, 2009 I received a letter from TaxMasters informing me that I was not eligible for a refund because they had divulged "proprietary information" to me.  In response to my complaint, my credit card company issued a credit to me for the amount paid to TaxMasters.

Further Affiant sayeth not."

_____
ART FIERRO

SUBSCRIBED AND SWORN TO before me on the 12th day of May 2010.

_____
Notary Public in and for the

State of Texas

MARTHA LOU WILLIAMS
Notary Public
STATE OF TEXAS
Commission Exp. 05-17-2011
Notary without Bond

# EXHIBIT G

| STATE OF TEXAS | § |
| --- | --- |
| | § |
| | § |
| TRAVIS COUNTY | § |

## AFFIDAVIT OF ROSALINDA O. FIERRO

Before me, the undersigned authority, on this day, personally appeared ROSALINDA O. FIERRO, known to me to be the person whose name is subscribed to the following instrument, and having been by me duly sworn upon her oath, deposes and states as follows:

1.　　My name is Rosalinda O. Fierro.  I am over the age of eighteen years, am an adult resident of Austin, Travis County, Texas, and am fully competent and able to testify herein. I have personal knowledge of all of the facts set forth herein, and am able to swear, as I hereby do swear, that all of said facts and statements herein contained are true and correct to the best of my knowledge and recollection.  I have never been convicted of a felony.

2.　　I am and at all times herein mentioned was employed by the Office of the Attorney General of Texas.  I have been an employee of the Office of the Attorney General, Consumer Protection and Public Health Division for over 20 years in various capacities and for the last nine years as an Investigator.

3.　　I am familiar with the complaints filed by consumers against TaxMasters and have reviewed these complaints. These complaints were kept by the Office of the Attorney General, Consumer Protection and Public Health Division in the regular course of its business. Between January 1, 2010 to May 11, 2010, our office has received approximately 97 complaints.

1

4.      Some of consumers state in their complaints that TaxMasters fails to disclose that if the consumer pays in installments, TaxMasters will not begin working on the consumer's case until consumer has paid the entire fee, even though the consumer is told during the initial call that TaxMasters will begin working on the consumer's case immediately.

5.      Many of the complaints relate to TaxMasters' failure to disclose to consumers during the initial call or during the "third party verification" that it is TaxMasters' position that the consumer cannot cancel the contract and receive a refund even if the consumer has not signed the contract nor returned the contract to TaxMasters.

_Rosalinda O Fierro_
Rosalinda O. Fierro

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, by Rosalinda O. Fierro this 12th day of May, 2010.

_____
Notary Public, State of Texas

> VELASQUEZ
> Notary Public, State of Texas
> My Commission Expires
> JULY 28, 2010
> **Notary without Bond**

2

# EXHIBIT H

JIM LEITNER
FIRST ASSISTANT



CRIMINAL JUSTICE CENTER
1201 FRANKLIN, SUITE 600
HOUSTON, TEXAS 77002-1901

## PATRICIA R. LYKOS
### DISTRICT ATTORNEY
### HARRIS COUNTY, TEXAS

June 16, 2009

Dear Tax Master Complainant,

During the past several months our office has received several reports from citizens across the United States regarding a business named Tax Masters. These reports were from customers of Tax Masters and were regarding their business relationship with that entity. Even though Tax Masters may have their office here in Houston, most all reports received were regarding customer transactions that occurred with a Tax Master representative in locations outside of Houston and Texas.

There are two major obstacles that prevent and/or hinder our office from conducting a complete investigation into this matter. First is the national nature of the case. Our office only has jurisdiction over criminal matters that transpire in Harris County, Texas. Records, documents, witnesses and other evidence located in other jurisdictions outside of Texas impede our investigative abilities. Second, restrictive laws and regulations concerning the records and/or disclosure of those records by the U.S. Internal Revenue Service, prevent our agency from obtaining such information. The same rules and regulations are not as restrictive or prohibitive for certain federal agencies.

