

RIDOUT & LYON, LLP
CHRISTOPHER P. RIDOUT (State Bar No. 143931)
   Email: c.ridout@ridoutlyonlaw.com
DEVON M. LYON (State Bar No. 218293)
   Email: d.lyon@ridoutlyonlaw.com
CALEB LH MARKER (State Bar No. 269721)
   Email: c.marker@ridoutlyonlaw.com
555 E. Ocean Blvd., Suite 500
Long Beach, California  90802
(562) 216-7380 Telephone
(562) 216-7385 Facsimile

**Attorneys for Plaintiffs**



FILED
CLERK, U.S. DISTRICT COURT
MAY - 9 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY DELONG and DENNIS HOLMES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TAXMASTERS, INC., a Nevada corporation, TMIRS ENTERPRISES, LTD., a Texas partnership, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO:  2:11-cv-01431-ODW-AGR<br><br>[Hon. Otis D. Wright, II]<br><br>**SECOND AMENDED COMPLAINT (CLASS ACTION)**<br><br>1) Recission of Contract<br><br>2) Unlawful/Void Contract for Sale of Legal Services<br><br>3) Violation of California Civil Code § 1750 *et seq.* – Injunctive Relief<br><br>4) Violation of California Civil Code § 1750 *et seq.* – Damages<br><br>5) Violation of Business and Professions Code § 17200 *et seq.* (B&P § 17538)<br><br>6) Violation of Business and Professions Code § 17200 *et seq.* (CLRA)<br><br>7) Violation of Business and Professions Code § 17200 *et seq.* (Texas UDAP)<br><br>(JURY TRIAL DEMANDED) |

RECEIVED
BUT
NOT FILED

MAY - 6 2011

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

   Plaintiffs Jeffery DeLong (hereinafter "DeLong") and Dennis Holmes (hereinafter "Holmes") (DeLong and Holmes are collectively referred to herein as

---

SECOND AMENDED COMPLAINT (CLASS ACTION)                                    1

1   the "Plaintiffs"), bring this action, by and through their undersigned counsel, on

2   behalf of themselves and all others similarly situated persons in the class defined

3   below, based upon information and belief and the investigation of counsel, except for

4   information based upon personal knowledge, and hereby allege as follows:

5                   **I.     NATURE OF ACTION**

6         1.       This class action seeks damages, restitution, injunctive and declaratory

7   relief on behalf of a class of all persons residing nationwide who contracted with

8   Defendants TaxMasters, Inc., a Nevada corporation and/or TMIRS Enterprises, Ltd.,

9   a Texas partnership (collectively referred to herein as "Defendants" and/or

10  "TaxMasters") to work on their behalf with the Internal Revenue Service ("IRS")

11  and/or other tax authorities as it related to taxes owed by the person, the preparation

12  and filing of overdue tax returns, handling IRS enforcement actions, and/or the

13  performance of other  tax-related services involving the IRS.  This action seeks to

14  remedy Defendants' deceptive and unlawful business conduct towards its customers

15  including, but not limited to, false advertising practices, material omissions, "bait

16  and switch" tactics and altering contractual terms without valid consideration.  Once

17  retained, Defendants unlawfully and unilaterally alter the contractual terms disclosed

18  when they first contracted with and took payment from class members without

19  additional consideration, deliver little of what they promise in their sales pitches - or

20  could possibly provide (i.e., the successful elimination of tax debt owing the IRS

21  and/or state taxing authorities in the majority of cases), refuse to provide refunds

22  even when services have yet to be performed or a contract signed stating the

23  additional terms sought to be imposed by Defendants, and demand that class

24  members travel to Houston, Texas to resolve any claims for refunds or other

25  disputes.  The new terms were not disclosed at the time of contracting and constitute

26  material omissions. As such, the Court should declare all such contracts unlawful,

27

28

---

1    unconscionable and void and order Defendants to refund and provide restitution of

2    all fees collected from the class, in addition to the other relief demanded below.

3                        **II.    JURISDICTION AND VENUE**

4         2.    This Court has jurisdiction over this action pursuant to 28 U.S.C § 1332.

5         3.    Venue is appropriate in this Court.  Plaintiff Dennis Holmes resides in

6    this district.  Defendants transact business in this District and certain events and

7    conduct giving rise to the claims in this action occurred in this District.  Holmes

8    contracted with Defendants in this district.  Each Defendant has sufficient minimum

9    contacts in the State of California or otherwise intentionally prevails itself of the

10   California market through television, radio and internet advertising located in

11   California and other activities, so as to render the exercise of jurisdiction over it by

12   the California courts consistent with traditional notions of fair play and substantial

13   justice.

14                        **III.    THE PARTIES**

15        4.    Plaintiff Jeffery DeLong is an adult individual who resides in the State

16   of California, County of Mendocino.  Plaintiff DeLong has a physical impairment

17   that substantially limits one or more major life activities and is a "disabled person"

18   as that term is defined by Cal. Bus. and Prof. Code § 17206.1(b)(2).

19        5.    Plaintiff Dennis Holmes is an adult individual who resides in the State

20   of California, County of San Bernardino.

21        6.    At relevant times during the class period, DeLong and Holmes were

22   both customers of Defendants TaxMasters, Inc., a Nevada corporation and/or TMIRS

23   Enterprises, Ltd., a Texas partnership.  As a result of Defendants' unlawful and

24   unconscionable conduct described further herein, suffered harm, injury and loss in an

25   exact amount to be proven at trial.  Since Plaintiffs were harmed and suffered out of

26   pocket loss in a manner typical of the Class, as confirmed by the recent actions taken

27

28

1   by the Attorney Generals of several states against Defendants, including Texas and

2   Minnesota, they bring this action as a class action.

3          7.    Upon information and belief, TaxMasters, Inc. is a publicly traded

4   (NASDAQ: TAXS) Nevada corporation with its principal place of business located

5   at 900 Town & Country Lane, Suite 400, Houston, TX 77024. The agent for service

6   of process is Residential Agency National, Incorporated, 377 S. Nevada Street,

7   Carson City, NV 89703.

8          8.    Upon information and belief, TMIRS Enterprises, Ltd., is a Texas

9   partnership with its principal place of business located at 900 Town & Country Lane,

10  Ste. 400, Houston, TX 77024. Defendant TMIRS affairs are directed and controlled

11  by TM GP Services, LLC, its General Partner. TM GP Services, LLC is a Texas

12  limited liability company doing business throughout the United States, including

13  Pennsylvania, with a principal place of business at 900 Town & Country Lane, Suite

14  # 400, Houston, TX 77024 GP Services, LLC is a Texas limited liability company

15  doing business throughout the United States, with a principal place of business at

16  900 Town & Country Lane, Suite # 400, Houston, TX 77024

17         9.    Defendants unjustly profit from the activities challenged in this lawsuit.

18  For instance, in its 2009 annual report, Defendants reported annual revenue of

19  approximately $36.8 million.

20        10.   Plaintiffs are informed and believe that Defendants regularly conduct

21  business in the State of California directly or indirectly through subsidiaries owned,

22  licensed, operated, administered, managed, directed and/or controlled in the State of

23  California.

24        11.   Upon information and belief, the services Defendants provide class

25  members are performed at their offices, in Houston, Texas. The deceptive,

26  unconscionable and unfair business practices that Defendants engage in and

27  complained of herein are conducted in and from their primary business offices in

28

1    Houston, Texas and emanate to other states where class members reside, including
2    California, injuring those class members and causing them to incur out-of-pocket
3    loss.   Defendants are obligated to comply with Texas law with regard to operations
4    and business practices they conduct in and from Texas, even if those services affect
5    and injured consumers outside of Texas.   In addition, Defendants are also obligated
6    to comply with the laws of the states where they conduct business and contract with
7    consumers, such as California.

## IV.   INTENT

8    
9    12.   Defendants knowingly and intentionally undertook and directed that
10   their respective businesses undertake the illicit practices which are the subject of this
11   suit.

12   13.   Acting in concert, Defendants have undertaken a common scheme to
13   systematically and intentionally ensnare and deceive unsuspecting and financially
14   vulnerable consumers, like Plaintiffs, who at relevant times owed the IRS unpaid
15   taxes and sought to address their tax problems, by systematically:

16       a. promising to eliminate class member's outstanding tax debts and
17          obligations to the IRS;

18       b. establishing a "payment plan" for their services;

19       c. obtaining the consumers' credit card information, instantly charging
20          monies against it;

21       d. failing to disclose hidden fees and other material terms at the time of
22          contracting and receiving payment - terms which constitute material
23          omissions;

24       e. refusing to provide the required 30 day right of rescission / cancellation
25          with full refund required for telephone and internet sales;

26       f. then, only after receiving "non-refundable" payments from class
27          members, altering and adding contractual terms and;

28

---

g.  engaging in illegal collection services to pursue monies the Defendants deem are owed by class members - even when services have yet to be performed.

## V. FACTUAL ALLEGATIONS

**A.      Defendants Regularly Advertise in Order to Induce Potential Customers to Seek Their Counsel for Tax Liability Issues.**

14.     Defendants are in the business of performing tax relief services to individuals with federal and state tax debt problems and liabilities.

15.     Defendants do not have any "brick and mortar" stores to transact directly with consumers.   Instead, Defendants advertise on television, radio and internet markets both nationwide and throughout the State of California in order to reach prospective consumers and to induce them into contacting Defendants via telephone or internet concerning their tax liability problems.   All sales of services by Defendants are made via the Internet and telephone.

16.     Defendants utilize advertisements on national television and the internet (www.txmstr.com) that invite the consumer to solve their tax problems by calling TaxMasters' telephone number for a "free consultation" with a tax consultant. *See e.g.* www.txmstr.com.

17.     Consumers who accept the invitation and call TaxMasters' toll free number are connected to a telephone sales representative who proposes a solution to the consumer's tax problems and then closes the deal by obtaining the consumers' credit card or bank account information without providing several material disclosures, including that the fees paid by the consumer will be immediately treated as non-refundable. *See* Affidavit of Denise Miranda and Transcript of Telephone Sales Call between Defendants and Denise Miranda ("Miranda Affidavit"), attached hereto as Exhibit "B".

