Jeffery L. Caufield (SBN 166524)
jeff@caufieldjames.com
Kenneth E. James (SBN 173775)
ken@caufieldjames.com
Matthew D. McMillan (SBN 262394)
mattm@caufieldjames.com
CAUFIELD & JAMES, LLP
2851 Camino Del Rio South, Suite 410
San Diego, California 92108
Telephone: 619-325-0441
Facsimile : 619-325-0231

Attorneys for Defendants TaxMasters,
Inc. and TMIRS Enterprises, Ltd.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY DELONG and DENNIS HOLMES, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TAXMASTERS, INC., a Nevada Corporation, TMIRS ENTERPRISES, LTD., a Texas Partnership, and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No: CV11-01431-ODW-AGR <br><br> TAXMASTERS' OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION <br><br> Date:　　　October 24, 2011 <br> Time:　　　1:30 p.m. <br> Courtroom: 11 <br> Judge:　　　Hon. Otis D. Wright, II <br><br> Action Filed: February 16, 2011 |

# **Table of Contents**

I.   Introduction……………..……………………………………..……...………1

II.  Class Certification Must Be Denied As Plaintiffs Fail To Satisfy The
     Amount in Controversy Requirement of Federal Diversity Jurisdiction…….2

III. Plaintiffs' Proposed Class of California Consumers Fails To Satisfy
     The Rule 23 Requirements…………………….....…………………….....3

     A. Plaintiffs Bear the Burden of Satisfying the Rule 23 Requirements……...3

     B. Plaintiffs' Proposed Class Fails to Satisfy the "Predominance"
        Requirement under Rule 23(b)(3)…………………………………….…...5

        1.  Plaintiffs' Unlawful Business Practices Claims Cannot Be
            Established On a Class-Wide Basis………………………………..6

            a.  Individual Issues Pertaining to Establishing Liability
                Preclude Class Certification……………………………..…..7
            b.  Individual Issues Pertaining to the Type and Amount of
                Damages Preclude Class Certification………………….…..11
            c.  Individual Issues Pertaining to TaxMasters' Affirmative
                Defenses Preclude Class Certification……………………..13

        2.  TaxMasters' Employment of Licensed Attorneys,
            Accountants, and Enrolled Agents Complies With the Law
            In All Respects……………………………………………………14

     C. Plaintiffs' Proposed Class Fails to Satisfy the "Superiority"
        Requirement under Rule 23(b)(3)…………………………………….17

     D. The Proposed Class Fails to Satisfy the "Typicality" Requirement
        Under Rule 23(a)……………………………………………….…..19

TAXMASTERS' OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION

E.  The Proposed Class Fails to Satisfy the "Adequacy" Requirement
Under Rule 23(a)……………………………………………………...21

F.  The Proposed Class Fails to Satisfy the "Commonality" Requirement
Under Rule 23(a)……………………………………………………...23

IV.   The Court Should Bar Plaintiffs' Motion for Failing  to Comply with Strict
Local Rules on Class Certification…………………………………………24

V.    Conclusion………………………………………………………..……25

## <u>Table of Authorities</u>

**Federal Cases**

*Amchem Products, Inc. v. Windsor*
        521 U.S. 591 (1997)………………………………………... ……….…..17

*Blackie v. Barrack*
        524 F.2d 891 (9th Cir.1975)……………………………………….……4

*Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*
        42 F.Supp.2d 821 (N.D. Ill. 1999)……………………………...……18

*Clark v. Time Warner*
        2007 WL 1334965, *1 (C.D. Cal. May 3, 2007)……………………...…25

*Dukes v. Wal-Mart, Inc.*
        509 F.3d 1168 (9th Cir. 2007)…………………………………………22

*Gene and Gene LLC v. BioPay LLC*
        541 F.3d 318 (5th Cir. 2008)…………………………….………..……..5

*Gen. Tel. Co. of Southwest v. Falcon*
        457 U.S. 147 (1982)…………………………………………………4,23

*Gregory v. Finova Capital Corp.*
        442 F.3d 188(4th Cir. 2006)…………………………...……… ….....…17

*Halicki v. Carrol Shelby Intern, Inc.*
        2005 WL 5253338, *20 (C.D. Cal. November 14, 2005)………………….25

Hanlon v. Chrysler Corp.
        150 F.3d 1011 (9th Cir. 1998)………………………...…………....17,20,22

*Hanon v. Dataproducts Corp.*
        976 F.2d 497 (9th Cir. 1992)…………………………...…………... …4,19

*Ingram v. The Coca-Cola Co.*
        200 F.R.D. 685 (N.D. Ga. 2001)……………………… ……….……….5

*In re Genentech, Inc.*
        566 F.3d 1338 (Fed. Cir. 2009)…………………………………….....18

*In re General Motors Corp. Dex-Cool Products Liability Litigation*
   241 F.R.D. 305 (S.D. Ill. 2007)…………………………… …………...…..20

*In re Northern Dist. of Calif., Dalkon Shield IUD Products Liability Litig.*
   693 F.2d 847 (9th Cir. 1982)……………………………… …………….…19

*Kingsbury v. U.S. Greenfiber, LLC*
   2009 WL 2997389, at *10 (C.D. Cal. Sept. 14, 2009)………… ……...……..6

*Lewis v. Casey*
   518 U.S. 343 (1996)…………………………………………………..…….20

*Los Angeles Memorial Coliseum Commission v. National Football League*
   89 F.R.D. 497 (C.D. Cal. 1981)……………………………………...…..…..18

*Maddock v. KB Homes, Inc.*
   248 F.R.D. 229 (C.D. Cal 2007)………………………………... ………....10

*Mazur v. eBay, Inc.*
   257 F.R.D. 563 (N.D. Cal. 2009)…………………………………………...24

*Moore v. Hughes Helicopters, Inc.*
   708 F.2d 475 (9th Cir.1983)………………………………...…………….…..4

*O'Shea v. Littleton*
   414 U.S. 488 (1974)……………………………………………….…..20

*Perez v. Metabolife Int'l., Inc.*
   218 F.R.D. 262 (S.D. Fla. 2003)…………………………….…………..5

*Reed v. Fina Oil & Chem. Co.*
   995 F.Supp. 705 (E.D. TX 1998)………………………………….…..18

*Rutstein v. Avis Rent-A-Car Sys., Inc.*
   211 F.3d 1228 (11th Cir. 2000)……………………………..…………..5

*SEC v. Medical Committee for Human Rights*
   404 U.S. 403 (1972)…………………………………………...………20

*Shein v. Canon U.S.A., Inc.*
   2010 WL 3170788 at *9 (C.D. Cal. Aug. 10, 2010)………………………….6

iv

*St. Paul Mercury Indem. Co. v. Red Cab Co.*
    303 U.S. 283 (1938)……………………………………….…………3