Given the aforementioned issues, we were left with two choices - close the case as a civil action or find a federal agency willing to pursue the matter. If we closed the case as civil, each complainant would need to pursue a civil lawsuit against Tax Master. Due to the volume of complainants we preferred not simply close out the case. As a result, we have contacted the U.S. Treasury Department regarding Tax Masters. They had also received reports regarding Tax Masters and being a federal agency they are better equipped to review and possibly investigate this matter. Therefore, we will forward your report to this department for their inspection.

I regret we could not bring this matter to resolution but we have confidence that the Treasury Department can complete this investigation. If you have any questions regarding the investigation you may contact the Treasury Department at:

US Treasury Department
Attn: Special Agent Andy Farwell
1919 Smith St #2270
Houston, TX 77002

Sincerely,

Kaye Backman
Paralegal – Consumer Protection

# EXHIBIT I



900 Town & Country Ln
Suite 400
Houston, Texas 77024
www.txmstr.com
Phone: (281) 205-0654
Fax: (713) 465-8054

October 26, 2009

██████████████████
Stanley, NC 28164

Dear ██████

After reviewing your file, it has been determined that you are not eligible for a refund for the following reason(s):

You completed the 3rd party verification on August 28, 2009 which is a legal binding agreement with Tax Masters which states that all fees are non-refundable.

Tax Masters has also divulged proprietary to you as a client in regards to how we plan to handle your specific situation. Furthermore, you are also liable for the remaining fee of $7,150.00 which equals to the amount agreed upon by you and Tax Masters for services.

If you are unable to maintain the current payment schedule, our billing department would be happy to work with you on a different arrangement. Please be aware that if the amount stated above is not paid, you will be subject to collection procedures.

Tax Masters will continue to perform work on your file to the best of our ability, provided we have received adequate information, documentation, permission and compensation.

If you have any more questions, please feel free to contact us at 281-426-4226 ext 7000.

Sincerely,

E. Dewayne Logan
VP of Quality Assurance
EDL/lr

# EXHIBIT J

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com



900 Town & Country Ln
Suite 400
Houston, Texas 77024
www.txmstr.com
Tel: 281-497-4226, Ext. 2066
Fax: 713 463-2990

February 12, 2010

[REDACTED]

Camilla, Georgia 31730

Re: Breach of Contract Claim

Dear [REDACTED]

I represent TMIRS Enterprises, Ltd. d/b/a TaxMasters and TaxMasters, Inc. (hereinafter "TaxMasters"). TaxMasters has asked me to collect the sum of $5,540.00 from you. This represents the balance you still owe on the contract you entered into with TaxMasters on or about January 20, 2008.

I have been instructed by TaxMasters to pursue all legal avenues to ensure collection of the amount due to them. To this end, I have prepared and attached the *Original Petition for Suit on Written Contract with Requests for Disclosure.* This petition will be filed and litigated in the Small Claims Court, Precinct 5, Place 1 of Harris County, Texas if you fail to timely remedy your obligation to TaxMasters.

TaxMasters does not want the hassle of going to court over this matter, and neither should you. To avoid this, please send payment in full to TaxMasters within 30 days of your receipt of this letter. The check should be made payable to TaxMasters and should be addressed to:

TaxMasters
Attention: Andrew Sutton, Esq.
900 Town & Country Lane, Suite 400
Houston, Texas 77024

If you need to make the payment via credit card, you should contact our Billing Department within 30 days of your receipt of this letter to make arrangements for payment in full. If you make payment through our Billing Department, please be sure to contact me to let me know. If I do not hear from you, I will assume that you have no intention of voluntarily satisfying your obligation and I will proceed to file this petition.

In addition to the amount of $5,540.00 due to TaxMasters, if you choose to have me go forward with the litigation, I will also be seeking judgment for late fees; judgment reasonable attorneys' fees; judgment for all costs of court; and for all further relief to which TaxMasters may be entitled.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com



900 Town & Country Ln
Suite 400
Houston, Texas 77024
www.txmstr.com
Tel: 281-497-4226, Ext. 2066
Fax: 713 463-2990

I urge you to satisfy your obligation to TaxMasters within 30 days of your receipt of this letter. Not only is it the right thing to do, but it may also be your last opportunity to settle this matter for only $5,540.00.