18.    Defendants operate what they describe as a 'tax resolution' firm, aimed at the market of taxpayers who have received an audit notice, a notice of tax deficiency, or are otherwise in some difficulty with the IRS.  Essentially TaxMasters offers to act as the taxpayers' agent in his/her dealings with the IRS.  Although TaxMasters claims that it "employ[s] and use[s] the expertise of ... tax attorneys [and] tax CPAs," it says that it "is not a law firm or a CPA firm."  According to TaxMasters, it provides the following tax-related services, among others (a) stopping IRS wage garnishments, (b) stopping IRS property seizures:, (c) assistance with paying back taxes, (d) settlement of consumers' tax debts by reducing the amount of interest and penalties,  (e) handling disputes in tax court.    The services that Defendants sell class members require legal judgment and advice to perform. *See attached* Exhibit "B" (Miranda Affidavit).

19.    The image and words of Patrick R. Cox, the President and Chief Executive Officer of TaxMasters, Inc., appear in the numerous TaxMasters television commercials and on the TaxMasters website, where he introduces himself as the founder of TaxMasters.  He represents that TaxMasters will "get between" the IRS and the consumer, and will "solve" the consumer's tax problem.  He says that former IRS agents, attorneys and other tax professionals are standing by to assist and advise the consumers with their tax problems.

20.    TaxMasters runs commercials which air frequently on network and cable television including MSNBC, CNN and Fox News, and on the internet.  Customers who call the toll-free number featured in TaxMasters' advertisements are connected with an inside salesperson who is not required to have any previous tax knowledge, as a condition of employment, but rather is encouraged to have a thorough understanding of the sales process and how to close a sale.  During the sales pitch, the salesperson presents the caller with a solution to his tax problem --

one of the services offered by TaxMasters -- and quotes a fee, which can run into thousands of dollars. The fee is generally presented as a flat fee.

21.    During the "free consultation" call, which is the initial call between a consumer and TaxMasters, the tax consultants work to "close the sale" by obtaining a credit card number or bank account from the consumer so that TaxMasters can collect its fee. To this end, TaxMasters' sales personnel emphasize the necessity of promptly retaining TaxMasters in order to solve the consumer's tax problem. If the consumer asks to receive a written description of the service prior to agreeing to purchase TaxMasters' services, the salesperson refuses, telling the consumer that it is not possible to generate the documents without first inputting a payment method into the TaxMasters system. *See attached* Exhibit "B" (Miranda Affidavit).

22.    The fees that TaxMasters charge for its services are large, typically ranging from $1,500.00 to $10,000.00 or even more. If the consumer cannot afford to pay the fee in whole, or if the consumer balks at agreeing to pay such a large amount without seeing written terms, the 'tax consultant' offers the consumer an installment plan to pay the TaxMasters fee. The consumer is usually required to agree to a down payment of at least $500.00, or 25% of the total fee, whichever is greater.

23.    When the consumer agrees to retain TaxMasters and to make payment in full or payment via an installment plan, the tax consultant then turns the consumer's telephone call over to another member of the TaxMasters sales team, the "verifier" who tells the consumer what a good decision he/she has made and reviews the payment plan to which the consumer has agreed. Neither the original consultant nor the verifier discloses to the consumer that it is TaxMasters' position that the consumer is now irrevocably bound to pay the initial fee and any future installments before the consumer has signed any written engagement letter or received any services from TaxMasters or that he/she has waived any claims. *See attached*

SECOND AMENDED COMPLAINT (CLASS ACTION)                                    8

1    Exhibit "B" (Miranda Affidavit).  Failing to disclose terms at the time of contracting,

2    constitute material omissions and hence, is a deceptive and misleading business

3    practice.

4         24.    After the call is ended, before TaxMasters sends the consumer any

5    written materials or contract, TaxMasters charges the consumer's credit card, or

6    debits the consumer's bank account, for the amount of the whole fee or down

7    payment.  Only after a charge is made does TaxMasters *then* send a letter to the

8    consumer, along with the IRS form appointing TaxMasters as the consumers' agent,

9    an engagement agreement, and engagement guide.  The letter instructs the consumer

10   to immediately sign the engagement agreement and IRS forms and return them to

11   TaxMasters.

12        25.    The engagement agreement is a multi-page standard-form document

13   that contains numerous previously undisclosed terms and conditions printed in small

14   type.  *See*, Plaintiff-Defendants Engagement Agreement, appended as Exhibit "A"

15   hereto.   Upon information and belief, the same or substantially similar form

16   engagement agreements were used in each class members' transaction.  As described

17   above, these previously undisclosed terms and conditions materially and

18   substantively limit and change the services as described by TaxMasters during the

19   initial sales call with the consumer.  Since the contract was formed when the

20   payment was made, the subsequently disclosed written terms alter the contract

21   without valid consideration and are void, unconscionable and unenforceable.

22        26.    One of the terms disclosed for the very first time in the engagement

23   agreement (but after the consumer has already paid Defendants) involves the

24   cancellation of the agreement by the consumer and the consumer's right to receive a

25   refund.  This disclosure reads as follows:

26            Client's Early Termination Agreement

27            Client may terminate this agreement at Client's discretion
              by providing Client's notice in writing to Firm. In the
28

---

event of termination by client, the minimum professional fees due for services rendered or to be rendered will be the higher figure of: (1) the minimum total retainer specified above and the actual fee for any other services performed - or- (2) the actual time expended by Firm at standard billing rates, If Client has paid more than then minimum fee as determined herein, a refund will be paid. Client agrees to remit any balance in full with its termination notice or to permit any remaining balance to be drafted in full using the payment method established in the installment agreement.

*See attached* Exhibit "A" (Plaintiff's Engagement Agreement). TaxMasters does not provide this disclosure to consumers during the sales calls and prior to accepting the initial payment.

27.   TaxMasters takes the position that its fees are binding and are immediately non-refundable whether the consumer has signed the engagement agreement or not and regardless of whether any services have been provided to earn any portion of the fee. Consumers who have called TaxMasters to cancel within 24 hours after the initial sales call have been told that TaxMasters will not refund any portion of the money paid, even though TaxMasters has provided no services at that point, and, indeed, cannot begin working on the consumer's behalf until the consumer has returned the IRS form appointing TaxMasters as his representative. *See attached* Exhibit "I" (Defendants' Correspondence Denying Consumer Refund).

28.   TaxMasters not only refuses to refund the fees already collected by it after the sales call, it also attempts to continue to collect fees from consumers who cancel their agreements, even when no services have been provided to earn any portion of the fee. In fact, the Defendants have threatened to subject consumers to collection procedures in court if they refuse to pay fees after the consumer has cancelled the agreement, regardless of whether any services have been performed. In attempting to collect these fees, TaxMasters has threatened to bring suit to collect such fees in court in Harris County, Texas, even though the consumer is not a resident of Harris County, Texas and did not sign the contract on which the alleged

---

SECOND AMENDED COMPLAINT (CLASS ACTION)                                                          10

debt is based in Harris County, Texas. Such terms and tactics are unlawful, lack mutuality, are unconscionable and violate Tex Bus. and Com. Code section 17.46(b)(23) and /or other law. *See attached* Exhibit "J" (Defendants' Collection Correspondence).

29. Further, on its website and during the sales call, TaxMasters represents that it will begin working on the consumer's tax problem as soon as the consumer purchases the services from TaxMasters. According to the engagement agreement, which is only sent after the initial fee has been paid, however, TaxMasters does not have to begin working on the consumer's tax problem until the consumer has paid the TaxMasters fee in full. Therefore, when an installment payment plan is involved, it may take months before the Defendants begin work on a consumer's file and the only notice that consumers on an installment plan receive about this policy is information that is included in the engagement agreement, as this issue is not disclosed to consumers during the sales call. *See* Affidavit of Karen Sanchez, attached hereto as Exhibit "D".

30. The contract between Defendants and the consumer class member is formed when Defendants demand and receive the initial payment from the consumer during this process. Only after the class member has entered into a contract with Defendants and provided payment based on the terms then-disclosed do Defendants send the consumer a written contract altering the contract, disclosing for the first time new, different and additional terms, without providing additional consideration. If a consumer upon receiving the written contract attempts to reject the newly disclosed terms set forth in the written document, Defendants claim that the consumer (like Plaintiffs here) is already contractually bound and that it is entitled to keep all fees despite the fact no work has been done or services performed to earn the fee. Thus, consumers are under financial duress and have no choice but to go forward or else they risk losing the entire fee paid (plus any future scheduled

1  installment payments to be debited from their accounts) without receiving any tax

2  relief services in exchange.  As such, the contracts are unconscionable, unlawful,

3  void, and unenforceable and should be rescinded.

4       31.   In the initial sales call, TaxMasters' representatives misrepresent and/or

5  fail to disclose important aspects of TaxMasters' service and the terms on which they

6  are offered, including, the fact that TaxMasters treats all fees paid as non-refundable;

7  the fact that TaxMasters will not begin working on a client's case until he/she has

8  paid all of the installment payments agreed to; that additional charges (at rates up to

9  $950.00 per hour) may be imposed at Defendants discretion when they subjectively

10  feel the undisclosed "budgeted time" and hourly rates allocated to the initial fee

11  previously paid is exhausted; that Defendants alone may unilaterally terminate the

12  agreement "without refund" (even if services are never performed) should they

13  subjectively feel the client is uncooperative or "abusive;" that the work will actually

14  not be performed by Defendants but be subcontracted to other undisclosed persons or

15  entities to perform and for which the class member waives important rights to

16  proceed against; that all disputes the class member has against Defendants are

17  limited and must be arbitrated in Houston, Texas while Defendants, in contrast,

18  retain their right to sue the class member in a state or federal court of their choosing

19  with no limitation on claims or recoveries. *See* Exhibit "B" (Miranda Affidavit), at

20  pp. 40 - 41.  Failing to disclose terms at the time of contracting, constitute material

21  omissions and to do so is a deceptive and misleading business practice.  Plaintiffs

22  relied to their detriment on this conduct by Defendants.   Such wares are

23  unconscionable, unlawful, void, and lack mutuality and are unenforceable.

24       32.   Failing to disclose material terms at the time of contracting, constitute

25  material omissions and to do so is a deceptive, misleading, unlawful and unfair

26  business practice.  Plaintiffs relied to their detriment on this conduct by Defendants.

27  Plaintiffs entered into contracts and paid Defendants money based on the limited

28

SECOND AMENDED COMPLAINT (CLASS ACTION)                                             12

1  terms disclosed at the time of contracting and initial payment, only to thereafter have

2  the new, previously omitted terms, described above, unfairly, unlawfully and

3  unconscionably thrust upon them by Defendants.