*Stewart v. Winter*
    669 F.2d 328 (5th Cir. 1982)…………………………………... ……..22

*Travel Tags, Inc. v. UV Color, Inc.*
    690 F.Supp.2d 785 (D. MN. 2010)……………………………...…..18

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996)……………………………….…..3,17

*Williams v. Boeing Co.*
    517 F.3d 1120 (9th Cir. 2008)…………………………...…..20

*Zinser v. Accufix Research Institute, Inc.*
    253 F.3d 1180 (9th Cir. 2001)……………………………………4

**State Cases**

*Kaldenback v. Mut. of Omaha Life Ins. Co.*
    (2009) 178 Cal.App.4th 830………………………………….…………6

*People v. California Protective Corp.*
    (1926) 76 Cal.App. 354………………………………………..14

*People v. Merchants Protective Corp.*
    (1922) 189 Cal. 531…………………………………………….…...14

*Wilens v. TD Waterhouse Group, Inc.*
    (2003) 120 Cal.App.4th 746………………………………………6

**Legislative Materials and Statutes**

U.S. Constitution, Art. III, § 2………………………………..…………20

United States Code  28 U.S.C.
    § 1332……………………………………………………………..2
    § 1404…………………………………………………………17,18

Fed.R.Civ.P.
    23……………………………………………………………3-5,17,21
    45……………………………………………………………..……..18
    56………………………………………………………………..…..3

Cal. Civ. Code
    § 1761……………………………………………………………..24
    § 1770………………………………………………………...……6
    § 1783…………………………………………………………....14

Cal. Civ. Proc. Code
    § 339……………………………………………………………..…14

Cal. Bus. & Prof. Code
    § 17538…………………………………………..…………..7,8,24

**Local Rules**
    7-3………………………………………………………….....25
    7-7………………………………………………………...……..3
    23-3……………………………………………………..………24,25

## I.   **INTRODUCTION**

Defendants TaxMasters, Inc. and TMIRS Enterprises, Ltd. (collectively, "TaxMasters" or "Defendants") request that this Court deny class certification as the Plaintiffs fail to satisfy the requirements of Federal Rule of Civil Procedure 23.

In their Motion for Class Certification ("Motion"), Plaintiffs seek to certify a class of California consumers who at various times hired TaxMasters to provide specialized tax services tailored to their particular tax needs.  Class certification must be denied for several reasons:

First, Plaintiffs are barred as a matter of fact from satisfying the amount in controversy requirement of $5,000,000 as they fail to introduce any evidence whatsoever to prove that damages exceed this amount.  To make matters worse, Plaintiffs have completely failed to plead the requisite amount in controversy anywhere in their complaint.  On this basis alone, the Court should deny class certification in its entirety.

Next, Plaintiffs fail to satisfy their burden of proving each and every certification requirement under federal law.  For example, common issues do not "predominate" as the Court must make a case-by-case determination of liability, damages, and the application of affirmative defenses.  TaxMasters' CEO testified that their payment procedure "**depends on the customer**," while further evidence proves that damages will vary greatly from person to person since they each purchased *different* services at *different* rates under *different* refund policies, among other variances.  These and other defects are fatal to Plaintiffs' request for class action treatment, and thus bar certification on this independent basis.

Lastly, this Court should bar Plaintiffs' Motion for failing to observe the strict certification deadline under local rules.  Plaintiffs' certification deadline expired on July 27, 2011.  With the Court having stricken Plaintiffs' *first* certification motion for failing to satisfy the pre-filing "meet and confer"

1    requirement, Plaintiffs should be barred from bringing the instant Motion because

2    their deadline has expired and no additional continuances have been granted.

3         For the reasons discussed below, TaxMasters requests that the Court deny

4    Plaintiffs' Motion and deny their request for class certification with prejudice.

5    **II.   CLASS CERTIFICATION MUST BE DENIED AS PLAINTIFFS FAIL**

6         **TO SATISFY THE AMOUNT IN CONTROVERSY REQUIREMENT**

7         **OF FEDERAL DIVERSITY JURISDICTION**

8         Class certification is barred by Plaintiffs' utter failure to satisfy the amount in

9    controversy requirement of federal diversity jurisdiction.  Plaintiffs invoke 28

10   U.S.C. § 1332 as the basis for this Court's jurisdiction over the instant lawsuit.

11   (Request for Judicial Notice filed in support hereof ("RJN") at ¶ 3, Second Am.

12   Compl. ("SAC") at ¶ 2).  Setting forth the jurisdictional limitations for federal class

13   actions, 28 U.S.C. § 1332(d)(2) provides in relevant part:

14        "The district courts shall have original jurisdiction of any civil action

15        in which the matter in controversy exceeds the sum or value of

16        $5,000,000, exclusive of interest and costs, and is a class action . . . ."

17   Id. Class certification must be denied as Plaintiffs fail to satisfy this fundamental

18   requirement in several respects, each of which warrants denial in its own right.

19        First and foremost, Plaintiffs are barred as a matter of fact from satisfying the

20   amount in controversy requirement in excess of $5,000,000.  Plaintiffs had ample

21   time to collect through discovery the evidence necessary to support this threshold

22   requirement, yet Plaintiffs chose instead to sit on their hands and do nothing until it

23   was too late.  Consequently, Plaintiffs fail to introduce any evidence whatsoever to

24   prove that damages exceed the jurisdictional minimum amount, and Defendants

25   maintain that damages do not satisfy this threshold requirement.

26        Second, the complaint fails to plead the requisite amount in controversy in an

27   amount in excess of $5,000,000 as required by law.  In fact, the complaint fails to

28   allege any amount in controversy whatsoever.  The amount in controversy is

determined from the allegations or prayer of the complaint, both of which are silent in this case. *See, St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). There is no question Plaintiffs have not satisfied this fundamental requirement. Accordingly, certification must be denied on this ground alone.

Third, Plaintiffs' counsel's fleeting attempt to cure this fatal defect in a declaration is equally unavailing. Here, it is counsel's "belief" that this class action is to be valued at $13.8 million dollars. (Marker Decl. ¶ 6). Of course, this opinion is not supported by any concrete evidence, proof of calculations, or even an explanation of the figures used to arrive at this sum. <u>Id</u>. Rather, as counsel's self-serving declaration admits, counsel bases this figure on "[counsel's] review of our case file, public documents on file with the U.S. Securities and Exchange Commission, and the deposition testimony of Defendants' chief executive, Patrick Cox . . . ." <u>Id</u>. Counsel's opinions are wholly unsubstantiated and must be disregarded in their entirety as they offend local and federal rules governing the contents of declarations.[1] (*See*, C.D. L.R. 7-7; *see also*, Fed. R. Civ. P. 56(c)(4)).