Sincerely

Andrew Sutton, Esq.
Staff Attorney

cc:  Sent Via Certified Mail

# EXHIBIT K



900 Town & Country Lane
Suite 400
Houston, Texas 77024
Phone: (281) 497-5937
Fax: (281) 497-4275

# Confidential Fax

| | | | |
|---|---|---|---|
| **To:** | Jeffery D. Delong | **From:** | James Arline |
| **Fax:** | | **Fax:** 713-463-2927 | |
| **Phone:** | ▮▮▮▮▮ | **Phone:** 1-888-497-5937 x3525 | |
| **Date:** | 10/20/2008 | **Pages:** 17 | |
| **Subject:** | Power of Attorney and Engagement Agreement | | |

**Notes:**
I have enclosed the proper documents to get you started, please review, sign and fax back with copy of any mail from the IRS, and please feel free to call us should you have any questions. It is imperative you sign and fax back these documents as you know we are always working on a time line and every moment counts.

Please sign page 2, 9 and 11 of the Engagement Agreement
Please sign page 2, section 9 of the Form 2848 Power of Attorney
Please sign the bottom of the Form 8821 Power of Attorney

Fax back to   **713-463-2927.**

## Thank you for your business!

## James Arline

**TaxMasters**
*"We Solve Your IRS Problems"*

Phone: (281) 497-5937
Fax: (713) 463-2900
www.txmstr.com/

900 Town & Country Lane,
Suite 400
Houston, Texas 77024

October 20, 2008

Jeffery D. Delong

▆▆▆▆▆▆▆▆▆▆
UklahCA95482

*[handwritten: Rec'D 27 OCT 08 12-40pm Jim Rtg MAIL]*

Dear Jeffery,

We would like to thank you for choosing TaxMasters to solve your IRS Problems. We want to assure you that everyone in our firm will endeavor to solve your IRS problems.

Please find enclosed an engagement agreement, and a limited Power of Attorney for IRS purposes. Please return these signed, along with the retainer listed on page 7 of the engagement agreement.

Please also include a copy any communications from the IRS as well as a copy of your last 3 tax returns. It is important we get complete information, so we can begin work on your case as soon as possible.

If at any time you receive forms or notices from the Internal Revenue Service, please forward them immediately to our office. If you receive a phone call from an IRS agent, please direct them to contact our office. You have the right to insist that they speak with us instead of you — even if the agent should state otherwise.

Please remember that we are here to help you. Both the opportunity and responsibility you have allowed us is greatly appreciated.

Very truly yours,
TaxMasters

James Arline
Tax Consultant™



# Next Process in Handling Your Case

Once again, thank you for using TaxMasters for solving you Federal and/or State Tax dilemma. Below are the next following steps and the proper way of getting information concerning on your particular case.

1. After documents have been sent to you please return the signed documents to the following fax number: 713-463-2924 or email it to james.arline@txmstr.com
2. Now that you have become a TaxMasters client, within the next seven (7) business days, one of our case coordinators will contact you to introduce the next steps of the process.
3. A Case Coordinator with be in contact with you at least once a month to provide a progress report.

## To Contact the Operation in Regards to Your Case:

Direct Contact Number to TaxMasters Operations Department:

## 1-800-682-3679 Dial Extension #1102
## Your Personal Client ID # is: E3126

This will direct you to the Operations Department cue where one of our case coordinators can discuss your case with you if you have any questions.

Once again, thank you for using TaxMasters for solving your Tax dilemma.

*James R. Arline*
Nationwide Number: 888-497-5937 ext 3525
james.arline@txmstr.com

The information in this document may include confidential and/or client privileged communications. This document is intended to be reviewed only by the individual or individuals named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, use, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system. Any use, publishing, copying, disseminating, forwarding or other use is prohibited as the content remains the property of the author.



# Next Process in Handling Your Case

Once again, thank you for using TaxMasters for solving you Federal and/or State Tax dilemma. Below are the next following steps and the proper way of getting information concerning on your particular case.

1. After documents have been sent to you please return the signed documents to the following fax number: 713-463-2924 or email it to james.arline@txmstr.com.