4  **B.   Defendants Overstate Their True Ability to Reduce Class Members' Tax**

5      **Obligations**

6      33.   Defendants, through their various advertisement schemes and website,

7  seek out consumers who are in dire financial condition, and those consumers who

8  face possible immediate action by the Internal Revenue Service ("IRS").   The

9  company makes a number of representations to entice such consumers to retain them

10  and have consumers immediately allow Defendants to charge their credit cards

11  before receiving the written contract, including:

12      a.  "The former IRS agents and tax professionals at TaxMasters will solve

13          your tax problems."

14      b.  "We'll get between you and the IRS."

15      c.  "We'll make sure they treat you fairly, and treat you with respect."

16      d.  "Don't wait weeks for an appointment, call us today.  We'll get you

17          started today."

18      e.   "TaxMasters—we solve your tax problems."

19      f.  The "IRS makes the rules and then apparently trains its employees to

20          break them."

21      g.  The IRS will not treat consumers "fairly" or with "respect" if they

22          attempt to represent themselves.

23      h.  "Relief from substantial federal tax debt is achievable and is even easier

24          with TaxMasters than you might think."

25      i.  TaxMasters' staff is composed of former IRS agents, enrolled agents,

26          tax attorneys and CPAs with tax expertise.

27

28

---

SECOND AMENDED COMPLAINT (CLASS ACTION)                                13

1      j.  "From the moment you give our tax consultant the go-ahead on the

2          phone, we start working for you."

3      k.  TaxMasters is dedicated to quality client services, and "will do

4          everything in our power and within the limits of the law to help you

5          achieve tax relief."

6      l.  "Whether facing tax debt, unfiled returns, wage garnishment, or an IRS

7          audit, TaxMasters can solve your tax problem."

8     34.    The Better Business Bureau of Houston Texas, which is where the

9 Defendants base their business operations, has given TaxMasters an "F" rating, and

10 has received hundreds of complaints in the last three years.  Additionally, the

11 Attorneys General of a number of states, including Texas and Minnesota have

12 recently filed actions challenging Defendants' deceptive sales practices.  *See e.g.*

13 *Swanson v. TaxMasters, Inc.,* Hennepin County (Minnesota) District Court, Fourth

14 Judicial District, Case No. 27-CV-10-28133 (Filed December 16, 2010); *State of*

15 *Texas v. TaxMasters, Inc., TMIRS Enterprises, Ltd., TM GP Services LLC, d/b/a/*

16 *TaxMasters and Patrick R. Cox,* D-1, GV-10-000486, Travis County, Texas, District

17 Court.  According to the Minnesota Attorney General:

> "The company gets worried people to pay thousands of dollars by overstating the help it will provide with their tax bills," said Attorney General Swanson. "This is the latest type of company we have seen target the misfortunes of people who are facing tough sledding in the bad economy."
>
> The lawsuit alleges that the company got consumers to pay advance fees of $2,000 to $8,000 by misstating the help it would provide people with unpaid tax bills. In some cases, the company claimed it could substantially reduce people's tax bills by up to 90 percent, but then delivered little or no help. In other cases, the company falsely promised that it could stop IRS collection efforts against consumers who hired it.
>
> Contrary to TaxMasters' promises, most citizens do not qualify for special IRS programs that reduce a person's tax debt. Attorney General Swanson said that while the IRS won't reduce most people's tax bills, it will work

with them on repayment plans-something people can do on their own without paying a tax relief company thousands of dollars.

TaxMasters heavily advertises on late-night television. In 2009 the company spent nearly $14 million on its television, radio and Internet advertising campaigns. Consumers who call TaxMasters talk to a "tax consultant," who is actually a salesperson. A job ad for this position states: "Previous tax knowledge is not required, but a firm understanding of the sales process and of selling services ... is a strong plus." Salespeople often make unrealistic promises of the company's ability to help in order to dupe consumers into paying thousands of dollars in advance fees. The company also falsely told some consumers it could put an immediate stop to collection efforts, such as wage garnishments, levies, or liens. The lawsuit alleges that TaxMasters sometimes left people in worse financial shape after paying the company's advance fees, failing to respond to important deadlines or requests of tax authorities.

* * *

The lawsuit alleges that TaxMasters salespeople told consumers things like:

- "... based upon our success rate and our experience, on average, our clients see a savings of anywhere between 80 and 90% of what the IRS claims they owe."
- "We're highly successful; we are the most successful tax resolution company. We're 97% successful."
- "We'll save you anywhere from 65 to 90% is our goal on ... savings off the total tax debt. 97% of the time we reach that goal, the other 3% are the people who just flat out lie to us."

*See* Office of Minnesota Attorney General, Press Release, December 16, 2010. Other examples of Defendant's deceptive sales practices are evident in the Transcript of the initial free consultation between Denise Miranda, attached hereto as Exhibit "B" at pp. 8, 12, 24-25, and 40-41, where Defendants claim that the staff tax attorney, who's services Defendants sell, has never lost a case.

> This is definitely something we can help you out with. One of our, in fact our main audit attorney, his name is Clyde Miller, you'll be, you'll be glad to know he's never lost a case.
>
> * * *
>
> So you're looking at $6,500 for us to take over the case and get all this taken care of. Now, again, I stress to you that, that Clyde Miller has never lost a case. --.
>
> * * *
>
> ...and we don't typically take on case that we know we're, that we know we can't win.
>
> * * *
>
> Because what we're going to do is tie, we're going to tie it up in litigation as long as we can.

35. During the initial "free consultation" call, Defendants overstate their services and true ability to eliminate people's tax obligations to the class. Defendants engage in such activities in order to push sales and maximize their profits, to class members' financial detriment. *See* Affidavit of Crespin Gonzales, attached hereto as Exhibit "E".

36. Upon information and belief, over the last four years, over 200 California consumers (and many more nationwide as evidenced by Defendants' sales figures set forth below) have retained TaxMasters during similar initial "free consultation" calls to "solve [their] tax problems."

**C.  TaxMasters Makes Money By Aggressively Booking Consumer Sales Contracts Through "Free Consultations" with a Sales Person.**

37. TaxMasters primarily earns revenue by charging consumers to prepare and amend tax returns, negotiate tax settlements, and handles IRS audits and collection cases.

38. TaxMasters' advertisements and website offer consumers "free consultations." In truth, this is nothing but a scheme to connect vulnerable class members facing legal problems with an aggressive sales person changed only with closing a sale and collecting an immediate fee, not providing the consumer any meaningful tax "consultation" from a qualified professional.

39.     When consumers agree to retain TaxMasters during the initial sales call, its sales people ask them to pay the company's large fees in advance.  These fees typically range from $1,500.00 to $10,000.00 or more.  Although many of these consumers are already experiencing financial difficulties, TaxMasters' salespeople ask them to empty their checking and savings accounts, borrow the amounts required, or charge its fees on high-interest credit cards.  If TaxMasters cannot get full payment in advance, its salespeople collect the large amount available as a "down payment," and place consumers on installment plans.

40.     The skill of TaxMasters' sales staff in extracting large, up-front (non-refundable) fees from consumers is reflected in the company's extraordinary revenue growth in the last four years.  For 2007, TaxMasters reported revenues of $6.5 million.  For 2008, its revenues grew by 132% to $15.1 million.  For 2009, its revenues grew by 131.1% to 36.8 million.  For the first nine months of 2010, when compared to the same period in 2009, TaxMasters' revenues grew by 21.8% to 32.8 million.  Patrick Cox noted in a November 17, 2010 press release that "We have implemented extensive advertising campaigns in the media most followed by our customers and we anticipate this will translate into higher revenue in the upcoming quarters."

41.     As TaxMasters' revenues have increased, so has the number of its employees.  In 2006, the company employed 15 people, in 2007 it employed 101 people, by the start of 2009 it employed 210 people, and it currently employs over 300 people.  TaxMasters' management has expressed plans to continue expanding TaxMasters staff in coming years.

42.     In March 2010, TaxMasters told investors that the "driving factor for assessing success at TaxMasters is both total revenue and newly booked sales contracts that will become future revenue."  Further, TaxMasters states on its website that "[t]he largest growth driver for TaxMasters has been the increasing number of

1   taxpayers who have issues dealing with the IRS and who are out of tax compliance.

2   The recession and rising unemployment has increased the number of at-risk

3   Americans, those who are most likely to have the severe financial difficulty that

4   causes problems meeting IRS obligations."

5       43.   TaxMasters' focus on booking new sales contracts is apparent from its

6   solicitation in the "help wanted" section of its website for "talented closers" to work

7   as Tax Consultants—Inside Sales Representatives.    Such tax consultants will

8   purportedly utilize their tax expertise to recommend services appropriate to resolve

9   consumers' tax problems.  It is plain from TaxMasters' solicitation, however, that the

10   focus of the tax consultant position is closing sales contracts rather than providing

11   actual "free consultations" advising consumers appropriately about tax issues.   At

12   relevant time, TaxMasters' solicitation enticed potential sales employees with the

13   promise that:

> Salespeople search years to find an inside sales job as
> sweet as this.  The leads come to you qualified and ready
> to bite.  All you have to do is what you were born to do.
> Take the caller through a custom solution based on
> TaxMasters sound and proven service offerings and
> convert qualified prospects to closed deals.

18   It further provides that although "[p]revious tax knowledge is not required," an "[in]

19   depth understanding of effective closing techniques practiced to an art form are

20   required." *See* Defendants' Hiring Advertisement, attached hereto as Exhibit "R".

21       44.   These "consultants" are the people who provide the "free consultation"

22   offered to consumers on Defendants' website and advertising.   Callers who dial

23   TaxMasters' toll-free phone number do not receive any actual "consultation" on tax

24   issues at all.  Instead, all they receive is a sales pitch from a salesperson charged with

25   closing a sale and who is unqualified to provide any meaningful tax "consultation."

26   *See* Exhibit "B" (Miranda Affidavit).   This is a material omission and not disclosed

27

28

1  to consumers in the class, like Plaintiffs, at the time of contracting and initial

2  payment.

3      45.    Defendants' offer of a "free consultation" is misleading, deceptive,

4  unfair and false.

5  **D.    TaxMasters Utilizes "Bait and Switch" Tactics, Charging Consumers**

6      **Large, Up-front Fees Before Giving Them a Copy of the Engagement**

7      **Agreement Contract.**

8      46.    As noted above, TaxMasters collects full or partial payment from

9  consumers at the time of the initial sales call with the "consultant." It does so before

10  giving consumers a copy of the Engagement Agreement that it requires them to

11  execute and return.  TaxMasters does not e-mail or fax a copy of its Engagement

12  Agreement to consumers until after it has completed the sales call and processed the

13  payment.