Without having satisfied this threshold element, Plaintiffs' proposed class is barred from certification. Plaintiffs' Motion must therefore be denied.

## III. PLAINTIFFS' PROPOSED CLASS OF CALIFORNIA CONSUMERS FAILS TO SATISFY THE RULE 23 REQUIREMENTS

### A. Plaintiffs Bear the Burden of Satisfying the Rule 23 Requirements

Before certifying a class, the Court must conduct a "rigorous analysis" to determine whether Plaintiffs have met their burden of establishing all FRCP 23 requirements. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996). On a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied.

---

[1] For brevity's sake and for the convenience of the Court, see TaxMasters' Evidentiary Objections filed concurrently herewith.

1     *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975); *Gen. Tel. Co. of Southwest v.*

2     *Falcon*, 457 U.S. 147, 160 (1982) ("The class determination generally involves

3     considerations that are enmeshed in the factual and legal issues comprising the

4     plaintiff's cause of action.")  Thus, the Court may consider evidence relating to the

5     merits if the same evidence is also relevant to the determination of whether the Rule

6     23 requirements have been met. *See, Hanon v. Dataproducts, Corp.*, 976 F.2d 497,

7     508 (9th Cir. 1992); *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th

8     Cir.1983) ("some inquiry into the substance of a case may be necessary to ascertain

9     satisfaction of the commonality and typicality requirements of Rule 23(a)").

10    Plaintiffs bear the burden of demonstrating that they have met each of the following

11    four (4) requirements of Rule 23(a):

12                 (1)  The class is so numerous that joinder of all members is

13                      impracticable;

14                 (2) There are questions of law or fact common to the class;

15                 (3) The claims or defenses of the representative parties are typical of

16                      the claims or defenses of the class; and

17                 (4) The representative parties will fairly and adequately protect the

18                      interest of the class. Fed. R. Civ. P. 23(a)(1)-(4).

19    If all four requirements are satisfied, then Plaintiffs must meet at least one of three

20    additional requirements set forth in Rule 23(b). *Hanon*, 976 F.2d at 508-509; *Zinser*

21    *v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here,

22    Plaintiffs seek certification under Rule 23(b)(3), which requires Plaintiffs to

23    demonstrate that questions of law or fact common to the class predominate and that

24    a class action is superior to other methods available for adjudicating the controversy

25    at issue.  *See*, Fed. R. Civ. P. 23(b)(3).  As demonstrated below, Plaintiffs' alleged

26    California class claim fails to satisfy the "predominance" and "superiority"

27    requirements under Rule 23(b)(3) and the "typicality," "commonality," and

28    "adequacy" requirements under Rule 23(a).

**B.**   **Plaintiffs' Proposed Class Fails to Satisfy the "Predominance"**
**Requirement under Rule 23(b)(3)**

Class certification must be denied as Plaintiffs fail to satisfy their burden of establishing the "predominance" requirement.  "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1234 (11th Cir. 2000).  Common issues of fact and law predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001); *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (predominance requirement "far more demanding" than Rule 23(a)(2)'s commonality requirement).

Where, after adjudication of the class-wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3). *See, Perez v. Metabolife Int'l. Inc.,* 218 F.R.D. 262, 273 (S.D. Fla. 2003) (declining class certification in part because "any efficiency gained by deciding the common elements will be lost when separate trials are required for each class member in order to determine each member's entitlement to the requested relief").

Certification must be denied as Plaintiffs fail to demonstrate that common issues predominate over individual issues, as shown below.

/ / /

/ / /

/ / /

/ / /

/ / /

1

### 1.   <u>Plaintiffs' Unlawful Business Practices Claims Cannot Be</u>
<u>Established On a Class-Wide Basis</u>

Common issues do not predominate as to Plaintiffs' CLRA and UCL, thereby requiring that this Court deny class certification.[2]

Pursuant to the CLRA, it is unlawful to use "unfair methods of competition or deceptive acts or practices" in the sale of goods or services to a consumer. Cal. Civ. Code § 1770(a).  For Plaintiffs to maintain a putative class action under the CLRA, each member of the proposed class must show that he or she suffered damage by relying on Defendants' alleged misrepresentations or omissions. *Shein v. Canon U.S.A., Inc.*, 2010 WL 3170788 at *9 (C.D. Cal. Aug. 10, 2010), *citing Wilens v. TD Waterhouse Group, Inc.*, 120 Cal.App.4th 746, 755 (2003).

Under the "fraudulent" prong of the UCL, relief is available without individualized proof <u>only</u> where there has been "uniform conduct to mislead the entire class." *Shein*, *supra*, at *7, *citing Kaldenback v. Mut. of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 850.  Thus, reliance cannot be inferred unless the alleged misrepresentation was material. *See, e.g., Kingsbury v. U.S. Greenfiber, LLC*, 2009 WL 2997389, at *10 (C.D. Cal. Sept. 14, 2009) ("Any inference of reliance that could be drawn from [defendant's] alleged misrepresentations are overcome by the overwhelming evidence that [plaintiff] did not rely on any of the statements at issue.")).

Here, Plaintiffs allege that TaxMasters systematically failed and refused to disclose material terms in the contract prior to charging its customers for its services.  To this end, Plaintiffs rely on carefully-manipulated excerpts of Patrick Cox's deposition testimony and naked allegations in the complaint to make a case for certification.  Truth be told, other than mere unsubstantiated allegations, Plaintiffs offer <u>no evidence</u> of a company-wide policy or scheme to ensnare

---

[2] Pursuant to the Court's Order on Defendants' Motion to Dismiss, Plaintiffs' Texas Deceptive Trade Practices Act claim has been dismissed, with prejudice, and therefore is not addressed herein. (RJN at ¶ 4, Ex. D).

TaxMasters' customers in the manner alleged.  Plaintiffs' consumer protection claims under the CLRA and UCL fail to satisfy the "predominance" requirement in multiple respects, as explained below.

### a. *Individual Issues Pertaining to Establishing Liability Preclude Class Certification*

First, common issues do not predominate as the Court will be required to conduct a highly individualized evaluation into each class member's effort to establish liability.  In particular, the Court must evaluate evidence of each class member's contractual agreement with TaxMasters and the circumstances leading up to its formation.  Causation, deception, reliance, and injury must be individually established because: (1) Plaintiffs' cannot allege uniform conduct given that customers received verbal and written disclosures, copies of written agreements, and finance charges at times which greatly varied from customer to customer; and (2) Plaintiffs fail to offer any admissible evidence to demonstrate how they will establish on a class-wide basis that TaxMasters failed to make the necessary disclosures prior to charging each customer and/or at a time before the customer had a reasonable opportunity to review, sign, and return the contract.  Whether TaxMasters charged each customer before or after disclosing the contractual terms is an individual issue of fact that must be determined for each customer.