2. Now that you have become a TaxMasters client, within the next seven (7) business days, one of our case coordinators will contact you to introduce the next steps of the process.

3. A Case Coordinator with be in contact with you at least once a month to provide a progress report.

## To Contact the Operation in Regards to Your Case:

Direct Contact Number to TaxMasters Operations Department:

### 1-800-682-3679 Dial Extension #1102
### Your Personal Client ID # is: E3126

This will direct you to the Operations Department cue where one of our case coordinators can discuss your case with you if you have any questions.

Once again, thank you for using TaxMasters for solving your Tax dilemma.

*James R. Arline*

Nationwide Number: 888-497-5937 ext 3525

james.arline@txmstr.com

The information in this document may include confidential and/or client privileged communications. This document is intended to be reviewed only by the individual or individuals named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, use, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system. Any use, publishing, copying, disseminating, forwarding or other use is prohibited as the content remains the property of the author.

# EXHIBIT L

**Spring Starback**

| | |
|---|---|
| From: | <JEFFDELONG█████████ |
| To: | <pacificpaging@sbcglobal.net> |
| Sent: | Monday, October 20, 2008 7:27 PM |
| Subject: | Clarification of TaxMasters Retainer |

To:
James Arline
Taxmasters
900 Town and Country Lane
Houston, TX 77024

James,
I have signed and returned the forms to you, via fax. I wanted to clarify that this retainer included FED taxes, California State tax filings and corrections, and release of the IRS lien attached to my SSI disability payments. These were the terms we agreed to today in our telephone conversation, prior to payment being authorized. I want to ensure that these are the terms agreed to with the retainer agreement that I signed minutes ago.

If the terms as stated have changed since our conversation. I would prefer to not go forward with the agreement until such time as the agreement reflects the terms discussed via telephone.

Please email me at ███████████ if the terms have been modified since our discussion, prior to payment being made.

Rgds.

Jeff DeLong
███████████
Ukiah, CA 95482
███████████

10/21/2008

# EXHIBIT M

*POSTMARK 03 NOV 08*

**TaxMasters**
*We Solve Your IRS Problems*

Phone: (281) 205-0654
Fax: (713) 465-8034
www.txmstr.com

900 Town & Country Lane
Suite 400
Houston, Texas 77024

October 23, 2008

Jeffery D. Delong

Ukiah, CA 95482

*RCVD*
*6 NOV 08*
*11:56 AM*

Dear Jeffery D. Delong,

Thank you for choosing TaxMasters to help you resolve your IRS concerns. Your case is currently in Operations the department that performs your services. My name is *Juanita Martin* I am assigned as your Case Coordinator and direct contact for all updates and progress of your case.

A team of professionals will be assigned to your case such as: A Financial Analyst who will compile and collect financial and income information to set up the solution to your tax problems. A Tax Professional if needed, for preparation of your tax returns. We also have Enrolled Agents who are licensed to practice before the Internal Revenue Service and Tax Attorneys who are available to you if legal representation is needed.

If at anytime during this process you receive any type of notification from the Internal Revenue Service, please fax the correspondence to my fax number at 713-463-2967. You may also fax me any other type of information that may be significant to your case.

Please remember that we are here to help you. If you have any questions or concerns please feel free contact **Juanita Martin** in our headquarter office at 281-205-0654 or toll free at 1-800-682-3679 extension 5056. You may also email me at Juanita.martin@txmstr.com. Both the opportunity and responsibility you have allowed us is greatly appreciated.

Best regards,

Juanita Martin
Case Coordinator

# EXHIBIT N

Mr. Arline,
Since TaxMasters has chosen to modify the terms of our agreement as previously discussed in the email traffic of yesterday, I am notifying you (TaxMasters) to suspend all activities related to my account until such time as the issues between TaxMasters and I can be resolved.

I contracted TaxMasters to represent me under the pretense that such representation would be based around the concept that my tax issues were over 10 years old; the age alone making them uncollectable. Now, after I effected payment in full to you up front, showing MY good faith, your organization has changed the rules of the game, telling me that the "uncollectable status" has nothing to do with the age of the account, but rather with my ability to PAY the balance. I do not need TaxMasters to PAY the balance. I can do that on my own.