14      47.    TaxMasters utilizes its "third-party" verification system to bind

15  consumers to payment for TaxMasters' services whether the consumers return an

16  executed copy of the contract or not.  If after receiving a copy of the Engagement

17  Agreement, the consumer decides they do not want to enter into a contractual

18  relationship with TaxMasters on the terms stated and refuse to execute and return it,

19  TaxMasters refuses to refund the money these consumers have paid on the basis that

20  they have verbally agreed to pay TaxMasters its fee.

21      48.    As described above, terms in the Engagement Agreement contradict

22  representations made by TaxMasters' salespeople during the telephone consultation

23  when payment is made.

24      49.    TaxMasters' refusal to provide class members who have contracted with

25  it over the telephone and internet any cancellation or rescission period violates

26  applicable law.

27

28

---

SECOND AMENDED COMPLAINT (CLASS ACTION)                                    19

1    **E.    Plaintiff Jeffery DeLong's Transaction with Defendants**

2        50.    On October 20, 2008, Plaintiff Jeffery DeLong called TaxMasters'

3    Houston, Texas offices via telephone for a free consultation regarding a tax dispute

4    he had with the IRS pertaining to taxes claimed due by the IRS for tax year 1997.

5        51.    Delong spoke with "tax consultant" James Arline at TaxMasters'

6    offices in Houston.

7        52.    During the telephone call between Delong and Arline on October 20,

8    2008, Delong entered into a contract with TaxMasters for tax relief services.   During

9    that call Delong agreed to pay TaxMasters $3,000.00 in full for their services and in

10   turn, provided TaxMasters authorization to charge his Visa ATM/check card in that

11   amount.

12       53.    At the time, TaxMasters had not yet provided Delong any written

13   Engagement Agreement or other documents.   Delong was told he could not receive

14   the written contract until he had first authorized payment.   Only after the

15   aforementioned telephone call ended did Delong receive the written engagement

16   agreement and other documents from Defendants via fax.   *See* Defendants'

17   Engagement Correspondence to Delong, attached hereto as Exhibit "K".

18       54.    On October 20, 2008 and prior to returning any forms or agreements,

19   Delong e-mailed Arline asking that he email Delong back "if the terms have been

20   modified since our discussion, prior to payments being made."   Arline did not

21   respond. *See attached* Exhibit "L".

22       55.    On October 21, 2008, Delong returned the executed engagement

23   agreement.   Delong then discovered that the original terms discussed with Arline

24   during the initial consultation had been altered, including that the $3,000.00 paid

25   may no longer be payment in full for TaxMasters' services.   The terms not disclosed

26   were material omissions.   Delong relied to his detriment on Defendants' conduct and

27   omissions.   Had these terms been made clear and disclosed to Delong before

28

1   authorizing payment, he would not have entered into the contract and paid
2   TaxMasters any money.   Because material terms were withheld, in a manner typical
3   of other class member's transactions, Delong (like other class members) was
4   deprived of the opportunity to make an informed decision prior to entering into the
5   contract and paying Defendants money.   On October 24, 2008, Delong notified
6   TaxMasters    in    writing    via    e-mail    to    james.arline@txmsttr.com    and
7   info@taxmastr.com to suspend all activities, to cancel the contract, and provide a full
8   refund of any and all funds received.   At that point, no services had yet been
9   provided to Delong by TaxMasters to earn any fee.   To ensure delivery, Delong
10  printed out the same e-mail and faxed it to Arline at Defendants' fax number that
11  day. *See attached* Exhibit "N".   Delong also revoked the IRS Power of Attorney he
12  had previously granted to Defendants by e-mail on October 24, 2008 by e-mail and
13  facsimile. *See attached* Exhibit "O".

14         56.    Instead of agreeing to cancel the contract, on November 6, 2006 Delong
15  received a package from TaxMasters' offices in Texas notifying him that TaxMasters
16  was proceeding with the contract.   The package was postmarked November 3, 2008,
17  yet the letter was backdated to October 23, 2008.   *See attached* Exhibit "M". On
18  November 6, 2008, Delong sent a letter to TaxMasters offices in Houston, Texas, via
19  certified mail, confirming this.   That certified letter was received by Defendants in
20  Houston on November 7, 2010. *See attached* Exhibit "P".

21         57.    On or about October 27, 2008, Delong complained to the Better
22  Business Bureau in Houston Texas and his bank regarding his dealings with
23  Defendants and Defendants' deceptive conduct and practices.

24         58.    TaxMasters refused to return the $3,000.00 Delong paid them.

25         59.    While eventually Delong received credit from his bank of the $3000
26  that TaxMasters refused to refund directly, he has nevertheless, incurred out of
27  pocket loss as a result of Defendants' unlawful and deceptive conduct complained of

28

1   herein, including but not limited to payment for facsimile costs, certified mailing

2   costs, printing, other transaction costs and lost interest on his money. *See attached*

3   Exhibit "Q".

4   **F.    Plaintiff Dennis Holmes' Transaction with Defendants**

5       60.    On or about May 1, 2009, Dennis Holmes contacted TaxMasters'

6   Houston, Texas offices via telephone for a free consultation regarding a tax dispute

7   he had with the IRS pertaining to taxes claimed due by the IRS.

8       61.    Holmes spoke with a "tax consultant" named Samuel Hamilton at

9   TaxMasters' offices in Houston.

10      62.    During the telephone call between Holmes and TaxMasters, Holmes

11  entered into a contract with TaxMasters for tax relief services.   During that call

12  Plaintiff agreed to pay TaxMasters $3,150.00 in full for their services.   During that

13  call, Holmes provided TaxMasters his bank routing number and authorized a

14  deduction from his bank account at America Security Bank of $1,600.00.

15  TaxMasters made said deduction by depositing a computer-generated check (No.

16  8000) in the amount of $1,600.00 drawn against Holmes' account on May 1, 2009.

17      63.    At the time, TaxMasters had not yet provided Holmes any written

18  Engagement Agreement or other documents or disclosures.   Only after the

19  aforementioned telephone call ended did Plaintiff receive a written engagement

20  agreement and other documents from Defendants via fax.   Holmes never signed or

21  returned that contract to TaxMasters.   The only document that Holmes returned to

22  TaxMasters was a power of attorney form.

23      64.    The terms not disclosed to Holmes prior to his entering into a contract

24  and providing the initial payment were material omissions.   Holmes relied to his

25  financial detriment on Defendants' conduct and omissions.   Had these terms been

26  made clear and disclosed to Holmes before authorizing payment, he would not have

27  entered into the contract and paid TaxMasters any money.   Because material terms

28

SECOND AMENDED COMPLAINT (CLASS ACTION)                                            22

were withheld, in a manner typical of other class member's transactions, Holmes (like other class members) was deprived of the opportunity to make an informed decision prior to entering into the contract and paying Defendants money.

65.     On or about May 15, 2009, Holmes realized that he could deal with the I.R.S. directly regarding his debt obligation.  In turn, Holmes called TaxMasters and cancelled his contract.  Holmes told TaxMasters not to perform any work on his file, to refund any fees paid and not to make further charges against his account.  He followed this up by faxing TaxMasters written notification stating that he was cancelling the contract and wanted a refund of any fees paid, which TaxMasters received on May 15, 2009.

66.     TaxMasters did not provide Holmes any refund.  Instead, TaxMasters charged an additional $1,550.00 against Holmes' bank account on July 1, 2009.

67.     Personnel at Holmes' bank informed him that they could not reverse the charges and/or prevent unauthorized future withdrawals, suggesting that Holmes close his existing checking account and open a new one.  Holmes followed their advice and closed his existing checking account to protect against future withdrawals by TaxMasters.

68.     At the time Holmes cancelled the contract and demanded a refund, TaxMasters had performed no substantive work on Holmes behalf to negotiate and settle his debt to the I.R.S.

69.     To date, TaxMasters has refused to refused to return the $3,150.00 Holmes paid them, despite doing no work to earn the fee.

70.     By reason of the foregoing unlawful, unfair and unconscionable conduct of Defendants, both Delong and Holmes, typical of other class members, were injured, damages and suffered out of pocket loss.

---

SECOND AMENDED COMPLAINT (CLASS ACTION)                                                    23

## VI.   CLASS ACTION ALLEGATIONS

71.   This action is brought as a class action and may properly be so maintained pursuant to Fed. R. Civ. P. 23 and other applicable rules of civil procedure.   This action seeks recovery of actual damages, restitution, injunctive and equitable relief arising from Defendants' unfair business practices.

72.   **Class Definition**:  The Class sought to be represented in this action is defined as follows:

> All persons residing in California who, during the Class Period, contracted with TaxMasters for services and paid TaxMasters money.  (hereinafter, the "Class").

The Class Period dates back four years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was originally filed (February 14, 2011) and continues through the present and the date of judgment. Excluded from the Class are: (a) any officers, directors or employees of the Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case.

73.   **Numerosity of the Class.**   Members of the class are so numerous that their individual joinder herein is impracticable.  The precise number of members of the class and their addresses are presently unknown to Plaintiff, but is believed to each exceed 500 people.   The precise number of persons in the class and their identities and addresses may be ascertained from Defendants' records. If deemed necessary by the Court, members of the class may be notified of the pendency of this action by mail and/or email.

74.   **Ascertainable Class**. The proposed Class is ascertainable.   The litigation of the questions of fact and law involved in this action will resolve the

1    rights of all members of the Class and hence, will have binding effect on all class

2    members. These Class Members can be readily identified from business records,

3    billing systems, and telephone records of the Defendants and other means readily

4    available to the Defendants, and thus by the Plaintiff, through minimally intrusive

5    discovery.  The class is numerous.  Joinder of all class members is impracticable

6    due to the relatively small monetary recovery for each class member in comparison

7    to the costs associated with separate litigation and likelihood that due to the nature

8    of the underlying tax disputes that class members faced when initially contacting

9    Defendants, class members are financially strapped.

10        75.    **Common Questions of Fact and Law Exist and Predominate**

11   **over Individual Issues.**   There is a well-defined community of interest in

12   the questions of law and fact involved affecting the parties to be

13   represented. These common questions of law and fact exist as to all

14   members of the class and predominate over the questions affecting only

15   individual members of the class.  These common legal and factual questions

16   include without limitation:

17            a.  whether TaxMasters altered and/or breached class members contracts by

18                changing and/or adding terms after receiving the initial payments,

19                without consideration;

20            b.  whether TaxMasters failed to provide class members the required

21                rescission period under Bus. & Prof. Code § 17528;

22            c.  whether TaxMasters falsely and deceptively represented, marketed

23                and/or advertised that it provided "free consultations;"

24            d.  whether TaxMasters made material omissions prior to the time it entered

25                into contracts with Plaintiffs and the class

26

27

28

SECOND AMENDED COMPLAINT (CLASS ACTION)                                                    25

e.  whether TaxMasters, a corporation, sells legal services and advice and as such, has engaged in the unauthorized practice of law, rendering any contract void and fees subject to refund;

f.  whether TaxMasters engages in illegal, unfair, deceptive, misleading, unconscionable, unlawful or fraudulent business practices prohibited by the CLRA and/or the UCL;

g.  whether the Class is entitled to an accounting, restitution, disgorgement, damages and/or other relief due to Defendants' violations as described in this Complaint; and

h.  whether an injunction is necessary in order to prevent Defendants from continuing to engage in illegal activity.