Regarding refund policies, California law penalizes those vendors who do not disclose to the buyer the vendor's refund policy before "accepting any payment or processing any debit or credit charge or funds transfer." Cal. Bus. & Prof. Code § 17538(d).  A plain and straightforward reading of California Business & Professions Code § 17538(d) highlights an important distinction that Plaintiffs ignore altogether, that being the actual act of charging a customer versus merely

1    receiving his or her payment information.[3]  Under the statute, no violation occurs

2    unless and until a vendor actually charges the customer, and merely accepting

3    payment information does not constitute a violation.

4          During deposition, TaxMasters' CEO, Patrick Cox, explained the typical

5    process involved in retaining new customers, leading up to TaxMasters' sales

6    representative preparing the written engagement agreement and sending it to the

7    client for approval. (Declaration of Matthew D. McMillan filed in support hereof

8    ("McMillan Decl.") at Ex. 1 ("Cox Dep.") at 97:10-25; 105:18-106:22).

9    Importantly, Mr. Cox explained that the timing of when TaxMasters delivers the

10   written agreement to the customer varies on a case-by-case basis:

11              Q. Does the contract go out after the third-party verifier goes

12              through and verifies everything?

13              A. **It depends on the customer**. If somebody is in a big hurry

14              because there's an IRS representative coming that afternoon to

15              their house, then it may not go out until they've finished the

16              discussions with the sales consultant. **I think it normally goes

17              out before we do the third-party verification, there may be

18              cases where that's not always the case though**. (Emphasis

19              added) (Cox Dep. at 101:14-23).

20   Thus, TaxMasters tailors its process according to each customer's specific,

21   particularized circumstances.  Most importantly, when asked if TaxMasters has any

22   type of system in place to track when contracts are sent to its customers, Mr. Cox

23   stated in no uncertain terms that <u>TaxMasters does not have that capability</u>.

24

25   [3] California Business & Professions Code § 17538(d) reads: (d) A vendor conducting business
through the Internet or any other electronic means of communication shall do all of the following

26   when the transaction involves a buyer located in this state: (1) <u>Before accepting any payment or
processing any debit or credit charge or funds transfer</u>, the vendor shall disclose to the buyer in

27   writing or by electronic means of communication, such as e-mail or an on-screen notice, the
vendor's return and refund policy, the legal name under which the business is conducted and,
except as provided in paragraph (3), the complete street address from which the business is

28   actually conducted. (Emphasis added) <u>Id</u>.

Q. Does Taxmasters have something like that so you can tell if
a contract was faxed or e-mailed to a person three weeks ago
and has not been received yet?

A. **No**.

Q. How do you keep track of that?

A. **No, we don't have** - - **we don't have anything on the
contract side**, we do once the case becomes active.

Q. Okay.

A. But on **the contracts side, no, we don't have anything that
tracks that**. (emph. added) (Cox Dep. at 89:10-20).

Mr. Cox further testified that TaxMasters does not have any system in place to
monitor whether contracts are returned by the customers:

Q. Okay. Is there any system or process in place where after a
contract has been sent to a consumer to make sure that that's
received back?

A. That's up to the individual salesman because we don't - - the
file doesn't become active until it's been verified in
accounting. (Cox Dep. at 90:2-7).

Other than naked allegations in the complaint, Plaintiffs do not offer a
scintilla of evidence to support their theory that TaxMasters deliberately and
systematically charges it customers <u>before</u> providing written disclosure of the
contractual terms.

In fact, the "evidence" submitted by Plaintiffs directly contradicts their own
theory.  For example, indisputable admissions by California resident, Denise
Miranda, make clear that she was not charged until <u>after</u> her consultation, as she
admitted, "**Four days later** on June 22, 2009 **my bank account was charged**
$1500.00 by Taxmasters." (SAC at Ex. B, p. 1).  Plaintiff DeLong's claim appears
to suffer the same defect as the complaint is intentionally vague as to when exactly

1  he was supposedly charged in relation to when TaxMasters provided him with the

2  written documentation.  As stated in the complaint, DeLong agreed to pay

3  TaxMasters $3,000 for certain tax resolution services after calling TaxMasters and

4  speaking with a tax consultant as part of his free consultation.  (SAC at ¶¶ 50-52).

5  After the initial call, DeLong received the written engagement agreement and other

6  documents from TaxMasters. (SAC at ¶ 53).  However, the complaint never states

7  when DeLong was supposedly charged $3,000.  Nor does it provide any clue as to

8  whether DeLong was charged before or after receiving the written documentation.

9  Rather, the complaint merely states the inconsequential fact that DeLong "provided

10  Taxmasters *authorization* to charge his Visa ATM/check card in that amount."

11  (Emph. added) (SAC at ¶ 52).  All speculation aside, the most essential fact of the

12  timing of TaxMasters' disclosures is missing from the complaint.  Thus, Plaintiffs'

13  purported "evidence" would appear to contradict their own theory.

14         Furthermore, Plaintiffs' reliance on the "script" to show a common scheme is

15  also misplaced for a variety of reasons.  First, sales representatives do not use

16  standard scripts (Cox Dep. at 191:13-16), only the so-called "third-party verifier"

17  who comes on the line after the sales representative to collect personal contact

18  information and to confirm the accuracy of the order. (Cox Dep. at 197:9-16).

19  Second, in addition to ensuring the accuracy of customer information (Cox Dep. at

20  107:3-8), third-party verifiers are required by the script to inform prospective

21  customers that "**fees are nonrefundable**." (Cox Dep. at 193:8-194:3; McMillan

22  Decl. at ¶ 8, Ex. 6).  Third, as to Plaintiffs' reliance on the script as "evidence" of a

23  common course of unlawful conduct, this theory is further negated by the fact that

24  TaxMasters' representatives often discuss additional matters beyond those required

25  in the script. (Cox Dep. at 186:11-190:19).

26         In *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229 (C.D. Cal 2007), the Court

27  declined to certify a class where the plaintiff failed to offer evidence "that [the]

28  defendant imposed standardized operational procedures, or that sales agents

received uniform training." Id. at 245.  Here, even accepting their allegations as true, Plaintiffs have not demonstrated that TaxMasters in fact violated any law.  In addition, Plaintiffs have not provided any evidence whatsoever of a company-wide policy or scheme.  Moreover, and most importantly, Plaintiffs fail to demonstrate how the alleged acts are common to each and every customer such that they "predominate" over the class members.