At this point, I would prefer to cancel this contract and have my balance refunded, since you have chosen to not represent me pursuant to our agreement. Should this not be acceptable to you, evidenced by no credit issued to my card, I will begin a dispute through my credit card on Monday morning. I no longer trust TaxMasters to handle my financial issues, since TaxMasters negotiated this agreement under fraudulent or deceitful pretenses, and now appears to lack the character to do the right thing in this matter.

J. DeLong

713-463-2925

HP Officejet Pro L7500 All-In-One series

Fax Log for
7074627096
Oct 24 2008 12:50PM

Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| Oct 24 | 12:49PM | Fax Sent | 17134632927 | 0:35 | 1 | OK |

# EXHIBIT O

**Spring Starback**

From:       &lt;JEFFDELONG█████
To:         &lt;pacificpaging@sbcglobal.net&gt;
Sent:       Friday, October 24, 2008 1:49 PM
Subject:    Fwd: Quit Power of Attorney

From: JEFFDELONG████████
To: "James Arline" &lt;james.arline@txmstr.com&gt;, info@txmstr.com
Sent: Friday, October 24, 2008 1:44:26 PM GMT -08:00 US/Canada Pacific
Subject: Quit Power of Attorney

Mr. Arline,
TaxMasters is hereby notified that, until reauthorized, I am immediately ceasing Power of Attorney granted to TaxMasters and its representatives on 20Oct08, to consult on my tax matters. Do not contact ANY agency or organization on my behalf until authorized by myself in writing at some future date, should that occur.

Rgds,
Jeffery D. DeLong
████████
Ukiah, CA 95482 █████

10/24/2008

HP Officejet Pro L7500 All-In-One series

Fax Log for
7074627096
Oct 24 2008 2:53PM

Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| Oct 24 | 2:53PM | Fax Sent | 17134632927 | 0:30 | 1 | OK |

# EXHIBIT P



Jeffery D. DeLong

Ukiah, CA 95482

James Arline
Juanita Martin
Alex Clamon
Patrick Cox
Taxmasters (TMIRS Enterprises)
900 Town and Country Lane, STE 400
Houston, TX 77024

06Nov08

To Whom it may concern,
I entered a contract with Taxmasters, effective the date payment was tendered, 22Oct08 according to Bank of America. On 24Oct08, less than two days after payment was tendered, I notified Taxmasters in writing to james.arline@txmstr.com and info@txmstr.com to suspend ALL ACTIVITIES, and to cancel the contract. To ensure delivery, I faxed the same notifications to your fax number, and have proof of delivery of the same. I have YET to receive ANY acknowledgement from Taxmasters of this fact, two weeks after the fact.

Instead, what I get today, 06Nov08 via regular mail, is a package informing me that you are proceeding with this contract, have assigned yet ANOTHER case manager, and are demanding data from me, and yet ANOTHER Power of Attorney, which I canceled on 24Oct08. The funny thing is, the package was postmarked 3 days ago on 03Nov08, yet the letter was conveniently dated 23Oct08, 2 weeks ago and 1 day before I canceled the contract. It is CLEAR that this is part of a scam, and that Taxmasters has opted to attempt to manufacture documents to plead their case, but could not manufacture a corresponding postmark date.

According to your Alex Clamon, Taxmasters provides full refunds, and honors a three day rescission period. I quote:

"Alex Clamon, VP on 29 Dec 2007 at 3:31 pm

My staff and I have responded to each and every contact we received. I am not interested in airing a client or a prospects dirty laundry about their IRS problems on the internet. However if someone chooses to lie in this venue I will publish the recorded portion of the phone conversation where they agreed to pay the fee. I did not receive emails mentioned here by 'Chris'.

In response to Dale- I did get an email dated the 23rd. I did respond to it. Dale acknowledged that response and I have acted as I promised, despite his slander. I did not get an email on the 13th. This refund request is slated for a review board meeting early next week. This has all been communicated separately. I would not normally make even the nature of any communications with a client public, but I did not choose this forum, and for his own reasons Dale has chosen not to be a client.