76.  **Typicality.**   The claims of both Plaintiffs DeLong and Holmes are typical of the claims of the Class.   Plaintiffs and all Class members contracted with TaxMasters to reduce their tax liability during the Class Period. Plaintiffs and all Class members paid a substantial up-front fee, only to thereafter, have the contractual terms altered by Defendants and the fees treated as non-refundable.   Plaintiffs and all Class members have been the subject of Defendants' unfair, illegal, fraudulent and deceptive business practices as described herein.  The relief sought is common, unitary, and class-wide in nature.

77.  **Adequacy.** The named Plaintiffs are adequate representatives of the Class on whose behalf this action is prosecuted.  Plaintiffs' interests do not conflict with the interests of the Class.   Plaintiffs have retained competent counsel with experience in class action litigation and will prosecute this action vigorously.   As a result, Plaintiffs can fairly and adequately represent and protect the interests of the class in that there are no conflicts between their interests and the interests of other class members, this action is not collusive, the named Plaintiffs and their counsel have the necessary

1   resources to litigate this action, and counsel has the experience and ability required

2   to prosecute this case as a class action.

3         78.   **Community of Interest**. The proposed Class has a well defined

4   community of interest in the questions of fact and law to be litigated. The common

5   questions of law and fact are predominant with respect to the liability issues, relief

6   issues and anticipated affirmative defenses. The named Plaintiffs have claims

7   typical of the Class members.

8         79.   **Superiority of Class Adjudication**. The certification of a class in this

9   action is superior to the litigation of a multitude of cases by members of the

10   putative class. Class adjudication will conserve judicial resources and will avoid

11   the possibility of inconsistent rulings. Equity dictates that all persons who stand to

12   benefit from the relief sought herein should be subject to the lawsuit and hence

13   subject to an order spreading the costs of the litigation among the class members in

14   relationship to the benefits received. The economic damages, restitution and

15   other potential recovery for each individual member of the Class are modest,

16   relative to the substantial burden and expense of individual prosecution of

17   these claims. Given the amount of the individual class members' claims,

18   few, if any, class members could afford to seek legal redress individually for

19   the wrongs complained of herein. Such concerns are particularly acute here,

20   where the class consists largely of people who lack resources to even pay the

21   full amount of taxes claimed due by the I.R.S. Even if the members of the

22   class themselves could afford individual litigation, the court system could

23   not. Individualized litigation presents a potential for inconsistent or

24   contradictory judgments. Individualized litigation increases the delay and

25   expense to all parties and the court system presented by the complex legal

26   and factual issues of the case. By contrast, the class action device presents

27   far fewer management difficulties, and provides the benefits of single

28

---

adjudication, economy of scale, and comprehensive supervision by a single court.

80.   In the alternative, the above-referenced class may be certified because:

a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual class members' claims which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudications, or which would substantially impair or impede the ability of other class members to protect their interests; and,

c. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the class.

## VII. FIRST CAUSE OF ACTION

## FOR RECISSION OF CONTRACT

81.   Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

82.   The contract between Defendants and each class member, including Plaintiffs, is formed when Defendants demand and receive the initial payment from the consumer during the initial telephone consultation.

83.   Only after the class member has entered into a contract with Defendants and provided an initial payment based on the terms then-disclosed do Defendants

1    send the consumer a written contract disclosing new, different and additional terms,

2    without providing additional consideration.   Such terms are material but lack valid

3    consideration.

4         84.   In the initial sales call, TaxMasters' representatives misrepresent, omit

5    and/or fail to disclose important aspects of TaxMasters' service and the terms on

6    which they are offered, including: the fact that TaxMasters treats all fees paid as non-

7    refundable; the fact that TaxMasters will not begin working on a client's case until

8    he/she has paid all of the installment payments agreed to; that additional charges (at

9    rates up to $950 per hour) may be imposed at Defendants discretion when they

10   subjectively feel the undisclosed "budgeted time" and hourly rates allocated to the

11   initial fee previously paid is exhausted; that Defendants alone may unilaterally

12   terminate the agreement "without refund" (even if services are never performed)

13   should they subjectively feel the client is uncooperative or "abusive;" that the work

14   will actually not be performed by Defendants but be subcontracted to other

15   undisclosed persons or entities to perform and for which the class member waives

16   important rights to proceed against; that Defendants can sue the Class member for

17   unlimited damages, but class members can only proceed against Defendants for a

18   maximum recovery equal to 20% of the contracted fee; that all disputes the class

19   member has against Defendants are limited and must be arbitrated in Houston, Texas

20   while Defendants, in contrast, retain their right to sue the class member in a state or

21   federal court of their choosing with no limitation on claims or recoveries.

22        85.   Further, Defendants fail to provide the required rescission period under

23   Cal. Bus. & Prof. Code §17538 *et seq.*, but instead treat all fees paid by class

24   members as non-refundable even when no services have yet to be performed.  If a

25   consumer upon receiving the written contract attempts to reject the newly disclosed

26   terms in the written document, Defendants claim that the consumer is already

27   contractually bound and that it is entitled to keep all fees collected (plus other future

28

SECOND AMENDED COMPLAINT (CLASS ACTION)                                                      29

1   scheduled installment payments) despite the fact no work has been done or services

2   performed to earn the fee.  Thus, consumers are under financial duress and have no

3   choice but to go forward or else they risk losing the entire fee paid (plus any future

4   scheduled installment payments to be debited from their accounts) without receiving

5   any tax relief services in exchange.

6        86.    Prior to the time the consumer makes his/her first payment to

7   Defendants, Defendants do not disclose in its offering or advertisements that all fees

8   (plus other future scheduled installment payments) will be immediately treated by

9   Defendants as completely non-refundable.  Defendants' advertisements, website and

10  other offerings (http://www.txmstr.com) do not disclose to consumers in the class

11  that once the first payment is made, all fees will be immediately treated by

12  Defendants as completely non-refundable.  Defendants' telephone solicitations do not

13  disclose to consumers in the class that once the first payment is made; all fees will be

14  immediately treated by Defendants as completely non-refundable.  *See e.*g., Exhibit

15  B (Transcript of sample class member-Defendants call, not mentioning any no-

16  refund policy).  Such conduct violates, *inter alia*, Cal. Bus. & Prof. Code §17538 *et*

17  *seq*.    Among, other things, Cal. Bus. & Prof. Code §17538 requires a 30 day

18  rescission/refund period.   Further, if the services sold are not fully provided within

19  30 days from the initial date of the sale, the opportunity for a refund must be

20  provided. Bus. & Prof. Code §17538.

21  As such, the contracts are unconscionable, unlawful, lack mutuality void,

22  unenforceable and should be rescinded.  Alternatively, to the extent Defendants

23  attempt to alter the original contract by imposing new terms, they breach the original

24  contract.  All fees collected from class members should be refunded, along with all

25  other damages, penalties and other relief that may be appropriate, including

26  reasonable attorneys' fees and costs.

27

28

---

# VIII. SECOND CAUSE OF ACTION

## (Unlawful /Void Contract For Sale of Legal Services)

87.    Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

88.    Defendants sell legal and other professional services to class members. *See, e.g.,* Exhibit "B", at pp. 8, 12, 19, 24-25:

> This is definitely something we can help you out with. One of our, in fact our main audit attorney, his name is Clyde Miller, you'll be, you'll be glad to know he's never lost a case.
>
> * * *
>
> So you're looking at $6,500 for us to take over the case and get all this taken care of. Now, again, I stress to you that, that Clyde Miller has never lost a case. --.
>
> * * *
>
> ...and we don't typically take on case that we know we're, that we know we can't win.
>
> * * *
>
> Because what we're going to do is tie, we're going to tie it up in litigation as long as we can.
>
> * * *
>
> Then we start building a case, while we are putting them, you know, while were stalling them with, you know, tying them up in litigations and everything else and buying as much time as possible. You know, we want to try to stretch this out as long as we can, because what's, what happens here is the auditor it going to get tired of waiting, and he's just going to, he'll either drop the case and say forget about it and move on to the next person, or you know, he'll go ahead and try to follow through with it, in which case, you know, we're, we're more than welcome to invite that, bring it on, in other words. You know, we, by the time, by the time they get done with all the litigation, we'll be ready for the case and have all the proof and documentation that we need, and it's at that point we pretty much just lay it down on the table and say listen, this is what it is, you know, you can scream and moan all you want to about this and that, but we have, right here in black and white, and according to tax article four, section six, you know, this is what's going on, this is the right stuff that we need. We, it's just a matter of knowing the laws and knowing what your rights are, and we do.
>
> Like I told you earlier, Clyde Miller has never lost a case. We actually do more audits in one month than most firms do in a year and most tax attorneys do in a lifetime, so audits are one of our main things.

1     89.    Defendants contract to serve as class members' agents with regard to

2 legal claims and disputed debts and liabilities.

3     90.    Defendants sell class members services which require the provision of

4 professional legal judgment, legal discretion, legal analysis and advice with regard to

5 legal claims and disputed debts and liabilities. *See attached* Exhibit "A".

6     91.    Corporations cannot sell legal services performed by their employees,

7 even if the employees are licensed to practice law in California.

8     92.    While Defendants sell legal services, they are not licensed to practice

9 law in any state.  By providing legal judgment, legal discretion, legal analysis and

10 advice with regard to legal claims and disputed debts and liabilities and selecting and

11 preparing legal instruments and documents, and charging consumers a fee therefore,

12 Defendants rendered services which cannot lawfully be rendered by a person not

13 admitted to practice law in the State of California for a fee or other compensation.

14 Any such contract between Defendants and class members for legal services is

15 unlawful and void.