In order to establish liability, each and every class member would be required to produce specific evidence of precisely when the written materials were disclosed, when his or her account was charged or monies transferred, and that the written agreement was not provided until after the charges had been made. Based on Mr. Cox's testimony, this would require a highly individualized process whereby the Court would need to hold hundreds of mini-trials to determine liability. Of course, such a process would totally defeat the virtues of efficiency and judicial economy inherent to class treatment. Thus, common issues of liability do not predominate.

### b. *Individual Issues Pertaining to the Type and Amount of Damages Preclude Class Certification*

Second, common issues do not predominate as the Court will be required to conduct a highly individualized evaluation of the type and amount of damages each class member seeks.

Unlike those cases in which the amount of damages is easily quantifiable (e.g., a $10 replacement part to each class member), here the value to each class member of the right not to be subjected to the alleged unfair business practices varies greatly from person to person.  In this case, the members of the class each purchased different tax services from the wide array offered by TaxMasters. (Cox Dep. at 64:23-65:1, 65:11-66:17).  Depending on the number and complexity of these services, TaxMasters would charge each client different sums. Id.  With the amount of each contract differing so greatly between each customer, the amount of

damages each class member would seek would vary greatly.  In other words, the amount at stake is different for every person.

Further, the amount of any refund provided must also be figured in to any damages calculations.  The difficulty in calculating these amounts arises from the fact that TaxMasters has had two different refund policies in place since the company's inception.  Lasting until October 2010, the first refund policy stated that fees paid for contracted services were nonrefundable, while any additional amount customers paid on top of the contracted amount were refunded if not used. (Cox Dep. at 54:18-55:2).  Adding yet another layer of complexity, TaxMasters' current refund policy allows customers to cancel the agreement for up to 18 months from the date they hire TaxMasters, and provides for refunds for any services not performed. (Cox Dep. at 54:2-7).

Even further, <u>damages are non-existent</u> for those class members like DeLong who have already been fully reimbursed for the amount purportedly lost under the contract.  On October 27, 2008 – a mere 7 days after contacting TaxMasters – DeLong received a <u>full refund</u> from his bank in the amount of $3,000.  (SAC at ¶ 59, Ex. Q).  Having admittedly recouped his entire deposit, the only remaining charges DeLong complains of are facsimile costs, certified mail, printing, and lost interest on his money – all of which are nominal at best. (SAC at ¶ 59).  In addition, Ms. Miranda states in her sworn affidavit that she too has already been reimbursed by her bank. (SAC at Ex. B, p. 1 stating, "Eventually I was able to work with my bank to reverse the charges that Taxmasters had placed against my account.")[4] Based on the sworn statements of DeLong and Miranda, purported class members are seeking DOUBLE their money back.  To avoid the unmerited result of double

---

[4] Although not a member of the purported class, the affidavit of Texas-resident Arturo Fierro submitted by Plaintiffs provides further evidence of consumer reimbursement, as he states, "In response to my complaint, my credit card company issued a credit to me for the amount paid to TaxMasters." SAC at Ex. F, p. 2.

1   recovery, the Court will inevitably be required to determine on a case-by-case basis
2   whether class members have been fully reimbursed.

3       Additionally, the proposed class is not defined in a way to exclude the many
4   customers that were entirely satisfied with the services they received.  As the class
5   is presently defined by Plaintiffs, a class member who, for example, paid $1,000 for
6   TaxMasters' services and recovered $5,000 from the IRS would be included in the
7   proposed class despite suffering no damages.  The individualized process that
8   would be necessary to determine each customer's satisfaction with TaxMasters'
9   services alone merits denial of class certification.

10      Lastly, the type of damages sought must also be evaluated on an individual
11  basis.  Plaintiff Holmes cannot represent the class with respect to the CLRA
12  damages claim since he is not a named party to this claim. (SAC at 36:4 stating
13  "Brought by Plaintiff DeLong Only on Behalf of the Class").  Likely as a result of
14  his admitted failure to provide adequate pre-lawsuit notice under CLRA, Holmes
15  withdrew his cause of action seeking damages under CLRA and now seeks only
16  injunctive relief. (See, RJN at ¶ 2, First Am. Compl. at 30; SAC at 32, 36:4).

17      Thus, common issues of damages do not predominate.

18          **c.** ***Individual Issues Pertaining to TaxMasters' Affirmative***
19              ***Defenses Preclude Class Certification***

20      Third, common issues do not predominate as the Court will be required to
21  evaluate on a case-by-case basis TaxMasters' affirmative defenses which are
22  unique to certain class members' claims.

23      For example, unlike DeLong who signed and returned the written agreement
24  (SAC at ¶ 55), Holmes claims never to have signed the agreement (SAC at ¶ 63),
25  meaning that Holmes' theory of recovery must be based on an oral contract.  Since
26  the proposed class includes those who purchased services as far back as February
27  14, 2007 and Plaintiffs did not file the original complaint until over 4 years later on
28  February 16, 2011, (Motion at 11:1-2; RJN at ¶ 1), the claims of any class members

whose theory of recovery is also based on an oral contract could be barred by the applicable 2-year statute of limitations. *See*, Cal. Civ. Proc. Code § 339(3) (Rescission of oral contract).  Likewise, given the 4-year window of the proposed class, certain class members' CLRA claims (3-year period) would be equally susceptible to a statute of limitations defense. See, Cal. Civ. Code § 1783.

Therefore, common issues do not predominate for this reason as well.

## 2. TaxMasters' Employment of Licensed Attorneys, Accountants, and Enrolled Agents Complies With the Law In All Respects

Plaintiffs' allegations that TaxMasters engaged in the unauthorized practice of law are wholly without merit as TaxMasters' employees are acting completely within the parameters of the law.

Within the Motion, Plaintiffs rely on a piecemeal sampling of case law for the non-controversial proposition that a (non-professional) corporation cannot practice law.  However, the cases cited by Plaintiffs involve situations in which consumers contracted with non-professional corporations for those corporations to expressly provide professional legal services. *See, e.g.*, *People v. Merchants Protective Corp.* (1922) 189 Cal. 531, 532 (Defendant corporation's Articles of Incorporation stated that it was formed "for the purpose of furnishing its members legal services."); *People v. California Protective Corp.* (1926) 76 Cal.App. 354, 360 (Corporation's stated purpose was to "To employ attorneys for its said members or clients").  These cases have no applicability to this case.