*I would like to elaborate on what exactly our refund policy is at this time. First it is spelled out clearly in our contract and that always prevails. We do observe a 3 day rescission rule. That means if someone decides to cancel for any reason within the first 3 days of hiring us, we issue a refund. It might not happen that day, but it will happen. No one requires this of us. It is of our choosing.*

*Where we have already done the work, this would not be the case. This is the nature of our business, that our clients are in crisis, and sometimes the work has to proceed immediately. When you owe the IRS money, people with Badges and Guns are likely to become involved. In some cases our clients are even being investigated for serious criminal matters. A small percentage of our client base intends for us to do the work and to not pay us, or the IRS. We cannot tell who this client is upfront. This requires us to be paid prior to completing work.*

*In all cases we make absolutely sure someone intends to hire us including using a third party to verify the transaction. All that being said we still have a self imposed 3 day rescission. This is my commitment to being completely sure that no one takes advantage of the great trust that our client places in us.*

*Best Regards,*

*Alex Clamon, VP*
*TaxMasters*
*alex.clamon@txmstr.com"*

I have met and exceeded your 3-day rescission requirements. I notified Taxmasters, in writing, to cancel the contract and issue a refund. I did so less than 2 days from payment being tendered, making the contract effective. *Please issue a full and complete refund now.* Do not continue the game of pretending not to be in receipt of documents that I have sent to multiple addresses, and via fax. Honor your own stated policies. Please do not put me through further stress than you already have. *Please.*

You can mail the full refund to:
Jeffery Dean DeLong
███████████
Ukiah, CA 95482

Signed,



Jeffery Dean DeLong

JDL\tms

cc:   Texas State Attorney General
      Harris County District Attorney's Office
      Houston Better Business Bureau
      Bank of America

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

TAXMASTERS
900 TOWN & COUNTRY LANE
SUITE 400
HOUSTON, TX 77024

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

TaxMasters
900 Town & Country Ln.
Suite 400
Houston, Texas 77024

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

                                          ☐ Yes

2. Article (Tran)

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JEFF DELONG

UKIAH, CA 95482

Q22



U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $1.51 |
| Certified Fee | $2.70 |
| Return Receipt Fee (Endorsement Required) | $2.20 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ 6.24 |

Sent To: TAXMASTERS

Street, Apt. No.; or PO Box No. 900 TOWN/COUNTRY LANE STE400

City, State, ZIP+4 HOUSTON TX 77024

PS Form 3800, August 2006          See Reverse for Instructions

7008 0350 0002 4797 8952

# EXHIBIT Q

**Bank of America**

Dispute Resolution Services
P.O. Box 53137
Phoenix, AZ 85072-9317

October 27, 2008

JEFFREY DELONG
UKIAH CA  95482

Amount:                                    $3,000.00
Claim Number:                        3233727OCT08
Account Number ending in:

Dear JEFFREY DELONG:

Thank you for your recent inquiry concerning the above-referenced ATM/Check Card activity. Our goal is to research and resolve this matter for you as quickly as possible.

To ensure your total customer satisfaction, we have issued a temporary credit for $3,000.00 on October 27, 2008 while we perform our research.

In accordance with the applicable law, we require your written confirmation of the transaction or transactions that you dispute. Accordingly, please complete and return the enclosed dispute form within five days upon receipt of this letter. For your convenience in responding, you may use the enclosed business reply envelope, or you may fax the information to 800.306.1079.

We will be conducting research to resolve your disputes and we will notify you of the final result. Should it be determined that no error has occurred, or if we do not receive the dispute form, the temporary credit to your account will be reversed and the dispute will be considered resolved.

Bank of America appreciates your business and values you as a customer. If you have any questions about this matter, please call our toll free number 800.380.7751 for assistance. Our Customer Service Representatives are available to assist you Monday through Friday between 7:00 a.m. and 10:00 p.m., and Saturday and Sunday between 8:00 a.m. and 5:00 p.m. local time.