16     93.    As a result of the foregoing, all fees collected from class members

17 should be refunded, along with all other damages and other relief that may be

18 appropriate, including reasonable attorneys' fees and costs.

## IX. THIRD CAUSE OF ACTION

### FOR VIOLATION OF *CONSUMER LEGAL REMEDIES ACT § 1750*

### *(INJUNCTIVE RELIEF ONLY)*

22     94.    Plaintiffs fully incorporate by reference herein all of the above

23 paragraphs, as though fully set forth herein.

24     95.    Plaintiffs bring this action individually on behalf of themselves, on

25 behalf of the Class, and on behalf of the general public pursuant to *§ 1750 of the*

26 *Consumer Legal Remedies Act.*

27

28

---

96.     Plaintiffs and the purported class members are "consumers" within the meaning of *California Civil Code § 1761(d)*, who purchased goods or services, primarily for personal, family, or household use.

97.     Each Defendant is a "person" as defined by *California Civil Code § 1761(c)*.

98.     Venue is proper pursuant to *California Code of Civil Procedure § 1780(c)* because a substantial portion of the transactions, the subject matter of the above-captioned action, occurred in San Bernardino and Los Angeles Counties. *See, Declaration of Jeffery DeLong* filed concurrently with this Second Amended Complaint.

99.     The services described above were bought by Plaintiffs and by other consumers similarly situated for tax debt relief, and as such are subject to the requirements of the Consumers Legal Remedies Act and other consumer protection laws of the various states where Plaintiff Class members reside.

100.    Plaintiffs are informed and belief, and thereon alleges, that TaxMasters intended their misrepresentations, omissions and/or advertisements to result in the above-mentioned "bait and switch" tactics, and to receive up-front fees from consumers similarly situated to Plaintiffs.   Only after receiving funds from class members like Plaintiffs do Defendants reveal the above-described omitted terms,

101.    Defendants' insertion of terms in its standard-form contracts, *inter alia*, purporting to make fees already paid immediately non-refundable, for class members in California to arbitrate disputes over fees already paid in Harris County, Texas, and to pay all related fees and costs, is substantively and procedurally unconscionable. Such terms are contrary to, *inter alia*, California law and Tex. Bus. & Com. Code § 17.46 *et seq.* and California Business and Professions Code § 17538(a) and (d).   At least one other Court has found such terms to be procedurally and substantively

1    unconscionable, and thus, unenforceable.  Order, *Antkowiak v. TaxMasters, et al,*
2    2:2-10-CV-03331-LS, 2011 WL 941391 (E.D.Pa. March 17, 2011).

3         102.  Upon information and belief, Defendants' salespersons use scripted
4    sales manuals.

5         103.  Upon information and belief, Defendants' salespersons intentionally
6    omit the fact that Defendants have a no refund policy.

7         104.  Pursuant to California Business and Professions Code § 17538(d),
8    Defendants are required to notify consumers of their refund policy in writing before
9    accepting payment.

10        105.  It is commonly known that monies paid for services are generally
11   refundable before said services are rendered.

12        106.  Plaintiffs believed that the "retainer" they paid would be fully
13   refundable upon demand.

14        107.  Had Plaintiffs known that the retainer was not refundable, they would
15   not have retained Defendants.

16        108.  Had Plaintiffs known that the retainer was not refundable, they would
17   not have provided Defendants with their credit/debit card and/or electronic funds
18   transfer information.

19        109.  Defendants' failure to inform customers during the telephone
20   sales/solicitation process of their no refund policy violates California Civil Code
21   §1770(a)(14).

22        110.  Defendants have engaged and continue to engage in deceptive practices,
23   unlawful methods of competition, and/or unfair acts as defined by *California Civil*
24   *Code § 1750, et seq.* to the detriment of Plaintiffs and the Class members.  Plaintiffs
25   and the Class members have suffered, and continue to suffer, harm as a proximate
26   result of the violations of law and wrongful conduct of each and every Defendant as
27   alleged herein.

28

---

SECOND AMENDED COMPLAINT (CLASS ACTION)                                          34

1    111.   Defendants have violated Civil Code §§1770(a)(5), (7), (14) and (19),

2    through the acts alleged herein, thereby entitling Plaintiffs and members of the class

3    to relief under Civil Code §1780 by, *inter alia*:

4             a)     Representing that a transaction confers or involves rights,

5                    remedies or obligations which it does not have or involve, or

6                    which are prohibited by law, in violation of §1770(a)(14); and

7             b)     Inserting an unconscionable provision in a contract, in violation

8                    of §1770(a)(19).

9    112.   Defendants' violations of Civil Code §1770 described above present a

10   continuing threat to class members and members of the public in that Defendants are

11   continuing to engage in these practices, is continuing to refuse to refund amounts

12   paid by consumers and will not cease until an injunction is issued by the Court.

13   Unless Defendants are enjoined from continuing to engage in these practices,

14   Plaintiffs and the members of the Class, who lack an adequate remedy at law to deter

15   Defendant's wrongful conduct, will be irreparably harmed.

16   113.   By certified letter dated February 14, 2011, mailed as directed in Civil

17   Code section 1782, Plaintiff Delong notified Defendants of its violations of the

18   Consumer Legal Remedies Act and demanded that Defendants provide a remedy that

19   rectifies its conduct.  Defendants received said letter on February 17, 2011 but to

20   date have not agreed to comply with any of the demands made in the letter or to

21   refund class members any fees.

22   114.   As a direct and proximate result of the aforementioned acts, Plaintiffs

23   and each member of the class they represent, have suffered injury, damage and out-

24   of-pocket loss.  Plaintiffs and the members of the class are therefore entitled to

25   injunctive and declaratory relief, an award of attorneys' fees and costs against

26   Defendants pursuant to the provisions of Civil Code § 1780(d).

27

28

# X. FOURTH CAUSE OF ACTION

## FOR VIOLATION OF *CONSUMER LEGAL REMEDIES ACT § 1750 (DAMAGES)*

### (Brought By Plaintiff DeLong Only on Behalf of the Class)

115.   Plaintiff Jeffery DeLong fully incorporates by reference herein all of the above paragraphs, as though fully set forth herein.

116.   Plaintiff DeLong brings this action individually on behalf of himself, on behalf of the Class, and on behalf of the general public pursuant to *§ 1750 of the Consumer Legal Remedies Act.*

117.   Plaintiff DeLong and the purported class members are "consumers" within the meaning of *California Civil Code § 1761(d)*, who purchased goods or services, primarily for personal, family, or household use.

118.   Each Defendant is a "person" as defined by *California Civil Code § 1761(c)*.

119.   Venue is proper pursuant to *California Code of Civil Procedure § 1780(c)* because a substantial portion of the transactions, the subject matter of the above-captioned action, occurred in San Bernardino and Los Angeles Counties. *See, Declaration of Jeffery DeLong* filed concurrently with this Second Amended Complaint.

120.   The services described above were bought by Plaintiff DeLong and by other consumers similarly situated for tax debt relief, and as such are subject to the requirements of the Consumers Legal Remedies Act and other consumer protection laws of the various states where Plaintiff Class members reside.

121.   Plaintiff DeLong is informed and believes, and thereon alleges, that Defendants intended their misrepresentations and/or advertisements to result in the above-mentioned "bait and switch" tactics, and to receive up-front fees from consumers similarly situated to Plaintiff DeLong.

122.   Defendants' insertion of terms in its standard-form contracts, *inter alia*, purporting to make fees already paid immediately non-refundable, for class members in California to arbitrate disputes over fees already paid in Harris County, Texas, and to pay all related fees and costs, is substantively and procedurally unconscionable. Such terms are contrary to, inter alia, California law and Tex. Bus. & Com. Code § 17.46 *et seq.* and California Business and Professions Code § 17538(a) and (d).

123.   Upon information and belief, Defendants' salespersons use scripted sales manuals.

124.   Upon information and belief, Defendants' salespersons intentionally omit the fact that Defendants have a no refund policy.

125.   Pursuant to California Business and Professions Code § 17538(d), Defendants are required to notify consumers of their refund policy in writing before accepting payment.

126.   It is commonly known that monies paid for services are generally refundable before said services are rendered.

127.   Plaintiff DeLong believed that the "retainer" he paid would be fully refundable upon demand.

128.   Had Plaintiff DeLong known that the retainer was not refundable, he would not have retained Defendants.

129.   Had Plaintiff DeLong known that the retainer was not refundable, he would not have provided Defendants with his credit/debit card and/or electronic funds transfer information.

130.   Defendants' failure to inform customers during the telephone sales/solicitation process of their no refund policy violates California Civil Code §1770(a)(14).

131.   Defendants have engaged and continue to engage in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by *California Civil*

1    *Code § 1750, et seq.* to the detriment of Plaintiffs and the Class members.  Plaintiffs

2    and the Class members have suffered, and continue to suffer, harm as a proximate

3    result of the violations of law and wrongful conduct of each and every Defendant as

4    alleged herein.

5        132.    Defendants have violated Civil Code §§1770(a)(14) and (19), through

6    the acts alleged herein, thereby entitling Plaintiffs and members of the class to relief

7    under Civil Code §1780 by, *inter alia*:

8        a)    Representing that a transaction confers or involves rights, remedies or

9              obligations which it does not have or involve, or which are prohibited

10             by law, in violation of §1770(a)(14); and

11       b)    Inserting an unconscionable provision in a contract, in violation of

12             §1770(a)(19).

13       133.    Defendants' violations of Civil Code §1770 described above present a

14   continuing threat to class members and members of the public in that Defendants are

15   continuing to engage in these practices, is continuing to refuse to refund amounts

16   paid by consumers and will not cease until an injunction is issued by the Court.

17   Unless Defendants are enjoined from continuing to engage in these practices,

18   Plaintiffs and the members of the Class, who lack an adequate remedy at law to deter

19   Defendant's wrongful conduct, will be irreparably harmed.

20       134.    By certified letter dated February 14, 2011, mailed as directed in Civil

21   Code section 1782, Plaintiff DeLong notified Defendants of its violations of the

22   Consumer Legal Remedies Act and demanded that Defendants provide a remedy that

23   rectifies its conduct.  Defendants received said letter on February 17, 2011 but to

24   date have not agreed to comply with any of the demands made in the letter or to

25   refund class members any fees.  To date, Plaintiff DeLong has received no response

26   to his CLRA Notice/Demand.