TaxMasters' primary purpose is to interface with the Internal Revenue Service (the "IRS") on behalf of its customers to resolve outstanding tax liabilities. This does not entail the practice of law.  TaxMasters provides these services primarily through persons who are "enrolled agents" with the IRS.  According to the IRS' own official website,

An enrolled agent is a person who has earned the privilege of
practicing, that is, representing taxpayers, before the Internal Revenue
Service. Enrolled agents, like attorneys and certified public
accountants (CPAs), are unrestricted as to which taxpayers they can
represent, what types of tax matters they can handle, and which IRS
offices they can practice before. (McMillan Decl. at ¶ 4, Ex. 2).

The U.S. Treasury Department's own regulations make clear that "enrolled
agents" do not have to be attorneys or CPA's, and that they are unrestricted as to
the type of matters they can handle before the IRS. (McMillan Decl. at ¶ 5, Ex. 3 at
"*Who May Practice,*" § 10.3(a) – (c), separately discussing attorneys, CPA's, and
enrolled agents).[5]  Plaintiffs' Motion fails to provide sufficient allegations as to
what, if any, conduct of TaxMasters would constitute the practice of law with
respect to the named Plaintiffs.

For example, Plaintiffs nakedly alleges that TaxMasters "sell[s] class
members services which require the provision of professional legal judgment," and
points to TaxMasters' engagement agreement with Plaintiff DeLong to support this
allegation. (SAC at ¶ 90).  However, Plaintiffs fail to specifically cite to any part of
the engagement letter that would suggest that TaxMasters agreed to provide any
service that could be construed as a professional legal service.  As clearly stated in
the agreement itself, "**TaxMasters in Not a CPA Firm and TaxMasters is Not a
Law Firm**." (Emph. added) (SAC at Ex. A, p. 2).  Truth be told, none of the
services described in the engagement letter support Plaintiffs' allegation.

Plaintiffs further allege that certain statements made during customer
consultations suggest that TaxMasters provides legal services. (SAC at ¶ 88;

---

[5] Notably, counsel for Plaintiffs questioned Mr. Cox extensively on the role of "enrolled agents"
in dealing with the IRS, yet the Motion intentionally glosses over this point. (*See*, Cox Dep. at
35:2-36:10; 137:18-138:5).  Plaintiffs fail to mention that enrolled agents are specially qualified
to deal directly with the IRS – TaxMasters' specialty. Moreover, the Motion is equally silent to
the fact that licensed attorneys and CPA's are also entitled to deal directly with the IRS. Plaintiffs
also intentionally ignore IRS guidelines on this exact point.

Motion at 9).  However, <u>none of these statements were even alleged to have been made to the named Plaintiffs in this case</u>.  In fact, TaxMasters' own employee training materials specifically forbids sales associates from making statements in the fashion Plaintiffs' have alleged.  Under the section entitled "Things We Do Not Say," TaxMasters makes clear that,

> **<u>You [Salespeople] are not Lawyers, CPA's, EA's, DEA, or anything else</u>**. You are a sales person. Be proud of that. **<u>Do not promise who or what kind of qualified person will work on their case</u>**. We use the most qualified person that costs them the least.

(Emph. added) (McMillan Decl. at ¶ 6, Ex. 4).

Without alleging these statements to have been made to the named Plaintiffs, it follows that Plaintiffs cannot have standing since they have suffered no actual injury. In this case, actual injury would exist only if DeLong and Holmes had each entered a legal services contract with an attorney or CPA, which certainly is not true here.

Moreover, Plaintiffs greatly overstate and misconstrue statements made during customer consultations regarding Clyde Miller. (Motion at 9).  Again, Plaintiffs misstate the nature of the discussion by manipulating the testimony to give the appearance that the particular customer contracted for Mr. Miller's services when in fact <u>no such promises or agreements were ever made</u>.  If Plaintiffs were correct, then they simply could produce the contract in question and cite to the select provision showing that Mr. Miller's services were specifically included as part of the agreement.  Of course, Plaintiffs offer no such evidence simply because it does not exist.

For the first time ever, Plaintiffs also allege violations of public accountancy licensing statutes.  Most notably, the complaint neither alleges any violations of any accounting licensure statutes, nor does it contain any facts purporting to support

1   these wild accusations.  For the same reasons discussed above, these empty

2   allegations should be disregarded in their entirety and class certification denied.

3       **C.**   **Plaintiffs' Proposed Class Fails to Satisfy the "Superiority"**

4           **Requirement under Rule 23(b)(3)**

5         In addition to proving that common questions "predominate," Plaintiffs bear

6   the burden of demonstrating that the class action device is "superior" to individual

7   lawsuits for resolving the dispute. Fed. R. Civ. P. 23(b)(3);  *Amchem Products, Inc.*

8   *v. Windsor*, 521 U.S. 591, 615 (1997); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

9   1227, 1234 (9th Cir. 1996); *see, Gregory v. Finova Capital Corp.*, 442 F.3d 188,

10  191, n.3 (4th Cir. 2006) (class action "cannot be certified under Rule 23(b)(3) if

11  there is a method to which the class action is not superior.")  A class action may be

12  superior where "class-wide litigation of common issues will reduce litigation costs

13  and promote greater efficiency." *Valentino*, 97 F.3d at 1234.  Rule 23(b)(3)

14  provides the following non-exhaustive list of factors to consider in this assessment:

15          (A) the interest of members of the class in individually controlling the

16              prosecution or defense of separate actions;

17          (B) the extent and nature of any litigation concerning the controversy

18              already commenced by or against members of the class;

19          (C) the desirability or undesirability of concentrating the litigation of

20              the claims in the particular forum; and

21          (D) the difficulties likely to be encountered in the management of a

22              class action. Fed. R. Civ. P. 23(b)(3).

23        Accordingly, the Court must compare the merits of proceeding as a class

24  action under Rule 23 against alternative methods of resolving the dispute. *See e.g.*,

25  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998).

26        Class certification is not appropriate in this case because there are factual

27  disparities that affect each individual's adjudication.  In addition, each class

28

member has an interest in ensuring the Court's decision is based on his or her individual factual scenario, thereby precluding the need for class treatment.

For example, the pendency of similar cases in other courts also weighs against class certification. Consolidation of this action with that separate action pending before the Southern District Court of Texas where TaxMasters is headquartered will provide for the most fair and efficient resolution of this case. For example, the overwhelming majority of witnesses likely to testify at trial (i.e., TaxMasters' employees and representatives) reside in Texas, not California. *Los Angeles Memorial Coliseum Commission v. National Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981). These Texas-based witnesses possess first-hand knowledge of such essential issues as Defendants' advertising and sales practices, tax resolution services, billing practices and policies, and communications with both named Plaintiffs, among other areas of interest. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co. Inc.*, 42 F.Supp.2d 821, 834 (N.D. Ill. 1999); *Travel Tags, Inc. v. UV Color, Inc.*, 690 F.Supp.2d 785, 793 (D. MN. 2010). To the extent Plaintiffs require the testimony of Defendants' former employees or other non-party witnesses living in Texas, Plaintiffs' only option to secure this testimony will be to issue subpoenas from the same Texas district in which they reside. If the case is not transferred, then these witnesses are beyond the reach of the subpoena power as required to compel their attendance for deposition or trial. See, Fed. R. Civ. P. 45(b)(2)(B); *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009); *Reed v. Fina Oil & Chem. Co.*, 995 F.Supp. 705, 714 (E.D. TX 1998). Overall, this transfer is warranted under 28 U.S.C. § 1404(a) (Change of Venue) based on the convenience of the parties and witnesses, and also is necessary for judicial economy and to fulfill the interests of justice.