ATM/Debit Card Operations FRDC01

Enclosure(s)

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BANK OF AMERICA
DISPUTE RESOLUTION SVCS.
PO BOX 53137
PHOENIX, AZ.
85072-9317

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Nikola Nolander*   ☐ Agent
                      ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
                                   06 2008

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7008 0150 0002 4797 9492

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JEFF DELONG

UKIAH, CA 95482



# EXHIBIT R

Best Inside Sales Jobs in Houston

Tax Masters: We solve your tax problems.

TaxMasters| Careers » Sales »
- **FREE Consultation**   Click to go to BillOReilly.com »
- Settle Your Taxes   Click to go to DennisMillerRadio.com
- Unfiled Tax Returns
- Installment
  Agreement
- Who We Are
- What We Do
- Our Promise
- Help! IRS Agent at
  My Home or
  Business
- IRS Audit or Appeal
  of Audit
- Stop Wage
  Garnishment
- Recover Seized
  Funds
- Remove Levy or
  Lien
- Patrick Cox's Blog
- Contact Us
- Career Opportunities

# Sales Jobs in Houston—The Best Inside Sales Gig Inside the Beltway

Are you a talented closer ready to move into the next income bracket? Sales people search years to find an inside sales job as sweet as this. The leads come to you qualified and ready to bite. All you have to do is what you were born to do. Take the caller through a custom solution based on Tax Masters sound and proven service offerings and convert qualified prospects to closed deals. Our services give you a strong base to build on. The rest is up to you.

## 60 Hours in a Week Never Felt So Easy!

If you are sick of working 60-hour weeks with nothing to show for it in a down economy, come spend a 60-hour week with Tax Masters and watch your income grow. We're looking for intelligent, professional closers who love to talk on the phone. We put in 50 to 60 hours a week, not because we have to, but because the way to get ahead is to be here when the phones ring. Where else do you get to help people dig out of their IRS problems while making a great living for yourself?

In this time of economic downturn, we're hearing about layoffs and RIFs (reductions in force). They can't even call a layoff anymore because everyone is doing so much of it. Well, we're going the opposite direction, adding new team members in sales and operations every day. Tax Masters can be the step in your career that puts you closer to the top than to the bottom, nearer the finish than the start. So the question is, how good are you? Are you going to go to work again tomorrow, hating what you do and knowing you'll never make what you're worth? Or will you apply and see if you have what it takes to join the Tax Masters team?

We are actively looking for successful sales people. If you have been on the top of any sales market - real estate sales, mortgage broker, IT services, communications services, financial services, even insurance and car sales - consider contacting us. If you've outgrown your position or your vertical market is cratering, we just may be the answer.

## It's Your Call

4/27/2010 9:55 AM

Think about it. Even the current Secretary of the Treasury got in trouble with the IRS. This trend is nearing pandemic stages. People need help getting their IRS tax debt settled and negotiated. As long as the IRS is in business, there's a need for tax representation firms like ours and there's a need for a sales force intelligent enough to understand how to apply our set of services.

## Want to Make $75K - $100K This Year?

If you are a talented sales person looking for a great inside sales job in Houston, Texas, you need to contact us and apply today. there is nothing between you and $75K - $100K and more per year other than your drive, talent, and willingness to be at the office and close the next deal.

## Tax Consultant-Inside Sales Representative Job Specifics

Tax Masters is looking for the finest professional inside sales people to employ full time, selling tax representation services and tax debt solutions to people and businesses in trouble with the IRS who have tax debts they cannot pay. Previous tax knowledge is not required, but a firm understanding of the sales process and of selling services(as opposed to products) is a strong plus. We provide the training.

Hard work and a minimum 50 hour week are expected. A great income and great working environment is the reward.

Previous inside sales success experience and phone sales skills are a must. In depth understanding of effective closing techniques practiced to an art form are required.

We pay a base wage or commission, whichever is higher. Benefits and paid vacation are included.

## Apply Online Today!

Want to see more open jobs? Check out the main Tax Masters Careers page.

4/23/2010 9:55 AM

Best Inside Sales Jobs in Houston



Tax Masters

© Tax Masters (*This firm is not a CPA firm. This firm is not a law firm.)