27

28

135.  As a direct and proximate result of the aforementioned acts, Plaintiff DeLong and each member of the class he represents, has suffered injury, damage and out-of-pocket loss.   Plaintiff DeLong and the members of the class are therefore entitled to actual and enhanced statutory damages an award of attorneys' fees and costs against Defendants pursuant to the provisions of Civil Code § 1780(d).

## XI. FIFTH CAUSE OF ACTION

### FOR VIOLATION OF *BUSINESS AND PROFESSIONS CODE § 17200*
### *(VIOLATION OF BUSINESS AND PROFESSIONS CODE §17538)*

136.  Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

137.  Plaintiffs both bring this action individually, on behalf of the Class, and on behalf of the general public pursuant to § 17200 *et. seq*. of the Bus. & Prof. Code, the Unfair Competition Act (the "UCL").

138.  Plaintiffs bring this claim on behalf of the Class pursuant to *Bus. & Prof. Code §17204* which prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice."   Plaintiffs and the Class seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.   Both Plaintiffs suffered injury, damage and out of pocket loss as a result of Defendants' unlawful, unfair, unconscionable, deceptive, conduct and practices, as described above. Defendants' conduct, as described above, has been and continues to be detrimental to the Class and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of *Code of Civil Procedure §1021.5*.

139.  California Business and Professions Code § 17538(a) reads as follows:

> It is unlawful in the sale or lease or offering for sale or lease of goods or services,
>
> for any person conducting sales or leases by telephone, the Internet or other electronic means of communication, mail order, or catalog in this state,

---

SECOND AMENDED COMPLAINT (CLASS ACTION)                                                  39

1    including, but not limited to, the offering for sale or lease on television, radio,

2    or the Internet, or by any other electronic means of communication or telecommunications device, of goods

3    or services that may be ordered by mail, telephone, the Internet, or other electronic means of communication or

4    telecommunications device,

5    or for any person advertising in connection with those sales, leases, or advertisements a mailing address,

6    telephone number, or Internet or other electronic address,

7    to accept payment from or for a buyer, for the purchase or lease of goods or services ordered by mail, telephone,

8    the Internet, or other electronic means of communication or telecommunications

9    device,

10   whether payment to the vendor is made directly, through the mail, by means of a transfer of funds from an account

11   of the buyer or any other person, or by any other means,

12   and then permit 30 days,

13   unless otherwise conspicuously stated in the offering or advertisement,

14

15   or unless a shorter time is clearly communicated by the person conducting the sale or lease,

16   to elapse without doing any one of the following things:

17   (1) Shipping, mailing, or providing the goods or services ordered.

18

19   (2) Mailing a full refund or, if payment was made by means of a transfer from an account, (A) crediting the account in the full amount of the debit, or (B) if a third

20   party is the creditor, issuing a credit memorandum to the third party, who shall promptly credit the account in the

21   full amount of the debit.

22   (3) Sending the buyer a letter or other written notice (A) advising the buyer of the duration of an expected delay

23   expressed as a specific number of days or weeks, or proposing the substitution of goods or services of

24   equivalent or superior quality, and (B) offering to make a full refund, in accordance with paragraph (2), within one

25   week if the buyer so requests. The vendor shall provide to the buyer in that letter or written notice a toll-free

26   telephone number or other cost-free method to communicate the buyer's request for a full refund. If the

27   vendor proposes to substitute goods or services, the vendor shall describe the substitute goods or services in

28

detail, indicating fully how the substitute differs from the goods or services ordered.

(4) (A) Shipping, mailing, or providing substitute goods or services of equivalent or superior quality, if the buyer is extended the opportunity to return the substitute goods or services and the vendor promises to refund to the buyer (i) the cost of returning the substitute goods or services and (ii) any portion of the purchase price previously paid by the buyer...

140.   Defendants are "person[s] conducting sales or leases by telephone, the Internet or other electronic means of communication, mail order, or catalog in this state" within the meaning of California Business and Professions Code § 17538.

141.   Defendants "accept payment from or for a buyer, for the purchase or lease of goods or services ordered by mail, telephone, the Internet, or other electronic means of communication or telecommunications" within the meaning of California Business and Professions Code § 17538.

142.   Defendants accept payments "directly, through the mail, by means of a transfer of funds from an account of the buyer or any other person" within the meaning of California Business and Professions Code § 17538.

143.   Defendants permit 30 days to elapse without doing any of the things identified in California Business and Professions Code § 17538(d)(1), (2), (3), or (4).

144.   None of the exceptions specified in California Business and Professions Code § 17538 apply to Defendants, their conduct, or their business practices.

145.   Specifically, Defendants do not perform the services they contract to provide Plaintiffs or members of the Class within thirty days.

146.   Despite Defendants failure to perform, Defendants did not provide a full refund or credit to Plaintiffs or Class members.  In fact, Defendants denied Plaintiffs request for a refund and/or credit.

147.   Despite Defendants failure to perform, Defendants did not send Plaintiffs or Class members a letter and/or written notice advising them of the

1  duration of the expected delay and offering them a full refund and/or credit as

2  specified California Business and Professions Code § 17538(d)(3).

3        148.  Despite Defendants failure to perform, Defendants did not provide

4  Plaintiffs or Class members substitute services of equivalent or superior quality as

5  specified California Business and Professions Code § 17538(d)(4).

6        149.  California Business and Professions Code § 17538(d) reads as follows:

7       A vendor conducting business through the Internet or any
8  other electronic means of communication shall do all of
     the following when the transaction involves a buyer
9       located in this state:

10       (1) Before accepting any payment or processing any
     debit or credit charge or funds transfer, the vendor shall
11       disclose to the buyer in writing or by electronic means of
     communication, such as e-mail or an on-screen notice,
12       the vendor's return and refund policy, the legal name
     under which the business is conducted and, except as
13       provided in paragraph (3), the complete street address
     from which the business is actually conducted...

14        150.  Defendants are vendors that conduct business through the Internet and

15  other electronic means of communication, including but not limited to telephone,

16  facsimile, and electronic e-mail.

17        151.  Defendants accepted payment(s) from Plaintiffs and Class Members by

18  credit/debit card and electronic funds transfer (i.e., checking account withdrawals).

19        152.  Defendants did not disclose their return and refund policy to Plaintiffs

20  and/or Class Members.

21        153.  Plaintiffs like other Class Members relied on Defendants' deceptive,

22  misleading and unlawful conduct and omissions to their detriment.

23        154.  Plaintiffs would not have engaged Defendants had Plaintiffs known that

24  Defendants policy was that they were entitled to keep the higher of either: (1) the

25  minimum "retainer" (i.e., the full amount agreed to with Defendants' salesperson) or

26  (2) the actual time expended and Defendants customary billing rates.

27

28

SECOND AMENDED COMPLAINT (CLASS ACTION)                                                    42

155.   Plaintiffs would not have provided their credit/debit cards and/or electronic funds transfer information to Defendants had Plaintiffs known that Defendants policy was that they were entitled to keep the higher of either: (1) the minimum "retainer" (i.e., the full amount agreed to with Defendants' salesperson) or (2) the actual time expended and Defendants customary billing rates.

156.   Both Plaintiffs contacted Defendants within a few days to cancel their engagement agreement with Defendants and request a full refund.

157.   Upon information and belief, Defendants incurred no costs related to Plaintiffs as they have provided no tax relief and/or other services whatsoever.

158.   Defendants refused to provide Plaintiffs with any refund of any kind.

159.   Defendants and their principals conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable and/or fraudulent business acts and practices in California, and that conduct emanated to and affected Class members throughout California.   As such, the UCL applies to all such transactions and dealings.

160.   The acts complained of herein, and each of them, constitute unfair, unlawful or fraudulent business practices in violation of *Business and Professions Code §17200 et. seq*.   Such acts and violations have not abated and will continue to occur unless enjoined.   Defendants' acts and practices described herein offend established public policies, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

161.   The unfair business practices set forth above have and continue to injure the Class and the general public and cause damages in fact and the loss of money, as described further within.   These violations have unjustly enriched the Defendants at the expense of the Class.   As a result, Plaintiffs, the Class and the general public are entitled to injunctive relief, restitution, and other equitable relief.   Failing to

compensate the Class Members for necessary expenditures constitute restitution of property earned by the consumer.

162. By reason of the foregoing, Plaintiffs and each member of the Class are entitled to recover from Defendant restitution, complete refunds of all fees paid defendants, disgorgement of revenues and profits obtained from unlawful practices, rescission, unpaid expenditures, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable in the circumstances.

## XII. SIXTH CAUSE OF ACTION

### FOR VIOLATION OF *BUSINESS AND PROFESSIONS CODE § 17200*

### *(VIOLATION OF CONSUMER LEGAL REMEDIES ACT)*

163. Plaintiffs fully incorporate by reference herein all of the above paragraphs, as though fully set forth herein.

164. Plaintiffs both bring this action individually, on behalf of the Class, and on behalf of the general public pursuant to § 17200 *et. seq.* of the Bus. & Prof. Code, the Unfair Competition Act (the "UCL").

165. Plaintiffs bring this claim on behalf of the Class pursuant to *Bus. & Prof. Code §17204* which prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." Plaintiffs and the Class seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices. Both Plaintiffs suffered injury, damages in fact and out of pocket loss as a result of Defendants' unlawful, unfair, unconscionable, deceptive, conduct and practices, as described above. Defendants' conduct, as described above, has been and continues to be detrimental to the Class and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of *Code of Civil Procedure §1021.5.*

166.   Defendants' form contract/engagement agreement with Plaintiffs and the Class contains a clause requiring that all disputes be arbitrated in Houston, Harris County, Texas.  Exhibit "A" at 7.  Said clause violates § 17.46(b)(23) of the TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT, TEX. Bus. & COM. CODE § 17.41 *et seq.* (Vernon 2002 & Supp. 2009)("DTPA") and other applicable law.

167.   Defendants' form contract/engagement agreement with Plaintiffs and the Class contains a section titled "Client's Early Termination of Agreement" which states that Defendants are entitled to the *higher* of either: the minimum retainer (the amount initially agreed upon between Defendants and Plaintiffs/Class Members) or the actual time expended at Defendants' standard billing rates.  For all practical purposes, Defendants have a no refund policy.  Said clause violates §17538 of the California Business and Professions Code.

168.   Each of these clauses is unconscionable.

169.   Defendants have violated the California Consumer Legal Remedies Act, Cal. Civil Code § 1750 et seq., specifically § 1770(a)(19) which prohibits "[i]nserting an unconscionable provision in the contract."

170.   Defendants and their principals conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable and/or fraudulent business acts and practices in California, and that conduct emanated to and affected Class members throughout California.   As such, the UCL applies to all such transactions and dealings.