Moreover, with the amount of each contract differing so greatly between each customer, California class members who seek sizeable refunds or damages claims have a strong interest in controlling the prosecution of separate actions. *See,*

*In re Northern Dist. of Calif., Dalkon Shield IUD Products Liability Litig.*, 693 F.2d 847, 856 (9th Cir. 1982), *disapproved on other grounds.* If a large number of customers opt out of the class, then the class will be unable to proceed. Certification should therefore be denied because class treatment is not superior.

### D.   The Proposed Class Fails to Satisfy the "Typicality" Requirement Under Rule 23(a)

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs' claims are predicated on their own unique factual circumstances. As shown above with the "predominance" requirement, Plaintiffs fail to conclusively show that TaxMasters actually charged DeLong for the contracted services prior to disclosing the terms of their agreement. Specifically, the complaint never states when DeLong was supposedly charged $3,000, nor does it state whether DeLong was charged before or after receiving the written documentation.[6] Plaintiffs fail to satisfy the "typicality" requirement because the question of whether TaxMasters charged each customer before or after disclosing the contractual terms is an individual issue of fact that must be determined for each customer and which has not been shown for DeLong. Thus, the question of whether other class members have been injured at all and in the manner alleged here – which does not establish liability with respect to DeLong – will require detailed inquiries into the specifics of each class member's transaction. In this

---

[6] Aside from the named class representatives, the only other evidence Plaintiffs offer from a California resident is that of Ms. Miranda, who admitted she was not charged until **four (4) days after** her consultation. (SAC at Ex. B, p. 1).

1    regard, the alleged details of DeLong's transaction with TaxMasters fails to satisfy

2    the "typicality" requirement.

3        Furthermore, DeLong is purporting to represent the class without being able

4    to prove actual injury to himself – thus creating a problem of standing pursuant to

5    Article III. U.S. Consti., Art. III, § 2; *SEC v. Medical Committee for Human Rights*,

6    404 U.S. 403, 407 (1972).  A claim of actual injury to other members of the class

7    and potential injury to the representative is not sufficient. *O'Shea v. Littleton*, 414

8    U.S. 488, 494 (1974).  The fact the action is brought as a class action does not

9    avoid the basic requirement of Plaintiffs' standing to sue, i.e., Plaintiffs must allege

10   and show that they personally have been injured. *See, Lewis v. Casey*, 518 U.S.

11   343, 349 (1996) ("It is the role of courts to provide relief to claimants, in individual

12   or class actions, who have suffered, or will imminently suffer, actual harm.");

13   *Williams v. Boeing Co.*, 517 F.3d 1120, 1126-27 (9th Cir. 2008).

14       Moreover, in addition to Article III standing, both named Plaintiffs must

15   have standing to sue on the claims that are the basis of this action.  *In re General*

16   *Motors Corp. Dex-Cool Products Liability Litigation*, 241 F.R.D. 305, 310 (S.D.

17   Ill. 2007).  Here, DeLong's damages are non-existent as he has <u>already been fully</u>

18   <u>reimbursed</u> for the amount he claims to have lost under the contract. (SAC at ¶ 59).

19   Also, Holmes cannot represent the class with respect to the CLRA damages claim

20   since he is not a named plaintiff to this claim. (SAC at 36:4)  Likely as a result of

21   his admitted failure to provide adequate pre-lawsuit notice under CLRA, Holmes

22   withdrew his cause of action seeking damages under CLRA and now seeks only

23   injunctive relief.

24       Additionally, Plaintiffs fails to show they have suffered any actual harm as a

25   result of various contractual provisions such as the 20% cap on damages, the

26   arbitration provision, or the waiver of claims against unnamed, third-party

27   subcontractors. (Motion at 5-6).  No facts have been alleged with respect to the

28   named Plaintiffs.  Regarding the waiver of claims against third-party

TAXMASTERS' OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION
(11cv01431)

subcontractors, Mr. Cox testified that <u>TaxMasters has never hired subcontractors to do work in California</u>. (Cox Dep. at 128:11-13).  Consequently, no damage could possibly have occurred to the named Plaintiffs or any class member for waiving claims against subcontractors that have never been hired.  Accordingly, Plaintiffs are not adequate class representatives since they do not have standing to assert these claims which are not "typical" of class members.

Further, DeLong's situation is not "typical" of the class since he has already been fully reimbursed by his bank, thus creating a stark distinction between himself and all class members with respect to damages.

Lastly, individual factual determinations must be made for each putative class member whose form of payment and contracted services do not fall within the proscribed conduct concerning telephonic sales transactions.  For example, in addition to accepting electronic payment, TaxMasters also accepts cash payments. (Cox Dep. at 103:5-7).  Furthermore, all contracts and payments for IRS settlement services are handled strictly through the mail and are not sold over the telephone. (Cox Dep. at 210:15-22).  Thus, Plaintiffs' unsupported claim that "All payments are processed over the telephone when a consumer calls" is demonstrably false. (Motion at 6:7).  Consequently, the Court would be forced to inquire into the specific details of each customer's transaction where he or she paid in cash or contracted for IRS settlement services.

For these reasons, class certification is improper and must be denied.

**E.   The Proposed Class Fails to Satisfy the "Adequacy" Requirement Under Rule 23(a)**

Class certification should be denied on the independent basis of Plaintiffs' failure to satisfy the "adequacy" requirement.  Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." The "adequacy" requirement involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members

and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, *supra*, 150 F.3d at 1020; *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007).  The proposed class fails to satisfy the "adequacy" requirement for a multitude of reasons.

First and foremost, DeLong fails to submit as much as a declaration to personally attest to his supposed commitment to pursing the best interests of the class members.  Instead, the Motion presents mere "argument" in the form of unsubstantiated claims by Plaintiffs' counsel.  According to counsel,

> "Each of the class representatives is committed to fulfilling their duties to represent the classes' best interests and securing the best result possible." (Motion at 16:5-6).