171.   The acts complained of herein, and each of them, constitute unfair, unlawful or fraudulent business practices in violation of *Business and Professions Code §17200 et. seq.*  Such acts and violations have not abated and will continue to occur unless enjoined.   Defendants' acts and practices described herein offend

1    established public policies, and involve business practices that are immoral,

2    unethical, oppressive, and/or unscrupulous.

3        172.   The unfair business practices set forth above have and continue to injure

4    the Class and the general public and cause damages in fact and the loss of money, as

5    described further within.   These violations have unjustly enriched the Defendants at

6    the expense of the Class.   As a result, Plaintiffs, the Class and the general public are

7    entitled to injunctive relief, restitution, and other equitable relief.   Failing to

8    compensate the Class Members for necessary expenditures constitute restitution of

9    property earned by the consumer.

10       173.   By reason of the foregoing, Plaintiffs and each member of the Class are

11   entitled to recover from Defendant restitution, complete refunds of all fees paid

12   defendants, disgorgement of revenues and profits obtained from unlawful practices,

13   rescission, unpaid expenditures, injunctive relief, declaratory relief, the cost of

14   bringing this action (including reasonable attorneys' fees and costs), and any other

15   relief allowed by law and deemed just and equitable in the circumstances.

16                   **XIII. SEVENTH CAUSE OF ACTION**

17        **FOR VIOLATION OF** *BUSINESS AND PROFESSIONS CODE § 17200*

18                   *(VIOLATION OF TEXAS UDAP)*

19       174.   Plaintiffs fully incorporate by reference herein all of the above

20   paragraphs, as though fully set forth herein.

21       175.   Plaintiffs both bring this action individually, on behalf of the Class, and

22   on behalf of the general public pursuant to § 17200 *et. seq.* of the Bus. & Prof. Code,

23   the Unfair Competition Act (the "UCL").

24       176.   Plaintiffs bring this claim on behalf of the Class pursuant to *Bus. &*

25   *Prof. Code §17204* which prohibits unfair competition, defined as "any unlawful,

26   unfair or fraudulent business act or practice."   Plaintiffs and the Class seek

27   compensation for the loss of their property and the personal financial impacts they

28

---

SECOND AMENDED COMPLAINT (CLASS ACTION)                                           46

have suffered as a result of Defendants' unfair business practices. Both Plaintiffs suffered injury, damages in fact and out of pocket loss as a result of Defendants' unlawful, unfair, unconscionable, deceptive, conduct and practices, as described above. Defendants' conduct, as described above, has been and continues to be detrimental to the Class and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of *Code of Civil Procedure §1021.5*.

177. Defendants form contract/engagement agreement contains a venue selection clause that requires that any disputes be arbitrated in Houston, Harris County, Texas. See Exhibit "A" at 7.

178. The dispute resolution terms, waivers and restrictions set forth in Defendants' written contract are unlawful, procedurally and substantively unconscionable, unfair and void and unenforceable.

179. Defendants attempt to add such terms after receiving payment from class members lack mutuality, are unconscionable, unlawful and void. Defendants conduct also violates § 17.46(b)(23) of the TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT, TEX. Bus. & COM. CODE § 17.41 *et seq.* (Vernon 2002 & Supp. 2009)("DTPA") and other applicable law.[1]

180. Defendants do not tell class members residing in California when entering into a contract and receiving payments that the class member has waived

---

[1] (b)   Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

* * *

(23)  filing suit founded upon a written contractual obligation of and signed by the defendant to pay money arising out of or based on a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household, or agricultural use in any county other than in the county in which the defendant resides at the time of the commencement of the action or in the county in which the defendant in fact signed the contract; provided, however, that a violation of this subsection shall not occur where it is shown by the person filing such suit he neither knew or had reason to know that the county in which such suit was filed was neither the county in which the defendant resides at the commencement of the suit nor the county in which the defendant in fact signed the contract;

1   any rights to proceed against any service provider for damages, that he/she must
2   arbitrate disputes in Harris, County, Texas, and pay all costs of arbitration.
3   Defendants, in contrast, do not bind themselves to similar terms and limitations, and
4   retain their right to sue any class member in court without limitation.

5       181.   Defendants and their principals conspired amongst themselves to
6   engage in the above-described unlawful, unfair, unconscionable and/or fraudulent
7   business acts and practices in California, and that conduct emanated to and affected
8   Class members throughout California.   As such, the UCL applies to all such
9   transactions and dealings.

10      182.   The acts complained of herein, and each of them, constitute unfair,
11  unlawful or fraudulent business practices in violation of *Business and Professions*
12  *Code §17200 et. seq*.  Such acts and violations have not abated and will continue to
13  occur unless enjoined.   Defendants' acts and practices described herein offend
14  established public policies, and involve business practices that are immoral,
15  unethical, oppressive, and/or unscrupulous.

16      183.   The unfair business practices set forth above have and continue to injure
17  the Class and the general public and cause damages in fact and the loss of money, as
18  described further within.  These violations have unjustly enriched the Defendants at
19  the expense of the Class.  As a result, Plaintiffs, the Class and the general public are
20  entitled to injunctive relief, restitution, and other equitable relief.   Failing to
21  compensate the Class Members for necessary expenditures constitute restitution of
22  property earned by the consumer.

23      184.   By reason of the foregoing, Plaintiffs and each member of the Class are
24  entitled to recover from Defendant restitution, complete refunds of all fees paid
25  defendants, disgorgement of revenues and profits obtained from unlawful practices,
26  rescission, unpaid expenditures, injunctive relief, declaratory relief, the cost of

27
28

1 | bringing this action (including reasonable attorneys' fees and costs), and any other

2 | relief allowed by law and deemed just and equitable in the circumstances.

3 | ### XIV.  PRAYER FOR RELIEF

4 | WHEREFORE, Plaintiff, Jeffery DeLong and Dennis Holmes, as individuals

5 | and on behalf of those similarly situated, pray for relief and judgment against

6 | Defendants, jointly and severally, as follows:

7 | A.    For an order certifying the class and any appropriate subclasses thereof

8 | and appointing Plaintiff Jeffery DeLong, Dennis Holmes and their counsel to

9 | represent the Class in this litigation;

10 | B.    For an order pursuant to *California Business and Professions Code*

11 | *section 17203* and *California Civil Code section 1780(a)(2)* and other unfair

12 | competition laws and/or consumer protection laws of the various states where

13 | Plaintiff Class members reside enjoining TaxMasters from falsely advertising and/or

14 | charging up-front fees for services it cannot perform.

15 | C.    For judgment against TaxMasters ordering it to restore to Plaintiffs and

16 | the Class Members all amounts which may have been acquired by means of any

17 | practices found by the Court to be contrary to the provisions of *California Business*

18 | *and Professions Code sections 17200, et seq.* and other applicable laws;

19 | D.    For judgment against TaxMasters ordering it to disgorge its unlawfully-

20 | obtained revenues, which may have been acquired by means of practices found by

21 | this Court to be contrary to the provisions of *California Business and Professions*

22 | *Code sections 17200, et seq.* and under other applicable laws;

23 | E.    For judgment against TaxMasters ordering it to pay actual, statutory,

24 | and punitive damages to Plaintiff Jeffery DeLong and Class Members pursuant to

25 | *California Civil Code § 1780(a)* and under other applicable laws;

26 | F.    For judgment against TaxMasters ordering it to pay enhanced statutory

27 | damages of up to $5,000.00 to Plaintiff DeLong and other Class Members who are

28 |

1  disabled and/or senior citizens pursuant to *California Civil Code § 1780(b)* and

2  under other applicable laws;

3      G.    For civil penalties as provided by *California Business and Professions*

4  *Code sections 17206, 17538* and any other applicable laws;

5      H.    For payment of attorneys' fees and costs pursuant to *California Code of*

6  *Civil Procedure section 1021.5* and/or pursuant to the "common fund" doctrine

7  and/or pursuant to equitable principles of contribution and/or other applicable

8  method of awarding attorneys' fees and costs in class actions;

9      I.    For preliminary and permanent injunctive relief prohibiting Defendants

10 from engaging in the wrongful practices alleged in this Complaint;

11     J.    For costs associated with any and all notice to the Class Members

12 pursuant to *California Civil Code section 1781(d)* and other applicable law;

13     K.    For payment of costs of suit incurred herein;

14     L.    For payment of prejudgment interest as provided by law; and

15     M.    For any such further relief as this Court deems equitable, just and

16 proper.

Respectfully submitted,

RIDOUT & LYON, LLP

Dated: March 6, 2011    By:

Christopher P. Ridout, CA Bar No. 143931
Devon M. Lyon, CA Bar No. 218293
Caleb LH Marker, CA Bar No. 269721
555 E. Ocean Boulevard, Suite 500
Long Beach, CA  90802
(562) 216-7380 Telephone
(562) 216-7385 Fax
**Attorneys for Plaintiffs**

SECOND AMENDED COMPLAINT (CLASS ACTION)

# INDEX OF ATTACHED OF EXHIBITS

A. Plaintiff DeLong's Engagement Agreement with Defendants

B. Affidavit of Denise Miranda and Transcript of Telephone Sales Call BetweenTaxMasters and Denise Miranda

C. Affidavit of Curtis J. Smith, Jr.

D. Affidavit of Karen Sanchez

E. Affidavit of Crespin Gonzales

F. Affidavit of Arturo Fierro

G. Affidavit of Rosalinda Fierro, Texas Office of the Attorney General

H. Correspondence to Plaintiff DeLong from Harris County (Texas) District Attorney dated June 16, 2009

I. Defendants' Correspondence to Consumer Denying Refund dated October 26, 2009

J. Defendants' Collection Correspondence to Consumer dated February 12, 2010

K. Defendants' Engagement Agreement Cover Letter to Plaintiff DeLong dated October 20, 2008

L. Plaintiff's E-mail to Defendants dated October 20, 2008

M. Defendants' Correspondence to Plaintiff DeLong dated October 23, 2008

N. Plaintiff's Correspondence to Defendants and Fax Confirmation Log dated October 24, 2008

O. Plaintiff's E-mail to Defendants revoking Power of Attorney dated October 24, 2008 and Fax Confirmation Log

P. Plaintiff DeLong's Correspondence to Defendants dated November 6, 2008 and Certified Mail Receipt

Q. Correspondence to Plaintiff from Bank of America and Plaintiff's Corresponding Certified Mail Receipt dated November 6, 2008

R. Defendants' Hiring Advertisement