Notably, the Motion cites a signed statement from Holmes only, but <u>nothing</u> from DeLong. (Motion at 16:6-7).  Consequently, this evidentiary pitfall leaves open the question of DeLong's true commitment.

Next, the vigor with which DeLong intends to prosecute this action is seriously called into question by the fact that his damages are practically nonexistent since he already recovered his full deposit. *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982) (Class representative or representatives should have enough at stake to ensure vigorous prosecution or defense of the action).  A mere 7 days after contacting TaxMasters, DeLong received a <u>full refund</u> from his bank in the amount of $3,000.  (SAC at ¶ 59, Ex. Q).  Having admittedly recouped his entire deposit, the only remaining charges DeLong complains of (e.g., facsimile costs, certified mail, printing, and lost interest on his money) are nominal at best. (SAC at ¶ 59).  Thus, DeLong has no financial stake in this class action to motivate him to actively pursue his claims on behalf of class members.

Furthermore, without a CLRA damages claim, Holmes is entitled only to seek injunctive relief, but <u>no damages</u>.  Holmes' inability to pursue money damages

1    under the CLRA is not only unique to him (i.e., not "typical"), but also casts serious

2    doubt as to his ability and motivation to pursue damages on behalf of others.

3         Even further, because DeLong admittedly suffered only nominal damages, if

4    any, and because Holmes' sole remedy comes in the form of injunctive relief,

5    together the class representatives have little to no motivation to vigorously pursue

6    money damages on behalf of other class members.

7         Additionally, neither Plaintiff has entered a legal services contract with a

8    TaxMasters attorney or CPA, nor have they had any interaction with or been

9    harmed by any subcontractors. (Cox Dep. at 128:11-13).  Without standing to bring

10   these claims as discussed above, Plaintiffs' ability to adequately represent unnamed

11   and unidentified class members is further undercut. The Court should therefore

12   deny certification.

13   **F.   The Proposed Class Fails to Satisfy the "Commonality"**

14   **Requirement Under Rule 23(a)**

15        Class certification should be denied on the independent basis of Plaintiffs'

16   failure to satisfy the "commonality" requirement.  To justify class action treatment,

17   there must be issues "common to the class as a whole" and relief must "turn on

18   questions of law applicable in the same manner to each member of the class."

19   *Falcon*, *supra*, 457 U.S. at 155.

20        As discussed *supra*, in order to establish liability each and every class

21   member would be required to produce specific evidence of precisely when the

22   written materials were disclosed, when his or her account was charged or monies

23   transferred, and that the written agreement was not provided until after the charges

24   had been made.  Based on Mr. Cox's testimony, these questions would require a

25   highly individualized process that cannot be proved on a class-wide basis as the

26   Court will be required to inquire into the details of each class members' transaction

27   to determine whether first they were harmed and second whether that harm resulted

28   from the same conduct.

1   Additionally, because the CLRA does not apply to persons who purchase a

2   product for business use, the Court will need to resolve on an individual basis

3   whether each proposed class member engaged TaxMasters' services for that

4   proscribed purpose or for the proper "personal, family, or household purposes."

5   *See,* Cal. Civ. Code § 1761(d) (defining "Consumer" as "an individual who seeks or

6   acquires, by purchase or lease, any goods or services for personal, family, or

7   household purposes.") *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009);

8   (Cox Dep. at 80:2-9).

9   Moreover, regarding the alleged violation of the 30-day rescission period,

10   Plaintiffs' own argument belies the exception to Section 17538(a)'s 30-day

11   timeframe which expressly allows for other time periods to control. Cal. Bus. &

12   Prof. Code § 17538(a). According to the statute, the 30-day period controls <u>unless</u>

13   another period is "<u>otherwise conspicuously stated in the offering or advertisement</u> .

14   . . ." Cal. Bus. & Prof. Code § 17538(a). As Plaintiffs admit in their Motion,

15   TaxMasters' website has at times stated that, depending on the services requested,

16   certain customers can expect to have work completed within 120 days of full

17   payment. (Motion at 18). Thus, these customers could reasonably expect to receive

18   services within 120 days of payment as promised, not the 30-day period to which

19   Plaintiffs' theory clings. Overall, each class member would necessarily need to

20   present evidence of any advertisement or representation he or she encountered

21   providing this type of assurance and also that he or she relied on such assurances.

22   Class certification therefore fails on this independent ground.

23   **IV.  THE COURT SHOULD BAR PLAINTIFFS' MOTION FOR FAILING**

24   **TO COMPLY WITH STRICT LOCAL RULES ON CLASS**

25   **CERTIFICATION**

26   This Court should bar Plaintiffs' Motion for failing to observe the strict

27   certification deadline under Local Rule 23-3. Under this rule, Plaintiffs are

28   obligated to file their certification motion within a short timeframe – just <u>90 days</u>

from service of the complaint. C.D. L.R. 23-3.  In addition, prior to filing the motion, counsel must satisfy the meet and confer requirement of Local Rule 7-3 by engaging in a pre-filing conference "to discuss thoroughly . . . the substance of the contemplated motion and any potential resolution." C.D. L.R. 7-3; *Clark v. Time Warner,* 2007 WL 1334965, *1 (C.D. Cal. May 3, 2007); *Halicki v. Carrol Shelby Intern, Inc.,* 2005 WL 5253338, *20 (C.D. Cal. November 14, 2005) *vacated on other grounds*; *see also*, McMillan Decl. at ¶ 7, Ex. 5 at 3:27-4:6.

Plaintiffs' certification deadline expired on July 27, 2011, meaning they were also required to satisfy all pre-filing requirements before that time (e.g., Local Rule 7-3 meet and confer).  As this Court found, Plaintiffs failed to properly meet and confer prior to their July 27, 2011 filing, and thus struck Plaintiffs' motion in its entirety. (RJN at ¶ 5, Ex. E).  Plaintiffs now seek certification a *second* time – nearly <u>180 days</u> after serving the complaint – despite no further continuances of the July 27, 2011 deadline.[7]  Plaintiffs' continued failure to heed the Local Rules should not be rewarded now with a second "bite at the apple."  Plaintiffs' Motion should therefore be barred.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, TaxMasters respectfully requests that this Court deny Plaintiffs' request for class certification in its entirety and with prejudice.

DATED:  October 3, 2011                    Caufield & James, LLP


                                           /s/  Matthew McMillan
                                           Matthew D. McMillan, Esq.
                                           Attorneys for Defendants TaxMasters,
                                           Inc. and TMIRS Enterprises, Ltd.

---

[7] Plaintiffs served Defendants with the First Amended Complaint on or about March 23, 2011. Plaintiffs filed their Second Motion for Class Certification 178 days later on September 23, 2011.